EXHIBIT "5"

# SHORTFALL AGREEMENT

THIS SHORTFALL AGREEMENT is entered into as of the _27_ day of November, 2006 by and between GENERAL ELECTRIC CAPITAL CORPORATION, 2 Bethesda Metro Center, Suite 600, Bethesda, MD 20814 ("GECC") and LONG HILL ALLIANCE COMPANY, 580 Long Hill Avenue, Shelton, CT ("Long Hill");

WHEREAS, GECC holds a Consolidated Mortgage and Leasehold Mortgage (the "Mortgages") which are liens respectively on certain real properties (the "Mortgaged Premises") and personal property used in connection with the operation of four skilled nursing facilities (the "Facilities") located in Rensselaer, Schenectady and Cortland Counties, State of New York; and

WHEREAS, GECC has commenced, or intends to commence, an action to foreclose the Mortgages pursuant to Article 13 of the Real Property Actions and Proceedings Law (the "Foreclosure Action"); and

WHEREAS, in connection with the Foreclosure Action, Long Hill has been, or may be, appointed by the Supreme Court of the State of New York, County of Rensselaer (the "Foreclosure Court") as receiver (the "Receiver") for the Mortgaged Premises pursuant to an Order Appointing Receiver (the "Receivership Order"); and

WHEREAS, pursuant to Receivership Order, Receiver will manage the Mortgaged Premises, operate the Facilities and receive the rents, profits, income and other charges due the Facilities or earned by the Mortgage Premises (the "Receivership Income") and incur certain expenses in the operation of the Facilities and the Mortgaged Premises (the "Receivership Expenses"); and

WHEREAS, GECC and Receiver wish to provide by this Shortfall Agreement, for the funding of Shortfalls (as defined herein) in the event Receivership Expenses exceed Receivership Income from time to time;

NOW THEREFORE, in consideration of the mutual covenants contained herein, it is agreed by and between GECC and Receiver as follows:

1.  <u>Operation of Facilities</u>.  Receiver shall accept appointment as receiver of the Mortgaged Premises and operate the Facilities as provided in Receivership Order.

2.  <u>Reporting</u>.

(a)  <u>Budget</u>.  Within 30 days after entry of Receivership Order (the "Commencement Date"), Receiver shall submit to GECC a proposed budget for the period commencing on the Commencement Date through the date which is ninety (90) days subsequent to the Commencement Date.  As soon as reasonably practical thereafter, GECC shall approve such budget or work with Receiver to establish a mutually agreeable budget (the budget, as submitted for approval and as revised from time to time during the term of this Agreement, as set forth below, is referred to herein as the "Budget").  A new Budget shall be submitted by Receiver for approval by GECC for each ninety (90) day period thereafter during the term of this Agreement.  Receiver shall consult with and seek approval of GECC for any extraordinary items not covered by any approved Budget.  All Budgets shall be subject to the approval of GECC.

(b) <u>Monthly Report</u>.  Receiver shall provide to GECC monthly financial and census reports (each, a "Monthly Report") containing the following information:

(i)  Move-ins and move-outs and deposits taken and general marketing activity.

(ii)     Financial performance measured against the Budget including statements of revenue and expense, accounts payable, accounts receivable and cash receipts/disbursements information.

(iii)    such other reports as may be required by the Loan Documents as defined in the Mortgages or reasonably requested by GECC.

(c)     <u>Working Capital Deficit</u>.

(i)     GECC hereby agrees to pay any "Shortfall", which shall mean those instances in which Receivership Income of the Facility received by Receiver for any monthly period is insufficient to pay the Monthly Fee (as defined in the Receivership Order) and all Receivership Expenses as set forth on an approved Budget plus any costs and expenses incurred in an emergency, that are extraordinary or that may be required by applicable law. Such Receivership Expenses shall include but not be limited to all operating expenses, accounts payable, including insurance and vender expenses together with all employee wages, employment taxes, and all sums for workers compensation and unemployment expenses together with all employee fringe benefits (other than the wages, taxes and benefits of Receiver and its regular employees) and such expenses assumed by Receiver in connection with the employees hired by Receiver for the purpose of Receivership and any such accrued expenses or benefits which are due and owing to such employees and unpaid at the termination of Receivership, any Equipment Obligations (as defined below), any Change of Ownership Obligations (as defined below) and any other expenses of Receiver in terminating its operations of the Facility.

(ii)     The term "Equipment Obligations" shall mean any cost and expense associated with securing use of the equipment presently at the Facility or the

3

provision of adequate replacement equipment for the Facility, including the repair or replacement of any or all of such equipment in the event replacement or repair is necessary.

(iii)    The parties acknowledge that if a court or agency of final authority should determine that a change of ownership of the Facility has occurred by virtue of this receivership, GECC will be responsible for any and all Shortfall associated with improvements, modifications, changes to the Facility and changes in operation necessary for securing compliance with the change in ownership inspection, and licensure of Receiver (the "Change of Ownership Obligations"); provided, however, that regardless of anything to the contrary in this Agreement, GECC shall have no responsibility for any Change of Ownership Obligation that (i) accrues or is incurred after the termination of this Receivership or (ii) is not approved in writing by GECC, it being agreed that if GECC does not approve any Change in Ownership Obligation mandated by the Department of Health of the State of New York, GECC shall pay any non-compliance fees or charges assessed or levied against Receiver by the Department of Health of the State of New York as a result of GECC's failure to approve such Change in Ownership Obligation.

(iv)    Receiver shall have no liability or responsibility to pay any Shortfall from its own funds.

(v)    Simultaneously with the delivery by Receiver of the Monthly Reports, Receiver shall certify whether any Shortfall exists. Receiver's certification shall be executed by its Chief Financial Officer and shall include a report setting forth the reasons for such Shortfall in reasonable detail. If it appears that Receivership Expenses

4

provided for in an approved Budget exceed Receivership Income for any such month, GECC shall make available to Receiver by wire transfer to the account of Receiver, pursuant to instructions contained in the certification, funds sufficient to pay such Shortfall (the "Shortfall Funding"). Provided the Shortfall exists, such Shortfall Funding shall be provided to Receiver within three (3) days following certification of any Shortfall by Receiver. Upon termination of the receivership, any and all accounts receivable and other credits for pre-paid expenses and other assets acquired by Receiver and used in the operation of the Facility shall, upon the payment by GECC of all amounts due hereunder, be paid or transferred over to GECC or its designee; provided, however, that the amounts paid over to GECC shall not exceed the amounts due to it under the Mortgages and the loan documents secured thereby and the amounts paid over by it to the Receiver under the Shortfall Agreement.

(vi)     Pursuant to the Receivership Order, and in addition to Receiver's right to have any Shortfall paid by GECC as set forth above, "tail" insurance, on terms and conditions reasonably acceptable to Receiver and GECC, shall be purchased covering the Receiver and paid for by the assets of the receivership, unless such assets shall be insufficient, in which case such insurance shall be paid for by the prospective purchaser of the Facility or any one of them.

2.     Term.  This Shortfall Agreement and GECC's obligation to provide Shortfall Funding shall continue from the Commencement Date until expiration of the receivership pursuant to the Receivership Order, unless earlier terminated:  (a) by GECC prior to such expiration on seventy five (75) days written notice to Receiver and the New York State Department of Health (the "Notice of Termination"), or (b) by an earlier order of the Foreclosure

Court, (either, a "Termination").  Notwithstanding such Notice of Termination, GECC shall continue to fund any Shortfall, as provided in Section 2 above, but in no event beyond the earlier of the effective date of the order terminating the receivership or 75 days following the Notice of Termination (the "Post-Notice Period").  During the Post-Notice Period, GECC's liability for payment of expenses which arise during such Post-Notice Period and which are not contained in an approved Budget shall not exceed $100,000.00 in the aggregate (the "Unbudgeted Expense CAP").  Notwithstanding the provisions of Section 2 or the Unbudgeted Expense CAP, GECC shall not be responsible to fund expenses during the Post-Notice Period which are incurred by the Facilities in connection with a closure of the Facilities.  Receiver shall not thereafter be responsible as either receiver or operator of the Facility.  Upon delivery of such Notice of Termination, GECC and Receiver shall jointly move before the Foreclosure Court for termination of Receivership Order or, at GECC's election, appointment of a new receiver. Receiver shall cooperate with any application to the Department of Health for a new receiver.

    3.    <u>Miscellaneous</u>.

    (a)    <u>Relationship of Parties</u>.  Nothing contained in this Agreement shall constitute or be construed to be or create a partnership, joint venture or lease between GECC and Receiver with respect to any Facility, it being understood that Receiver's status shall be that of an independent contractor and receiver only pursuant to Receivership Order.

    (b)    <u>Books and Records</u>.  All books, records, forms and reports prepared by Receiver in connection with the operation of any Facility are subject to GECC's Mortgages, and shall be maintained in a strictly confidential manner by Receiver, and returned to GECC upon the termination of this Agreement.

(c)    Cooperation Upon Termination.    Upon the expiration or earlier termination of this Agreement, Receiver shall cooperate with GECC in effecting an orderly transition to any new receiver of the Mortgaged Premises in order to avoid any interruption in the rendering of services to patients and residents at the Facility and, in connection therewith, shall surrender to GECC all contracts, documents, books, records, forms and reports in its possession regarding the operation of any Facility.

(d)    Successors and Assigns.  This Agreement shall be binding upon the parties hereto and their respective successors and assigns.  Receiver may not assign this Agreement without GECC's consent and without further order of the Court.  GECC shall be entitled, on notice to the Department of Health of the State of New York, to assign its rights and obligations hereunder.

(e)    Notices.  All notices, demands and requests to be made hereunder by one party to the other shall be in writing, and shall be delivered by hand, mailed by certified mail, return receipt requested, or sent by overnight courier service, with postage prepaid, to the addresses listed at the beginning of this Agreement.  All notices shall be deemed to be effective (i) upon receipt, if hand delivered, (ii) three (3) days after mailing, if mailed by certified mail or (iii the next business day after transmittal, if sent by overnight courier service.  If notice is sent to GECC, a copy of such notice shall also be sent to Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, NY 11530, Attn.: Marc L. Hamroff, Esq.  If notice is sent to Receiver, a copy of such notice shall also be sent to: Murtha Cullina, LLP, City Place I, 185 Asylum Street, Hartford, CT 06103-6033, Attn. Robert V. Guinta, Jr., Esq.

(f)    Entire Agreement; Amendments.  This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof, and no prior oral

7

or written representations, covenants or agreements between the parties with respect to the subject matter hereof shall be of any force or effect. Any amendments or modifications to this Agreement shall be of no force or effect unless in writing and signed by both GECC and Receiver and approved by the Foreclosure Court on notice to the New York State Department of Health.

(g) <u>Governing Law</u>. This Agreement has been executed and delivered in the State of New York and shall be governed by the laws of New York. All matters respecting the performance of this Agreement shall be heard by the Foreclosure Court. The Foreclosure Court shall have exclusive jurisdiction to hear and resolve all matters arising under this Agreement.

(h) <u>Section Headings</u>. The section headings throughout this Agreement are provided for convenience of reference only, and the words contained therein shall not in any way be held to explain, modify or otherwise affect the interpretation, construction or meaning of the provisions of this Agreement.

(i) <u>Severability</u>. If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(j) <u>Waivers</u>. No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further and continuing waiver of any such term, provision or condition of this Agreement.

8

(k)    <u>No Third Party Beneficiaries</u>.  Nothing herein is intended to confer any rights under this Agreement on any person other than Long Hill and GECC.

IN WITNESS WHEREOF, the parties hereto have executed this Shortfall Agreement through their duly authorized representatives as of the day and year first above written.

GENERAL ELECTRIC CAPITAL CORPORATION

BY:    Richard Arrowsmith, SVP


LONG HILL ALLIANCE COMPANY


BY:_____
        Stephen Kegler, President


Approved as to Form and Substance:

New York State Department of Health

By:_____

Name:_____

Title:_____

(k)  <u>No Third Party Beneficiaries</u>.  Nothing herein is intended to confer any rights under this Agreement on any person other than Long Hill and GECC.

IN WITNESS WHEREOF, the parties hereto have executed this Shortfall Agreement through their duly authorized representatives as of the day and year first above written.

GENERAL ELECTRIC CAPITAL CORPORATION


BY:    Richard Arrowsmith, SVP


LONG HILL ALLIANCE COMPANY

BY:    _David Lawlor_

David Lawlor, Treasurer


<u>Approved as to Form and Substance:</u>

<u>New York State Department of Health</u>

<u>By:</u>

<u>Name:</u>

<u>Title:</u>

F:\Gecc\Highgate\Docs\Shortfal Agt ~~Final 111606~~ 112006.Doc

(k)    <u>No Third Party Beneficiaries.</u>  Nothing herein is intended to confer any

rights under this Agreement on any person other than Long Hill and GECC.

IN WITNESS WHEREOF, the parties hereto have executed this Shortfall Agreement

through their duly authorized representatives as of the day and year first above written.

GENERAL ELECTRIC CAPITAL CORPORATION


BY:    Richard Arrowsmith, SVP


LONG HILL ALLIANCE COMPANY

BY:_____
                Stephen Kegler, President


Approved as to Form and Substance:

New York State Department of Health

By: David Wellns

Name: David Wollner

Title: Director, OHSM


F:\Gecc\Highgate\Docs\Shortfal Agt 112006.Doc

9