EXHIBIT "4"

At an Ex-Parte Part of the Supreme Court of the State of New York held in and for the County of Rensselaer at the Courthouse thereof, Congress and Second Street, Troy, New York, on _11/29_, 2006.

PRE S E NT:

Honorable CHRISTIAN Hummel
ACtiNS Supreme Justice.
Court

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RENSSELAER
------------------------------------------------------X

GENERAL ELECTRIC CAPITAL CORPORATION,

        Plaintiff,

               -against-

HIGHGATE MANOR GROUP, LLC, HIGHGATE
LTC MANAGEMENT, LLC, GUILDERLAND LTC
MANAGEMENT, LLC, DIANNA R. KOEHLER-
NACHAMKIN, EUGENE M. NACHAMKIN,
SCOTT H. BIALICK, HOWARD S. KRANT,
AMC NEW YORK, INC., d/b/a ROYAL CARE
PHARMACY, NEW YORK STATE DEPART-
MENT OF TAXATION AND FINANCE
and JOHN DOE NOS. 1-10 being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the premises
described in the complaint,

              Defendants.
------------------------------------------------------X

Index No.: 219393-06

**ORDER
APPOINTING RECEIVER**

        UPON reading the Amended Summons and Amended Verified Complaint together with

an Amended Notice of Pendency of the action filed in the Office of the Clerk of Rensselaer

County on the 8th day of November, 2006, which Amended Notice of Pendency was also filed in

the Office of the Clerk of Schenectady County on November 9, 2006 and in the Office of the

Clerk of Cortland County on November 9, 2006 and upon reading the Affirmation of William P.

Laino, Esq. dated November 20, 2006 (the "Laino Affirmation") filed in support of Plaintiff

General Electric Capital Corporation's ("Plaintiff" or "GECC") application pursuant to RPAPL §

1325 (1) and CPLR § 6401(a) for the appointment of a temporary receiver (the "Receiver"); and

it appearing to the satisfaction of the Court

THAT this action was brought by Plaintiff to foreclose a certain Consolidated and

Modified Mortgage  Assignment of Rents, Security Agreement and Financing Statement dated

May 26, 2005 (the "Consolidated Mortgage") executed, acknowledged and delivered by

Defendant Highgate Manor Group, LLC ("Highgate Manor"), a New York limited liability

company, as mortgagor, to Plaintiff, as mortgagee, and a certain Leasehold Mortgage,

Assignment of Rents, Security Agreement and Fixture Financing Statement dated May 26, 2005

(the "Leasehold Mortgage") executed, acknowledged and delivered by Defendant Highgate LTC

Management LLC ("Highgate Management"), a New York Limited Liability Company, as

mortgagor, to Plaintiff, as mortgagee, to secure the payment inter alia, of a certain Loan

Agreement ("Real Estate Loan Agreement") of even date and Consolidated and Modified Senior

Promissory Note (the "Senior Promissory Note") in the sum of $23,000,000.00 and a Revolving

Credit Agreement and Revolving Credit Note of even date in the maximum amount of

$4,000,000.00 (collectively the "Revolving Credit Documents"), and the performance of all other

covenants, agreements and obligations of inter alia, Highgate Manor and Highgate Management

to Plaintiff; and it further appearing

THAT the Consolidated Mortgage constitutes a lien encumbering Highgate Manor's fee

interest in certain premises referred to and described in the Amended Verified Complaint and

Amended Notice of Pendency, known as 284 Troy Road, East Greenbush, County of Rensselaer,

State New York; 100 New Turnpike Road, Troy and Schagitoke, County of Rensselaer, State of

New York; 1805 Providence Avenue, Niskayunna, County of Schenectady, State of New York,

and 28 Kellog Road, Cortland, County of Cortland, State of New York, all as more particularly

2

described in Exhibit B annexed to the Laino Affirmation (collectively, the "Mortgaged Premises"); and it further appearing

THAT the Leasehold Mortgage constitutes a lien encumbering Highgate Management's leasehold interest in the Mortgaged Premises; and it further appearing

THAT in and by the Consolidated Mortgage and the Leasehold Mortgage the mortgagors covenanted that inter alia, if a default should be made in the payment of the principal sum and/or interest thereon at the time therein specified for the payment thereof, or in the performance of any other covenant contained therein or in the Revolving Credit Documents as defined in the Amended Verified Complaint, GECC would be entitled, upon the event of default, to apply, as a matter of right, for the appointment of a Receiver to operate the Mortgaged Premises and to collect the rents, issues, income, fees and profits of the Mortgaged Premises, which application, by the terms of the Consolidated Mortgage and the Leasehold Mortgage and by operation of Real Property Law §254(10), may be made without notice and without regard to the adequacy of any security for the indebtedness secured by said Consolidated Mortgage and Leasehold Mortgage; and it further appearing

THAT the Consolidated Mortgage and Leasehold Mortgage are in default due, inter alia, to Highgate Manor's failure to make the payments due under the Real Estate Loan and the Senior Promissory Note; Highgate Manor's and Highgate Management's failure to pay certain taxes in the amount of $4,100,000.00 and Highgate Manor's and Highgate Management's failure to comply with other affirmative and negative covenants set forth in the Consolidated Mortgage, the Leasehold Mortgage and the Revolving Credit Documents; and that as a result of said defaults, Plaintiff has duly accelerated the payment of all amounts due or secured by the Consolidated Mortgage and the Leasehold Mortgage, and that the same are now due; and it further appearing

3

THAT all or a portion of the Mortgaged Premises is operated as four skilled nursing facilities (collectively, the "Facility", and the operator(s) of the Facility are hereinafter referred to [collectively] as the "Prior Operator") licensed by the New York State Department of Health and that Highgate Manor receives lease payments from Highgate Management for lease of the Mortgaged Premises and that Highgate Management receives income for the use of the Mortgaged Premises by residents or patients for skilled nursing and other services, and that such income might be applied toward and to the reduction of the mortgage indebtedness, to necessary disbursements in connection with the use, operation and maintenance of the Mortgaged Premises, and to the payment of real estate taxes, water and sewer rents, meter charges and insurance as and when they become due; and that the appointment of a Receiver of the operation of the Facility and of such rents, issues and profits of the Mortgaged Premises is necessary and desirable for the protection of the Plaintiff and the preservation of the Mortgaged Premises; and it is further appearing

THAT on April 26, 2005, pursuant to the assignments of rents and security agreements contained in the Consolidated Mortgage and Leasehold Mortgage, GECC duly filed a Financing Statement (UCC-1) with the Secretary of State of the State of New York evidencing a security interest given by Highgate Manor to GECC in the collateral described therein, which includes all rents, income, accounts, accounts receivable, general intangibles, equipment, inventory, fixtures and proceeds of the foregoing (the "Collateral") relating to the Mortgaged Premises, as security for payment of all amounts due under the Consolidated Mortgage and Leasehold Mortgage and that such UCC-1 was also filed on May 31, 2005 in the Office of the Clerk of Rensselear County and on June 1, 2005 in the Office of the Clerk of Cortland County and on June 7, 2005 in the Office of the Clerk of Schenectady County; and it further appearing

4

THAT Plaintiff is the lawful holder of the Real Estate Loan Agreement, Senior Promissory Note, Consolidated Mortgage, Leasehold Mortgage, Revolving Credit Documents and Financing Statement; and it further appearing

THAT Plaintiff has a duly perfected security interest in the Collateral for payment of all sums due it under the Consolidated Mortgage; and it further appearing

THAT the borrowers under the Real Estate Loan, Senior Promissory Note and Revolving Credit Documents secured by the Consolidated Mortgage and Leasehold Mortgage have heretofore admitted the validity of said instruments and their default thereunder; and it further appearing

THAT the New York State Department of Health ("Department of Health") has been apprised of this application and has approved the form of this Order and the Receiver to be appointed hereunder.

NOW, on motion of Moritt Hock Hamroff & Horowitz LLP, attorneys for Plaintiff, it is

ORDERED, that, Long Hill Alliance Company, having an office located at 580 Long Hill Avenue, Shelton, CT, be and hereby is appointed Receiver of the Mortgaged Premises, for the benefit of Plaintiff, with the usual powers and directions, including the authority to act as interim operator of the Facility and including the power to collect all rents, issues, fees, revenues, profits, and all other monies and proceeds now due and unpaid or to become due during the pendency of this action, and issuing from the Mortgaged Premises, including, but not limited to, all rents and other payments now due and unpaid or to become due from or on behalf of all residents, patients, medical insurance providers, including without limitation, Medicare and Medicaid, tenants, subtenants, occupants and licensees at the Mortgaged Premises, or any part thereof; and it is further

5

ORDERED, that prior to entering upon its duties as Receiver, the Receiver shall execute to the People of the State of New York, and file in the Office of the Clerk of Rensselaer County, with certified copies in the Offices of the Clerks of Schenectady County and Cortland County, an undertaking with sufficient surety, in the penal sum of $10,000.00 conditioned upon the faithful performance of its duties as the Receiver; and it is further

ORDERED, that prior to entering upon its duties, an officer of the Receiver shall execute and file an oath that the Receiver will faithfully and fairly discharge the trust committed to it; and it is further

ORDERED, that the Receiver shall accept the Mortgaged Premises in its then present "as is" condition; and it is further

ORDERED, that the duration of the appointment of the Receiver as receiver of the Mortgaged Premises shall continue until sale of the Mortgaged Premises pursuant to a Judgment of Foreclosure and Sale issued by this Court and delivery of a Referee's Deed to such purchaser, or until further order of this Court. Any prospective purchaser at such foreclosure sale or the appointment of a substitute Receiver shall be subject to the approval of the Department of Health of the State of New York pursuant to law and its rules and regulations applicable thereto. At the time of, and as a condition to any such purchase of the Facility or any one of them, "tail" insurance, on terms and conditions reasonably acceptable to Receiver and Plaintiff, shall be purchased covering the Receiver and paid for by the assets of the receivership, unless such assets shall be insufficient, in which case such insurance shall be paid for by the prospective purchaser of the Facility or any one of them. Anything in this Order to the contrary notwithstanding, the Department of Health may apply to this Court for an immediate Order terminating the authority of the Receiver or for an Order of Involuntary Receivership pursuant to the Public Health Law, if the Department of Health determines, in its sole discretion, that deficiencies have occurred at the

6

Mortgaged Premises which warrant the removal of the Receiver; (ii) the Receiver has been convicted of a crime; (iii) if otherwise mandated by law; (iv) upon the mutual written consent of Plaintiff, the Department of Health and the Receiver; or (v) if the Department of Health determines, with respect to matters other than deficiencies as set forth in clause (i) above, in its sole discretion, that the Receiver is not in substantial compliance with the terms and provisions of this Order, provided, however, that in such event the Department of Health will have provided the Receiver and Plaintiff with written notification of the nature and extent of its non-compliance, and the Receiver has failed, in the Department of Health's opinion, to make sufficient progress toward attaining compliance.  The Receiver waives any right to a hearing under any section of the Public Health Law relative to revocation of an operating certificate, and agrees to surrender the operating certificate issued to it upon expiration or termination of its receivership; and it is further

ORDERED, that anything in this Order to the contrary, the Receiver may apply to this Court for an order terminating the authority of the Receiver if the Receiver determines that funds provided from Facility Revenues (defined below) and funds provided pursuant to that certain separate written instrument, by and between the Receiver and Plaintiff, approved by the Department of Health and dated on or about the date of this Order (the "Shortfall Agreement"), are inadequate to permit it to operate the Facility in full compliance with the requirements of this Order.  A copy of the executed Shortfall Agreement is annexed as Exhibit 5 to the Laino Affirmation.  Receiver shall continue to serve in its capacity hereunder until otherwise directed by this Court, and any shortfalls shall be covered by Plaintiff pursuant to the Shortfall Agreement.  Receiver shall not have any liability or responsibility to pay any shortfall out of its own funds; and it is further

7

ORDERED, that prior to closing any foreclosure sale, the prospective purchaser shall submit an application for approval of establishment to the Public Health Council within sixty (60) days following the acceptance of its bid by the Referree to Sell and no sale shall be closed, consummated or approved by the Court unless and until the Department of Health has approved such purchaser and issued to it an operating certificate as it deems appropriate; and it is further

ORDERED, that provided the Facility or Prior Operator has a Title XIX provider agreement and the Receiver continues to meet the requirements for participation as a provider in the Medicaid program, the Receiver shall be reimbursed as an operator for patient services provided by it or in the name of the Facility through the Medicaid program pursuant to 10 N.Y.C.R.R. Subpart 86-2. The Receiver's expenses of operation shall be paid out of the rents, profits, income, Medicaid reimbursements and other sums received by the Receiver. The Department of Health shall not be responsible for any expenses incurred by the Receiver and related to the operation of the Facility which are not reimbursed pursuant to Subpart 86-2 or by any other payor; and it is further

ORDERED, that the Receiver shall not act as an agent of the Department of Health nor represent or hold itself out as an agent for the Department of Health in any matter, nor shall it hold itself out as a political subdivision of the State of New York. Notwithstanding the provisions of any other agreement to the contrary, the Receiver shall not add a new member, director, officer or stockholder, transfer or otherwise dispose of any shares of stock or voting rights, or modify the management or legal structure of the Receiver during the term of the receivership without the prior written approval of the Department of Health. The Receiver shall act in good faith and shall not delegate its duties and responsibilities to any other individual or entity, except that it may hire its own administrators and staff as specifically set forth in the Order as the same may be amended from time to time. The Receiver shall operate the Facility in

8

substantial compliance with all applicable laws, rules and regulations, including, but not limited to, the requirements for participation in the Medicare/Medicaid programs. If, upon commencement of the receivership, the Facility is not found to be in such substantial compliance, the Receiver shall be obligated to take reasonable actions so as to bring the Facility into such substantial compliance within a reasonable period of time. Such costs and expenses, as approved by Plaintiff, as well as any legal costs incurred in connection with the Receiver's applications to the Court, any penalties or fines finally imposed upon the Receiver or for which Receiver is deemed responsible by the State of New York or any other governmental agency, shall be subject to reimbursement by Plaintiff under the Shortfall Agreement. In its operation of the Facility as Receiver, the Receiver shall not engage in any practice that may result, directly or indirectly, in any financial gain to itself in its capacity as Receiver, except as expressly set forth herein. The Receiver shall be paid monthly fees for services as Receiver which, if annualized, would yield a sum equal to the greater of (i) $125,000 per month and (ii) three percent (3%) of monthly gross revenues at the Facility (the "Monthly Fee"), and shall be reimbursed for its legal and other expenses. The Monthly Fee and reimbursements shall be payable out of the rents, profits, income, Medicaid reimbursements and other charges received by the Receiver and to the extent such funds are insufficient, by the Plaintiff under the Shortfall Agreement. The payment to the Receiver of the Monthly Fee shall be prior to all other Facility Expenses. The reimbursement of the Monthly Fee by Medicaid shall be subject to 10 N.Y.C.R.R. Subpart 86-2; and it is further

ORDERED, that the Receiver is not the owner of the Facility and, except as required or permitted herein, shall not be responsible for any payables, liabilities or obligations of any kind incurred before the inception of the receivership, which shall remain the responsibility of the Prior Operator and which the Prior Operator shall pay in the ordinary course, provided, however,

9

that in the event the Prior Operator does not satisfy such obligations, the Receiver shall, consistent with applicable law governing receiverships, pay such past and future operating expenses as necessary or desirable in its judgment, to maintain operation of the Facility in accordance with the laws and applicable rules and regulations of the Department of Health governing the operation of the Facility, provided that such operating expenses (whether past or otherwise) shall only be payable out of the rents, profits, income, Medicaid reimbursements and other charges received by the Receiver, and any shortfall shall be paid by Plaintiff pursuant to the Shortfall Agreement; and it is further

ORDERED, that in the event of the expiration or termination of the receivership, including by sale of the Mortgaged Premises pursuant to a Judgment of Foreclosure and Sale, the Receiver shall execute and deliver such assignments, reassignments, conveyances, releases and other documents as may be reasonably required to transfer the assets, liabilities and operation of the Facility and/ or the Prior Operator, and divest itself of all incidents of ownership thereof to such person(s) or entities as the Prior Operator shall designate or, in the event of a foreclosure sale, to the purchaser at such sale, subject to the approval of the Department of Health; and it is further

ORDERED, that the Receiver, within ninety (90) days after the end of each calendar quarter, shall provide the Department of Health, Plaintiff and the Prior Operator with an accounting, in accordance with the Prior Operator's previous practices or on such other basis as the Department of Health may require, of its operation of the Facility during the term of its receivership. Nothing herein contained shall be construed so as to limit Receiver's obligation to maintain financial accounts and comply with reporting requirements to the Department of Health as hereinafter provided. The provisions of this section shall survive the expiration or termination of the receivership; and it is further

10

ORDERED, that the Department of Health will not have an adequate remedy at law in the event of a breach or threatened breach by the Receiver of any of its obligations under this Order, and the Department of Health shall be entitled to such equitable and injunctive relief as may be available to restrain a violation or threatened violation of the provisions of this Order, or to compel compliance with and enforce the provisions hereof. Nothing herein shall be construed as prohibiting the Prior Operator or Plaintiff from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages, or as specifically granting any rights to any parties not named in this Order; and it is further

ORDERED, that the Receiver shall not incur any obligation or make borrowings secured by the Facility or any part of the Facility or the Facility's assets, or undertake any transaction, other than in the ordinary course of business, subject to this Order, which would place an encumbrance upon the assets of the Facility during the term of the receivership; and it is further

ORDERED, that the Receiver may apply and file in its name to such administrative and/or judicial rate appeals as the Prior Operator may have applied for or filed under the Medicaid, Medicare, or any other third party reimbursement or insurance program. The Receiver shall prepare, file and prosecute such appeals before the appropriate administrative or judicial bodies including such actions or proceedings relating to periods prior to the Receivership Date. It is expressly understood that the Receiver may file such rate appeals as it may deem appropriate arising from its operations. Monies generated by all appeals shall be retained or applied by the Receiver in accordance with this Order; and it is further

ORDERED, that during the term of the receivership, the Receiver shall keep and maintain accurate records of the time its personnel devotes to the management and operation of the Facility, indicating in reasonable detail the nature and extent of the matters on which they worked so that the time may properly be allocated to appropriate cost centers; and it is further

11

ORDERED, that if the Receiver shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or shall file any petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future Federal, State or other statute or law, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of the Receiver or of the Facility, and such appointment shall not have been vacated or stayed, on appeal or otherwise, or if within twenty (20) days after the expiration of any such stay, such appointment shall not have been vacated, Plaintiff or the Department of Health may apply to this Court for the immediate appointment of a substitute receiver. Nothing herein shall prohibit the Department of Health from commencing proceedings for the appointment of an involuntary receiver pursuant to the Public Health Law; and it is further

ORDERED, that the Prior Operator and Plaintiff shall be entitled to access to all of the books and records relating to the operation of the Facility during the receivership, at the Facility, during normal business hours upon 24 hours notice to the Receiver upon the condition that this does not interfere with the operation of said Facility and that Plaintiff's access shall not violate any patient's right of privacy or confidentiality; and it is further

ORDERED, that except as otherwise limited in this Order, the powers, rights, duties and obligations of the Receiver shall include those accorded a receiver appointed in an action to foreclose a mortgage on real property and in equity, and the Receiver shall also have the powers, duties, rights and obligations as if appointed under Section 2810(2) of the Public Health Law, unless otherwise limited herein, including, but not limited to, the following:

1.      The Receiver may sue and only be sued in its capacity as receiver for the Facility. Absent gross negligence or willful misconduct, no officer or director or affiliate of Receiver may

12

be held liable or responsible for any penalties or fines assessed against, or other liability or obligation of, the Receiver.

2. The Receiver shall use reasonable care, diligence and prudence in the use and maintenance of the Mortgaged Premises.

3. The Receiver shall maintain an appropriate system of financial accounts with respect to the operation of the Facility, shall meet all reporting requirements of the Department of Health, and shall itemize receipts and expenditures in a current and business-like manner in accordance with New York State rules and regulations as well as the New York State RHCF Accounting and Reporting Manual. The Receiver shall have full control over and take full responsibility for all accounts and bookkeeping with the Facility during the term of its receivership hereunder, including, in Receiver's reasonable discretion, by continuing the use of existing personnel at the Facility who performed such responsibilities and functions prior to the receivership, and continuing the use of existing billing and bookkeeping processes.

4. Except as limited by subparagraphs 8 and 9 below, the Receiver may enter into contracts and incur expenses for the maintenance and operation of the Mortgaged Premises and the Receiver is authorized to retain such person or persons to perform all services necessary in connection with the repair and maintenance of the Mortgaged Premises and to pay all charges necessary for the repair and maintenance of the Mortgaged Premises incurred in the ordinary course.

5. The Receiver shall collect incoming payments from all sources and apply them to the costs incurred in the performance of its functions hereunder. In the event that the Department of Health determines that deficiencies exist at the Facility, and in accordance with applicable law imposes a civil penalty, such penalty may be assessed against the Receiver if the Department of Health, in its discretion, determines either that the deficiencies arose subsequent

13

to the appointment of the Receiver or that the deficiencies arose prior to such appointment, but were not corrected within a reasonable period of time.  Such penalty, if any, shall be paid out of the assets of the receivership.

6.    The Receiver may hire and fire such personnel, including professional consultants, as from time to time it may deem necessary or advisable, except as prohibited by law or regulation or as limited by subparagraphs 8 and 9 below.  The Receiver may not hire in any capacity, retain as a consultant or in any other way utilize the services of any partner, director, officer, shareholder or member of the Prior Operator or Prior Operator entities.  Such consultants shall be required to keep and maintain accurate records of the time they devote to the management and operation of the Facility indicating in reasonable detail the nature and extent of the matters on which they worked so that their time may properly be allocated to appropriate cost centers, and in the event such expenses are reimbursable under the Medicaid program, as to which the Department of Health makes no representation and takes no position.

7.    The Receiver, in its reasonable discretion and on terms and conditions acceptable to it and the carrier(s), shall continue the Facility's malpractice and general liability insurance and may secure malpractice and general liability insurance in its own name and/or the Receiver may be added by endorsement to the Facility's malpractice and general liability insurance policies.  Such insurance may be in amounts greater than provided for immediately prior to the Receivership.  The Department of Health at this time takes no position with respect to the reimbursability of such expenses under the Medicaid program.

8.    Prior to making any capital or leasehold improvement in excess of Fifteen Thousand Dollars ($15,000.00),  the Receiver shall advise the Prior Operator, Plaintiff and the Department of Health of its plans and shall obtain the written consent of the Prior Operator and Plaintiff, provided, however, that the consent of the Prior Operator and the Plaintiff will not be

14

required if such improvement is mandated by the New York State Department of Health in order to effect compliance with applicable statutes and regulations. In the absence of such consent (if such consent is required pursuant to the terms of this Section 8), Receiver may apply to the Court for termination of its duties as Receiver under this Order.

9.      Except as provided in subparagraph 8 above, the Receiver is authorized, (i) from time to time without further order of the Court, to negotiate and enter into any new contract, lease or agreement or renewal thereof, the terms of which do not exceed one year and the consideration for which does not exceed Twenty Five Thousand Dollars ($25,000.00); (ii) without further order of the Court, to make payments and perform existing contracts, leases and agreements in the normal course of the operations of the Mortgaged Premises as a skilled nursing facility for patients and residents, subject to the rules and regulations of the New York State Department of Health and pursuant to the terms and conditions of such existing contracts, leases and agreements, and (iii) subject to further order of the Court, execute the surrender, or release of, or the modification or amendment which materially alters the terms of, any contract, lease or agreement now or hereafter in existence with respect to the Mortgaged Premises.

10.     The Receiver has and shall have no employment, consulting agreements or other business agreements of any kind whatsoever with the Prior Operator or any principal of the Prior Operator or Prior Operator entities and no agreement of such kind will be entered into during the term of this Agreement; and it is further

ORDERED, that the Receiver have full access to, and shall make, all books and records, accounts, agreements and documents of whatsoever nature, or copies thereof, relating to the Facility available to the Department of Health upon demand. There will be no charge to the Department of Health for any copies made. Nothing herein shall be deemed to transfer ownership of the books and records of the Facility to the Receiver; and it is further

15

ORDERED, that no provision contained herein shall be deemed to relieve the Prior Operator or any person from any civil or criminal liability incurred or imposed by law by reason of their acts or omissions prior to the appointment of the Receiver; and it is further

ORDERED, that a provisional operating certificate shall be deemed to have been issued to the Receiver as of the Receivership Date. Such operating certificate shall be issued and delivered to the Receiver by the Department of Health as soon as practicable and shall remain in effect during the period the Receiver serves as Receiver of the Mortgaged Premises hereunder. Upon termination of the receivership, the Receiver shall surrender its operating certificate to the Department of Health. The Department of Health shall promulgate a Medicaid reimbursement rate for the Receiver in accordance with Subpart 86-2. The Department of Health, provided all conditions of participation in Title XVIII and Title XIX are met, shall recommend to the United States Department of Health and Human Services that a Title XVIII Provider Agreement be issued to the Receiver and to issue a Title XIX Provider Agreement to the Receiver. Except as otherwise specifically provided herein, nothing contained herein shall be construed in any way to alter or abridge the right and authorities of the Department of Health or the Public Health Council as provided for in the <u>Public Health Law</u>. Nothing herein contained shall be deemed to change the Medicaid reimbursement policies, rules and regulations of the New York State Department of Health; and it is further

ORDERED, that Plaintiff shall pay to the Receiver any and all shortfalls pursuant to the Shortfall Agreement. The Shortfall Agreement, as per its terms, may be terminated by Plaintiff upon seventy-five (75) days written notice to the Receiver and the Department of Health; provided, however, that Plaintiff's duty to fund any shortfalls under the Shortfall Agreement shall continue until the effective date of any court order terminating the Receivership. Following

16

such termination of the receivership, the Receiver shall not be liable or responsible as either receiver or operator for the operations of the Facility; and it is further

ORDERED, that any notices to the Department of Health by the Receiver shall be sent to:

Donald P. Berens, Jr., General Counsel
New York State Department of Health
Nelson A. Rockefeller Empire State Plaza
Erastus Corning Tower, 24th Floor, RM 2482
Albany, New York 12237
Attn: Alan J. Lawitz, Associate Attorney;

and it is further

ORDERED, that the Receiver be, and hereby is, authorized and directed to demand, collect and receive from Highgate Manor, Highgate Management, the residents, patients, tenants, subtenants, occupants and licensees in possession of or using the Mortgaged Premises, and any other persons liable therefore, all the rents, license fees, medical reimbursements, and other charges thereof now due and unpaid, or hereafter to become due, and that the Receiver be and hereby is authorized to institute and carry on all legal proceedings necessary for the protection of the Mortgaged Premises or any portion thereof, including such proceedings as may be necessary to recover possession of the whole, or any part thereof, and/or apply to the Court to compel the residents, patients, medical insurance providers, including Medicare and Medicaid, tenants, subtenants, occupants and licensees to attorn to the Receiver, and to institute and prosecute suits for the collection of such rents, fees, income, medical reimbursements, profits and other charges now due and hereafter to become due, and for summary or other proceedings for the removal of any residents, patients, tenant, subtenants, occupants, licensees or other persons therefrom as provided by law; and it is further

ORDERED, that the Receiver shall forthwith deposit all monies received by it at the time it receives same in a special account in its own name as Receiver in *Pioneer Savings Bank* *Iras*, New York, (the "Depository") and that no withdrawals shall be made

17

therefrom except in the ordinary course of the operation, repair and maintenance of the Mortgaged Premise or as directed herein or by further Order of the Court, and that the Receiver shall furnish Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York, 11530 (Attn: William P. Laino Esq.), with monthly statements of the receipts and expenditures of the receivership, together with a photocopy of the monthly statements received from the above-described Depository. Nothing herein is intended to amend, modify or abrogate the lock box arrangement for the collection and deposit of accounts receivable by the Receiver on behalf of the Facilities pursuant to the Revolving Credit Agreement between the Facilities and GECC; and it is further

ORDERED, that the residents, patients, tenants, subtenants, occupants or licensees of the Mortgaged Premises and such other persons as may be in possession of or use the Mortgaged Premises, or any portion thereof, and any medical insurance providers, including Medicare and Medicaid, be and, are hereby directed to attorn to the Receiver and, until the further order of this Court, to pay over to the Receiver all rents, license fees, profits and other income of the Mortgaged Premises or any medical reimbursement for services rendered to residents or patients at the Mortgaged Premises now due and unpaid or that may hereafter become due; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, representatives, employees, servants, attorneys or anyone else acting on their behalf, be enjoined and restrained from collecting the rents, profits, income, license fees, medical reimbursements and other charges resulting from use of or services provided at the Mortgaged Premises or the rendition of services therefore and from interfering in any manner with the Mortgaged Premises or its possession, use or operation by the Receiver or the supply of any and all utilities or other services to the Mortgaged Premises, and from transferring, removing or

18

changing entries in the books and records of or pertaining to the Mortgaged Premises, or from transferring, removing or in any way disturbing any of the residents, patients, tenants, occupants, licensees or employees at the Mortgaged Premises; and that all such residents, patients, tenants, subtenants, occupants or licensees of the Mortgaged Premises and other persons liable for same, including medical insurance providers for services rendered to such residents or patients, be, and hereby are, enjoined and restrained from paying any such income or other charges for the Mortgaged Premises to Highgate Manor, Highgate Management, their affiliates, or their partners, agents, representatives, employees, servants, attorneys or anyone else acting on their behalf or to any other person other than the Receiver herein or his/her duly designated agent, provided, however, that Receiver may in its reasonable discretion elect to continue the employ of Facility billing, bookkeeping and clerical personnel, and to the extent such election is made the restrictions set forth in this paragraph shall not be applicable to and with respect to such persons; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, attorneys, representatives, servants, employees and assigns, are directed to, and shall, cooperate fully with the Receiver in immediately providing the Receiver with all keys, books and records, financial instruments and bank accounts, files, orders, leases, subleases, licenses, maintenance agreements, contracts, invoices, correspondence, notices, registration statements, employee records and other books, records, papers and agreements relating to the ownership, maintenance, operation or leasing of the Mortgaged Premises or any part or parts thereof and all other documents, materials, and things necessary for the Receiver to discharge his/her obligations hereunder which any of them may have in their possession; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, attorneys, representatives, employees and assigns, (a) shall hold in trust and

19

immediately pay over to the Receiver any and all rents, issues, profits, medical reimbursements, or other income with respect to the Mortgaged Premises received by any of them on or after the appointment of the Receiver, including those proceeds, rents, issues, profits and other income that have accrued prior thereto and remain unpaid as of such appointment; and (b) shall hold in trust and immediately pay over to the Receiver any and all security deposits received from residents, patients, tenants, subtentants, licensees or other persons for the lease, use or occupancy of the Mortgaged Premises; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, representatives, assigns, servants, employees, and attorneys, be and hereby are enjoined and restrained from disposing of any rents, issues, income, medical reimbursement, or profits of the Mortgaged Premises or any part thereof, previously received by any of them except in payment of all liabilities relating to the operation of the Mortgage Premises as have accrued prior to the appointment of the Receiver and outstanding sums secured by the Consolidated Mortgage and the Leasehold Mortgage, and they are further restrained from interfering in any manner with the Mortgaged Premises or the possession of same by the Receiver; and it is further

ORDERED, that pursuant to the provisions of the General Obligations Law § 7-105, Highgate Manor, Highgate Management and any entity or person holding any deposits or advanced rent as security under any lease, use or occupancy or license agreement affecting space in the Mortgaged Premises affected by this action shall (i) turn same over to the Receiver within five (5) days after said Receiver shall have qualified, to be held by the Receiver in a separate savings account in the above referenced Depository in the name of the Receiver as "Special Deposit Account", pursuant to the terms and provisions of the agreements entered into by the persons who made such deposits or advance payments of rent and (ii) notify each of such persons by certified mail that the respective security deposits or advance payments of rent of each of the tenants so received are being held by the Receiver

pursuant to the provisions of each such person's respective agreement; and thereupon the said Receiver shall hold such security subject to such disposition thereof as shall be provided in an order of this Court to be made and entered in this action; and it is further

ORDERED, that the Receiver be, and hereby is, authorized and directed: (a) to keep the Mortgaged Premises insured against loss or damage by fire and in repair; (b) to pay the taxes, assessments, water charges, sewer rents, electric bills, and other charges on the Mortgaged Premises, in a manner consistent with the provisions of this Order; (c) to comply with all requirements of any municipal department or authority having jurisdiction over the Mortgaged Premises; (d) to procure, if necessary, such insurance and liability insurance against claims for losses or injuries to persons and property, which may be asserted by persons on, near or about the Mortgaged Premises, as may be necessary; and (e) to pay to Plaintiff monthly, out of funds remaining in the custody of the Receiver, all interest accrued on the Real Estate Loan, Senior Promissory Note and Revolving Credit Documents secured by its Consolidated and Leasehold Mortgages; and it is further

ORDERED, that all persons, other than patients or residents receiving skilled nursing services, now or hereafter in possession of the Mortgaged Premises, or any part thereof, and not holding such possession under valid and existing leases, subleases, licenses or tenancies, do forthwith surrender such possession to the Receiver; and it is further

ORDERED, that the Receiver, or any party to this action, may, at any time, upon proper and sufficient notice to all parties who have appeared in this action, apply to this Court for further or other instructions or authority, whenever such instructions or additional authority shall be deemed necessary or desirable in order to enable the Receiver to properly fulfill its duties or to protect Plaintiff's interest in the property secured by the Consolidated and Leasehold Mortgages; and it is further

21

ORDERED, that the Receiver shall comply fully with the requirements of CPLR §6401-6404 and that the Receiver shall execute and file in the Office of the Clerk of Rensselaer County, a copy of this Order, its original oath of office, and its undertaking, with certified copies thereof filed in the Offices of the Clerks of Schenectady and Cortland Counties, and shall serve a copy of its oath of office and its undertaking, on the Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York 11530 (Attn: William P. Laino, Esq.) and on all of the parties named in this action or the attorneys who have appeared for such parties, and, thereafter, the Receiver shall serve any other papers filed by its with the Court in connection with its appointment on all parties to this action who have appeared herein and are not in default and the Department of Health of the State of New York; and it is further

ORDERED, that all of Plaintiff's costs and expenses incurred by it pursuant to this Order, including those incurred under the Shortfall Agreement, shall be added to the Consolidated Mortgage and Leashold Mortgage (collectively the "Mortgages"), shall be a lien on the Mortgaged Premises and shall be recoverable from the borrowers, guarantors and other persons and properties liable as provided in said Mortgages and the loan documents secured thereby or executed in connection therewith.

ENTER,

_[signature]_

_Acting_ J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By: _[signature]_

Name: David Wollner

Title: Director, OHSM

F:\Gecc\Highgate\Docs\Receivership Order Final V3 112006.Doc

Long Hill Alliance Company Proposed Receiver

By: _____

Name: _____

Title: _____

22

ORDERED, that the Receiver shall comply fully with the requirements of CPLR §6401-6404 and that the Receiver shall execute and file in the Office of the Clerk of Rensselaer County, a copy of this Order, its original oath of office, and its undertaking, with certified copies thereof filed in the Offices of the Clerks of Schenectady and Cortland Counties, and shall serve a copy of its oath of office and its undertaking, on the Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York 11530 (Attn: William P. Laino, Esq.) and on all of the parties named in this action or the attorneys who have appeared for such parties, and, thereafter, the Receiver shall serve any other papers filed by its with the Court in connection with its appointment on all parties to this action who have appeared herein and are not in default and the Department of Health of the State of New York; and it is further

ORDERED, that all of Plaintiff's costs and expenses incurred by it pursuant to this Order, including those incurred under the Shortfall Agreement, shall be added to the Consolidated Mortgage and Leashold Mortgage (collectively the "Mortgages"), shall be a lien on the Mortgaged Premises and shall be recoverable from the borrowers, guarantors and other persons and properties liable as provided in said Mortgages and the loan documents secured thereby or executed in connection therewith.

ENTER,

_(signature)_

_____ J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By:_____

Name:_____

Title:_____
F:\Geco\Highgate\Docs\Receivership Order Final V3 112006.Doc

Long Hill Alliance Company Proposed Receiver

By: _David Lawlor_

Name: _David Lawlor_

Title: _Treasurer_

22