EXHIBIT "10"

At an Ex-Parte Part of the Supreme Court of
the State of New York held in and for the
County of Rensselaer at the Courthouse
thereof, Congress and Second Street, Troy,
New York, on _11/3_ , 2008.

PRESENT:

Honorable _CHRISTIAN HUMMEL_
_acting_ Justice.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RENSSELAER
------------------------------------------------------------X

GENERAL ELECTRIC CAPITAL CORPORATION,

                        Plaintiff,

      -against-

HIGHGATE MANOR GROUP, LLC, HIGHGATE
LTC MANAGEMENT, LLC, GUILDERLAND LTC
MANAGEMENT, LLC, DIANNA R. KOEHLER-
NACHAMKIN, EUGENE M. NACHAMKIN,
SCOTT H. BIALICK, HOWARD S. KRANT,
AMC NEW YORK, INC., d/b/a ROYAL CARE
PHARMACY, NEW YORK STATE DEPART-
MENT OF TAXATION AND FINANCE
and JOHN DOE NOS. 1-10 being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the premises
described in the complaint,

                        Defendants.
------------------------------------------------------------X

Index No.: 219393-06

**ORDER APPOINTING**
**SUBSTITUTE RECEIVER**

UPON the Order Appointing Receiver dated November 29, 2006 (the "Receivership

Order") entered by this Court, all the pleadings, proceedings and documents described in the

Receivership Order, the proceedings heretofore occurring in this action, the Order of the U.S.

Bankruptcy Court dated May 18, 2007 (Case Nos. 07-11068 jointly administered, together, the

"Bankruptcy Case"), excusing compliance with §543 of the Bankruptcy Code to enable the

Receiver, The Long Hill Alliance Company ("Long Hill"), to continue to fully and faithfully

perform all its duties under the Receivership Order; and it appearing to the satisfaction of the Court

THAT this action was brought by Plaintiff to foreclose a certain Consolidated and Modified Mortgage Assignment of Rents, Security Agreement and Financing Statement dated May 26, 2005 (the "Consolidated Mortgage") executed, acknowledged and delivered by Defendant Highgate Manor Group, LLC ("Highgate Manor"), a New York limited liability company, as mortgagor, to Plaintiff, as mortgagee, and a certain Leasehold Mortgage, Assignment of Rents, Security Agreement and Fixture Financing Statement dated May 26, 2005 (the "Leasehold Mortgage") executed, acknowledged and delivered by Defendant Highgate LTC Management LLC ("Highgate Management"), a New York Limited Liability Company, as mortgagor, to Plaintiff, as mortgagee, to secure the payment, inter alia, of a certain Loan Agreement ("Real Estate Loan Agreement") of even date and Consolidated and Modified Senior Promissory Note (the "Senior Promissory Note") in the sum of $23,000,000.00 and a Revolving Credit Agreement and Revolving Credit Note of even date in the maximum amount of $4,000,000.00 (collectively the "Revolving Credit Documents"), and the performance of all other covenants, agreements and obligations of, inter alia, Highgate Manor and Highgate Management to Plaintiff; and it further appearing

THAT the Consolidated Mortgage constitutes a lien encumbering Highgate Manor's fee interest in certain premises referred to and described in the Amended Verified Complaint and Amended Notice of Pendency, known as 284 Troy Road, East Greenbush, County of Rensselaer, State New York; 100 New Turnpike Road, Troy and Schagitoke, County of Rensselaer, State of New York; 1805 Providence Avenue, Niskayunna, County of Schenectady, State of New York, and 28 Kellog Road, Cortland, County of Cortland, State of New York, all as more particularly

described in Exhibit B annexed to the Laino Affirmation[1] (collectively, the "Mortgaged Premises"); and it further appearing

THAT the Leasehold Mortgage constitutes a lien encumbering Highgate Management's leasehold interest in the Mortgaged Premises; and it further appearing

THAT in and by the Consolidated Mortgage and the Leasehold Mortgage the mortgagors covenanted that, inter alia, if a default should be made in the payment of the principal sum and/or interest thereon at the time therein specified for the payment thereof, or in the performance of any other covenant contained therein or in the Revolving Credit Documents as defined in the Amended Verified Complaint, Plaintiff would be entitled, upon the event of default, to apply, as a matter of right, for the appointment of a Receiver to operate the Mortgaged Premises and to collect the rents, issues, income, fees and profits of the Mortgaged Premises, which application, by the terms of the Consolidated Mortgage and the Leasehold Mortgage and by operation of Real Property Law §254(10), may be made without notice and without regard to the adequacy of any security for the indebtedness secured by said Consolidated Mortgage and Leasehold Mortgage; and it further appearing

THAT the Consolidated Mortgage and Leasehold Mortgage are in default due, inter alia, to Highgate Manor's failure to make the payments due under the Real Estate Loan and the Senior Promissory Note; Highgate Manor's and Highgate Management's failure to pay certain taxes or cash receipts assessments in an amount in excess of $4,100,000.00 and Highgate Manor's and Highgate Management's failure to comply with other affirmative and negative covenants set forth in the Consolidated Mortgage, the Leasehold Mortgage and the Revolving Credit Documents; and that as a result of said defaults, Plaintiff has duly accelerated the payment of all amounts

---

[1] References to the Laino Affirmation shall be to the Affidavit of William P. Laino, Esq., dated November 20, 2006, in support of the motion for the entry of the Receivership Order.

due or secured by the Consolidated Mortgage and the Leasehold Mortgage, and that the same are now due; and it further appearing

THAT all or a portion of the Mortgaged Premises is operated as four skilled nursing facilities (collectively, the "Facility") licensed by the New York State Department of Health and that Highgate Manor is entitled to receive lease payments from Highgate Management for lease of the Mortgaged Premises and that Highgate Management receives income for the use of the Mortgaged Premises by residents or patients for skilled nursing and other services, and that such income might be applied to necessary disbursements in connection with the use, operation and maintenance of the Mortgaged Premises, and to the payment of real estate taxes, water and sewer rents, meter charges and insurance as and when they become due; and that the appointment of a receiver of the operation of the Facility and of such rents, issues and profits of the Mortgaged Premises is necessary and desirable for the protection of the Plaintiff and the preservation of the Mortgaged Premises; and it is further appearing

THAT on April 26, 2005, pursuant to the assignments of rents and security agreements contained in the Consolidated Mortgage and Leasehold Mortgage, GECC duly filed a Financing Statement (UCC-1) with the Secretary of State of the State of New York evidencing a security interest given by Highgate Manor to Plaintiff in the collateral described therein, which includes all rents, income, accounts, accounts receivable, general intangibles, equipment, inventory, fixtures and proceeds of the foregoing (the "Collateral") relating to the Mortgaged Premises, as security for payment of all amounts due under the Consolidated Mortgage and Leasehold Mortgage and that such UCC-1 was also filed on May 31, 2005 in the Office of the Clerk of Rensselear County and on June 1, 2005 in the Office of the Clerk of Cortland County and on June 7, 2005 in the Office of the Clerk of Schenectady County; and it further appearing

THAT Plaintiff is the lawful holder of the Real Estate Loan Agreement, Senior Promissory Note, Consolidated Mortgage, Leasehold Mortgage, Revolving Credit Documents and Financing Statement; and it further appearing

THAT Plaintiff has a duly perfected security interest in the Collateral for payment of all sums due it under the Consolidated Mortgage, subject, however, to rights reserved or preserved by Orders of the United States Bankruptcy Court; and it further appearing

THAT the borrowers under the Real Estate Loan, Senior Promissory Note and Revolving Credit Documents secured by the Consolidated Mortgage and Leasehold Mortgage have heretofore admitted the validity of said instruments and their default thereunder; and it further appearing

THAT the Receivership Order appointed Long Hill as Receiver; and it further appearing

THAT on April 16, 2007 Highgate Manor and Highgate Management filed petitions for relief under Chapter 11 of the United States Bankruptcy Code; and it further appearing

THAT Mark I. Fishman (the "Trustee") duly appointed by the Bankruptcy Court in the Bankruptcy Case to act as trustee pursuant to §1104 of the Bankruptcy Code over Highgate Manor and Highgate Management, has obtained the approval of the Bankruptcy Court for the sale of substantially all of the assets of Highgate Manor and Highgate Management, including the Collateral, pursuant to Order dated August 28, 2008 (the "Final Sale Order") and it further appearing

THAT, pursuant to the Final Sale Order, Oasis HC, LLC will be the purchaser of, inter alia, the Collateral and such purchaser seeks to replace or designate a replacement (subject to the approval of the New York State Department of Health ("Department of Health"), GE, and the Trustee) for Long Hill as receiver pending a closing under the Final Sale Order (Purchaser or its designee hereinafter referred to as the "Substitute Receiver"), and it further appearing

THAT the Department of Health has been apprised of this application and has approved the form of Order Appointing a Substitute Receiver to take the place of Long Hill as the receiver to be appointed hereunder;

THAT Plaintiff and the DOH wish to provide the mechanism for Long Hill to return as receiver under the terms of the Receivership Order should closing not occur pursuant to the Final Sale Order.

NOW, on motion of Moritt Hock Hamroff & Horowitz LLP, attorneys for Plaintiff, it is

**ORDERED** that within ten (10) business days from the entry of this Order, Long Hill is discharged as Receiver and is relieved of all further obligations with respect to the Facilities; and it is further

**ORDERED** that the surety in all bonds posted by the Receiver are discharged and the Receiver's bond is cancelled; and it is further

**ORDERED** that the fees paid to the Receiver and its professionals are approved; and it is further

**ORDERED** that Long Hill may, at no expense to the Substitute Receiver, establish a certain Self-Insured Retention ("SIR") Fund used to pay the deductible portion of claims and defense costs under a "tail insurance policy" the funding and payment of which are to be as agreed with Plaintiff. Such SIR Fund is not property of either the receivership or of the Bankruptcy Estate. Long Hill shall account to Plaintiff to the extent agreed between them. Long Hill shall use reasonable efforts to add the Trustee as an additional insured under any such "tail insurance policy"; and it is further

**ORDERED**, that, EF Consulting, LLC, c/o Esther Farkovits, 17 Beaver Dam Road, Pomona, New York 10970, and referred to herein as the Substitute Receiver, be and hereby is appointed receiver of the Mortgaged Premises, for the benefit of Plaintiff and consistent with

bankruptcy court orders, with the usual powers and directions, including the authority to act as interim operator of the Facility and including the power to collect all rents, issues, fees, revenues, profits, and all other monies and proceeds now due and unpaid or to become due during the pendency of this action, and issuing from the Mortgaged Premises, including, but not limited to, all rents and other payments now due and unpaid or to become due from or on behalf of all residents, patients, medical insurance providers, including without limitation, Medicare and Medicaid, tenants, subtenants, occupants and licensees at the Mortgaged Premises, or any part thereof; and it is further

**ORDERED**, that prior to entering upon its duties as receiver, the Substitute Receiver shall execute to the People of the State of New York, and file in the Office of the Clerk of Rensselaer County, with certified copies in the Offices of the Clerks of Schenectady County and Cortland County, an undertaking with sufficient surety, in the penal sum of $10,000.00 conditioned upon the faithful performance of its duties as the receiver and a fiduciary bond payable to the United States in the amount of $500,000.00; and it is further

**ORDERED**, that prior to entering upon its duties, the Substitute Receiver shall execute and file an oath that the Substitute Receiver will faithfully and fairly discharge the trust committed to it; and it is further

**ORDERED**, that the Substitute Receiver shall accept the Mortgaged Premises in its then present "as is" condition; and it is further

**ORDERED**, subject to further order of this Court, the duration of the appointment of the Substitute Receiver as receiver of the Mortgaged Premises shall continue until the earlier of a: (i) sale of the Mortgaged Premises, subject to Bankruptcy Court approval, pursuant to a Judgment of Foreclosure and Sale issued by this Court and delivery of a Referee's Deed to such purchaser, or (ii) closing on the sale of the Mortgaged Premises as authorized by the Bankruptcy

Court. Any prospective purchaser at such foreclosure or bankruptcy sale or the appointment of a further substitute receiver shall be subject to the approval of the Department of Health pursuant to law and its rules and regulations applicable thereto. Anything in this Order to the contrary notwithstanding, the Department of Health may apply to this Court for an immediate order terminating the authority of the Substitute Receiver or for an Order of Involuntary Receivership pursuant to the Public Health Law, if the Department of Health determines, in its sole discretion, (i) that deficiencies have occurred at the Mortgaged Premises which warrant the removal of the Substitute Receiver; (ii) the Substitute Receiver has been convicted of a crime; (iii) if otherwise mandated by law; (iv) upon the mutual written consent of Plaintiff, the Department of Health and the Substitute Receiver; or (v) if the Department of Health determines, with respect to matters other than deficiencies as set forth in clause (i) above, in its sole discretion, that the Substitute Receiver is not in substantial compliance with the terms and provisions of this Order, provided, however, that in such event the Department of Health will have provided the Substitute Receiver, Plaintiff and the Trustee with written notification of the nature and extent of its non-compliance, and the Substitute Receiver has failed, in the Department of Health's opinion, to make sufficient progress toward attaining compliance. The Substitute Receiver waives any right to a hearing under any section of the Public Health Law relative to revocation of an operating certificate, and agrees to surrender the operating certificate issued to it upon expiration or termination of its receivership; and it is further

**ORDERED**, that the Substitute Receiver, Purchaser and Operating Designee (as defined in the Purchase Agreement referenced in the Final Sale Order) (a) shall have the responsibility and obligation to pay and discharge all obligations incurred by Long Hill at or for the Facility, including trade accounts payable, accrued vacation, sick and personal time and similar items, cash receipts assessment and similar taxes, employee wages or salary and taxes thereon, and

required contributions under employee benefit plans or programs, and including accrued but unbilled expenses and/or obligations incurred after the filing of the Bankruptcy Case as well as, subject to the conditions and to the extent provided in Exhibit A hereto, all fees and expenses of the Trustee, the U.S. Trustee, Creditors Committee and their professionals which accrue subsequent to the Final Sale Order, (all of the foregoing, commencing with "trade accounts," being referred to, collectively, as the "Expenses"), (b) shall fund all operations at the Facility during the term of the Substitute Receiver's receivership, including prior debts and obligations coming due and/or remaining unpaid and debts and obligations incurred or undertaken during said term and all other Expenses of the receivership and (c) shall have liability and responsibility to pay any shortfall out of its own funds if the income generated at the Facility is insufficient to meet the expenses of the Facility. At or prior to the closing pursuant, to the Final Sale Order, the Substitute Receiver, Purchaser and Operating Designee shall have paid in full all of the debts, obligations, and/or Expenses which are the subject of this paragraph and provide sworn certifications that such debts, obligations, and/or Expenses have been paid in full.

ORDERED, that the Substitute Receiver shall be entitled to utilize all accounts receivable and cash existing at the Facility as of the date of the commencement of its appointment as receiver to meet Substitute Receiver's obligations hereunder except that funds held in escrow by Long Hill for professional fees shall not be deemed to be cash existing at the Facility but shall be turned over by Long Hill to be held in escrow by counsel to the Trustee; and it is further

ORDERED, that prior to closing any foreclosure sale or sale in the Bankruptcy Court, the Purchaser or its operating designee shall submit an application for approval of establishment to the Public Health Council within forty-five (45) days following the entry of the Final Sale Order or acceptance of its bid by the Referree to Sell (as the case may be) and no sale shall be

closed, unless and until the Department of Health has approved the Purchaser or its operating designee and issued to it a certificate authorizing Purchaser or its operating designee to operate; and it is further

ORDERED, that provided the Facility or prior operator has a Title XIX provider agreement and the Substitute Receiver continues to meet the requirements for participation as a provider in the Medicaid program, the Substitute Receiver shall be reimbursed as an operator for patient services provided by it or in the name of the Facility through the Medicaid program pursuant to 10 N.Y.C.R.R. Subpart 86-2. The Substitute Receiver's expenses of operation shall be paid out of the rents, profits, income, Medicaid reimbursements and other sums received by the Substitute Receiver and any shortfall to meet the expenses shall be borne by the Substitute Receiver, Purchaser and Operating Designee. The Department of Health shall not be responsible for any expenses incurred by the Substitute Receiver and related to the operation of the Facility which are not reimbursed pursuant to Subpart 86-2 or by any other payor; and it is further

ORDERED, that the Substitute Receiver shall not act as an agent of the Department of Health nor represent or hold itself out as an agent for the Department of Health in any matter, nor shall it hold itself out as a political subdivision of the State of New York. Notwithstanding the provisions of any other agreement to the contrary, the Substitute Receiver shall not add a new member, director, officer or stockholder, transfer or otherwise dispose of any shares of stock or voting rights, or modify the management or legal structure of the Substitute Receiver during the term of the receivership without the prior written approval of the Department of Health. The Substitute Receiver shall act in good faith and shall not delegate its duties and responsibilities to any other individual or entity, except that it may hire its own administrators and staff as specifically set forth in this Order as the same may be amended from time to time. The Substitute Receiver shall operate the Facility in substantial compliance with all applicable laws,

10

rules and regulations, including, but not limited to, the requirements for participation in the Medicare/Medicaid programs. If, upon commencement of the receivership, the Facility is not found to be in such substantial compliance the Substitute Receiver shall be obligated to take reasonable actions so as to bring the Facility into such substantial compliance within a reasonable period of time. In its operation of the Facility as receiver, the Substitute Receiver shall not engage in any practice that may result, directly or indirectly, in any financial gain to itself in its capacity as receiver, except as expressly set forth herein. The Substitute Receiver shall not be paid any fees for services as receiver except as set forth in Exhibit A hereto, and it is further

ORDERED, that the Substitute Receiver is not the owner of the Facility but, in contemplation of the purchase of the Facility, and notwithstanding any provision in the Final Sale Order to the contrary, he, together with the Purchaser and Operating Designee (a) shall pay in the ordinary course all of the obligations and Expenses, as defined, including all payables, liabilities or obligations of any kind incurred by the Substitute Receiver from the inception of its receivership, and (b) shall pay in the ordinary course, all of the obligations and Expenses incurred by Long Hill in its performance of Long Hill's obligations under the Receivership Order; and it is further

ORDERED, that all Expenses reflected in the books and records of Long Hill shall, absent manifest error, be presumed to be correct and accurate and shall not be challenged by the Substitute Receiver, Purchaser or Operating Designee without the written consent of the Trustee and Plaintiff; and it is further

ORDERED, that the Substitute Receiver, Purchaser and Operating Designee shall, in addition to all other obligations provided for herein, consistent with applicable law governing receiverships, pay such past and future operating expenses as necessary to maintain operation of

the Facility in accordance with the laws and applicable rules and regulations of the Department of Health governing the operation of the Facility, including, but not limited to, expending sufficient funds to remedy any operational deficiencies; and it is further

ORDERED, that in the event of the expiration or termination of the receivership for any reason other than sale of the Mortgaged Premises to the Substitute Receiver pursuant to a Judgment of Foreclosure and Sale, or sale in the Bankruptcy Court, the Substitute Receiver shall execute and deliver such assignments, reassignments, conveyances, releases and other documents as may be reasonably required to transfer the assets, liabilities and operation of the Facility, deliver all books and records, operating and policy manuals, licenses and all other documents which it prepared or maintained and which are necessary to the operation of the Facility, and divest itself of all incidents of ownership thereof to such person(s) or entities as the Trustee shall designate or, in the event of a sale pursuant to the Final Sale Order or a foreclosure sale, to the purchaser at such sale, subject to the approval of the Department of Health; and it is further

ORDERED, that the Substitute Receiver, within ninety (90) days after the end of each calendar quarter, shall provide the Department of Health, Plaintiff and the Trustee with an accounting, in accordance with the Long Hills's previous practices or on such other basis as the Department of Health may require, of its operation of the Facility during the term of its receivership and shall, in accordance with Long Hill's previous practices, provide monthly to the Trustee the required information for the Trustee's monthly operating reports. Nothing herein contained shall be construed so as to limit Substitute Receiver's obligation to maintain financial accounts and comply with reporting requirements to the Department of Health as hereinafter provided or as required by the Bankruptcy Court. The provisions of this section shall survive the expiration or termination of the receivership; and it is further

**ORDERED**, that the Department of Health will not have an adequate remedy at law in the event of a breach or threatened breach by the Substitute Receiver of any of its obligations under this Order, and the Department of Health shall be entitled to such equitable and injunctive relief as may be available to restrain a violation or threatened violation of the provisions of this Order, or to compel compliance with and enforce the provisions hereof. Nothing herein shall be construed as prohibiting the Plaintiff or Trustee from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages, or as specifically granting any rights to any parties not named in this Order; and it is further

**ORDERED**, that the Substitute Receiver shall not incur any obligation or make borrowings secured by the Facility or any part of the Facility or the Facility's assets, or undertake any transaction, other than in the ordinary course of business, subject to this Order, which would place an encumbrance upon the assets of the Facility during the term of the receivership except as may be permitted by the Final Sale Order or cash collateral orders in the Bankruptcy Court; and it is further

**ORDERED**, that the Substitute Receiver may apply and file in its name such administrative and/or judicial rate appeals as Highgate Management or Long Hill may have applied for or filed under the Medicaid, Medicare, or any other third party reimbursement or insurance program. The Substitute Receiver shall prepare, file and prosecute such appeals before the appropriate administrative or judicial bodies including such actions or proceedings relating to periods prior to the date hereof. It is expressly understood that the Substitute Receiver may file such rate appeals as it may deem appropriate arising from its operations. Monies generated by all appeals shall be turned over by the Substitute Receiver to the Trustee, subject to the lien of GE; and it is further

**ORDERED**, that during the term of the receivership, the Substitute Receiver shall keep and maintain accurate records of the time its personnel devotes to the management and operation of the Facility, indicating in reasonable detail the nature and extent of the matters on which they worked, so that the time may properly be allocated to appropriate cost centers; and it is further

**ORDERED**, that if the Substitute Receiver shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or shall file any petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future Federal, State or other statute or law, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of the Substitute Receiver or of the Facility, and such appointment shall not have been vacated or stayed, on appeal or otherwise, or if within twenty (20) days after the expiration of any such stay, such appointment shall not have been vacated, the Trustee, Plaintiff or the Department of Health may apply to this Court for the immediate appointment of Long Hill Alliance Company as receiver or the appointment of another substitute receiver. Nothing herein shall prohibit the Department of Health from commencing proceedings for the appointment of an involuntary receiver pursuant to the Public Health Law; and it is further

**ORDERED**, that subject to HIPAA and all other applicable federal and state patient privacy or confidentiality requirements, all of which are incorporated herein by reference, the Plaintiff, Creditors Committee in the Bankruptcy Case and Trustee shall be entitled to access to all of the books and records relating to the operation of the Facility before or during the receivership, at the Facility, during normal business hours upon 24 hours notice to the Substitute Receiver upon the condition that this does not interfere with the operation of said Facility and that Plaintiff's, Committee's and Trustee's access shall not violate any patient's right of privacy or confidentiality; and it is further

**ORDERED**, that except as otherwise limited in this Order, the powers, rights, duties and obligations of the Substitute Receiver shall include those accorded a receiver appointed in an action to foreclose a mortgage on real property and in equity, and the Substitute Receiver shall also have the powers, duties, rights and obligations as if appointed under Section 2810(2) of the Public Health Law, unless otherwise limited herein, including, but not limited to, the following:

1.     The Substitute Receiver shall use reasonable care, diligence and prudence in the use and maintenance of the Mortgaged Premises.

2.     The Substitute Receiver shall maintain an appropriate system of financial accounts with respect to the operation of the Facility, shall meet all reporting requirements of the Department of Health, and shall itemize receipts and expenditures in a current and business-like manner in accordance with New York State rules and regulations as well as the New York State RHCF Accounting and Reporting Manual.  The Substitute Receiver shall have full control over and take full responsibility for all accounts and bookkeeping with the Facility during the term of its receivership hereunder, including, in Substitute Receiver's reasonable discretion, by continuing the use of existing personnel at the Facility who performed such responsibilities and functions prior to the receivership, and continuing the use of existing billing and bookkeeping processes.

3.     Except as limited by subparagraphs 7 and 8 below, the Substitute Receiver, at its own expense, may enter into contracts and incur expenses for the maintenance and operation of the Mortgaged Premises and the Substitute Receiver is authorized, at its own expense, to retain such person or persons to perform all services necessary in connection with the repair and maintenance of the Mortgaged Premises and to pay all charges necessary for the repair and maintenance of the Mortgaged Premises incurred in the ordinary course.

4.     The Substitute Receiver shall collect incoming payments from all sources and apply them to the costs incurred in the performance of its functions and obligations hereunder. In the event that the Department of Health determines that deficiencies exist at the Facility, and in accordance with applicable law imposes a civil penalty, such penalty may be assessed against the Substitute Receiver, the Purchaser or the Operating Designee if the Department of Health, in its discretion, determines either that the deficiencies arose subsequent to the appointment of the Substitute Receiver or that the deficiencies arose prior to such appointment, but were not corrected within a reasonable period of time. Such penalty, if any, shall be paid by the assessed party. In the event any such penalty has not been paid prior to the Closing, as such term is defined in the Final Sale Order, it shall be paid by Purchaser and/or the Operating Designee at or before the Closing.

5.     The Substitute Receiver may hire at its own expense and may fire such personnel, including professional consultants, as from time to time it may deem necessary or advisable, except as prohibited by law or regulation or as limited by subparagraphs 7 and 8 below. All employees at the Facility shall become and remain employees of the Substitute Receiver for so long as the receivership is in effect to the same extent such employees were employees of Long Hill, provided that the Substitute Receiver shall have the right, at its reasonable discretion to hire and terminate any employee so long as work force levels are adequate to provide the level of care consistent or superior to current levels and as required in accordance with the rules and regulations of the Commissioner of the Department of Health. Additionally, with regards to a Facility whose employees are represented by a collective bargaining agent, the Substitute Receiver shall comply with the terms of the collective bargaining agreement. The Substitute Receiver may not hire in any capacity, retain as a consultant or in any other way utilize the services of any partner, director, officer, shareholder or member of Highgate Manor or Highgate

Management. Such consultants shall be required to keep and maintain accurate records of the time they devote to the management and operation of the Facility, indicating in reasonable detail the nature and extent of the matters on which they worked so that their time may properly be allocated to appropriate cost centers, and in the event such expenses are reimbursable under the Medicaid program, as to which no party, including the Department of Health, makes any representation and/or takes any position.

      6.    The Substitute Receiver shall immediately procure and shall maintain, at its own expense, insurance in adequate amounts and coverage of such types and amounts as are usual and customary for similar facilities or as may be required by law or by the United States Trustee, including comprehensive general liability insurance, comprehensive automobile liability, malpractice and/or professional liability insurance, worker's compensation and employer's liability insurance, boiler and machinery insurance, business interruption insurance, and any other insurance deemed necessary for the operation of the Mortgaged Premises, including the Facility, at the current coverage levels or at higher levels. In the alternative, the Substitute Receiver may continue Long Hill's existing policies, subject to the provisions of this paragraph. Said insurance coverage shall name the Trustee, the Substitute Receiver, Long Hill, Defendants, and such other persons as the Substitute Receiver may reasonably request, as additional insureds and shall provide that the United States Trustee be provided ten (10) days' prior notice of any change to or cancellation of the policy. Such insurance shall be with a carrier authorized to do business within the State of New York and shall be subject to the approval of the U.S. Bankruptcy Court and the United States Trustee. No party, including the Department of Health, at this time takes any position with respect to the reimbursability of such expenses under the Medicaid program.

7.    Prior to making any capital or leasehold improvement in excess of Fifteen Thousand Dollars ($15,000.00), the Receiver shall advise the Trustee, Plaintiff and the Department of Health of its plans and shall obtain the written consent of the Trustee and Plaintiff, provided, however, that the consent of the Trustee and the Plaintiff will not be required if such improvement is mandated by the New York State Department of Health in order to effect compliance with applicable statutes and regulations. In the absence of such consent (if such consent is required pursuant to the terms of this Section 7), Substitute Receiver may apply to the Court for permission to incur such expense.

8.    Except as provided in subparagraph 7 above, the Substitute Receiver is authorized, (i) from time to time without further order of the Court or the Bankruptcy Court, to negotiate and enter into any new contract, lease or agreement or renewal thereof only if such contract, lease or agreement or renewal thereof is terminable on 30 days or less notice and the consideration for which does not exceed Twenty Five Thousand Dollars ($25,000.00); (ii) without further order of the Court or the Bankruptcy Court, to make payments and perform existing contracts, leases and agreements in the normal course of the operations of the Mortgaged Premises as a skilled nursing facility for patients and residents, subject to the rules and regulations of the New York State Department of Health and pursuant to the terms and conditions of such existing contracts, leases and agreements, and (iii) subject to further order of the Court, to execute the surrender, or release of, or the modification or amendment which materially alters the terms of, any contract, lease or agreement now or hereafter in existence with respect to the Mortgaged Premises. The Substitute Receiver shall not enter into any labor contract regarding employees, at the Facility without the approval of the Trustee, Committee and the United States Bankruptcy Court.

9.	The Substitute Receiver has and shall have no employment, consulting agreements or other business agreements of any kind whatsoever with Highgate Manor, Highgate Management or any affiliates or any principal, shareholder, member, officer or director thereof and no agreement of such kind will be entered into during the term of this Order; and it is further

10.	The Substitute Receiver shall timely prepare and present to the Trustee for filing all required state and federal tax returns for the Facility.

**ORDERED**, that the Substitute Receiver, subject to HIPAA and all other applicable federal and state patient privacy or confidentiality requirements, which are incorporated herein by reference, shall have full access to, and shall make, all books and records, accounts, agreements and documents of whatsoever nature, or copies thereof, relating to the Facility available to the Department of Health and the applicable federal authorities upon demand during the term of the receivership and for a period of four years thereafter. There will be no charge to the Department of Health for any copies made. Nothing herein shall be deemed to transfer ownership of the books and records of the Facility to the Substitute Receiver; and it is further

**ORDERED**, that no provision contained herein shall be deemed to relieve Highgate Manor or Highgate Management or any person from any civil or criminal liability incurred or imposed by law by reason of their acts or omissions prior to the appointment of the Substitute Receiver; and it is further

**ORDERED**, that a provisional operating certificate shall be deemed to have been issued to the Substitute Receiver as of the date hereof. Such operating certificate shall be issued and delivered to the Substitute Receiver by the Department of Health as soon as practicable and shall remain in effect during the period the Substitute Receiver serves as Substitute Receiver of the Mortgaged Premises hereunder. Upon termination of the receivership, the Substitute Receiver

shall surrender its operating certificate to the Department of Health. The Department of Health shall promulgate a Medicaid reimbursement rate for the Substitute Receiver in accordance with Subpart 86-2. The Department of Health, provided all conditions of participation in Title XVIII and Title XIX are met, shall recommend to the United States Department of Health and Human Services that a Title XVIII Provider Agreement be issued to the Substitute Receiver and to issue a Title XIX Provider Agreement to the Substitute Receiver. Except as otherwise specifically provided herein, nothing contained herein shall be construed in any way to alter or abridge the right and authorities of the Department of Health or the Public Health Council as provided for in the Public Health Law. Nothing herein contained shall be deemed to change the Medicaid reimbursement policies, rules and regulations of the New York State Department of Health; and it is further

**ORDERED**, that the Shortfall Agreement, as per its terms, shall be terminated as of the date hereof and the Substitute Receiver shall have no rights thereunder. The termination of the Shortfall Agreement shall not operate as a release to the parties to the Shortfall Agreement with respect to any obligations incurred thereunder prior to the date hereof, including any obligations of the Receiver relating to operational deficiencies, if any; and it is further

**ORDERED**, that any notices to the Department of Health by the Substitute Receiver shall be sent to:

> Thomas Conway, General Counsel
> New York State Department of Health
> Nelson A. Rockefeller Empire State Plaza
> Erastus Corning Tower, 24th Floor, RM 2482
> Albany, New York 12237
> Attn: Michael Stone, Assistant Counsel;

and it is further

**ORDERED**, except as may be limited by the Final Sale Order or the purchase agreement approved and described therein, that the Substitute Receiver be, and hereby is, authorized and

directed to demand, collect and receive from the residents, patients, tenants, subtenants, occupants and licensees in possession of or using the Mortgaged Premises, and any other persons liable therefore, all the rents, license fees, medical reimbursements, and other charges thereof now due and unpaid, or hereafter to become due, and that the Substitute Receiver be and hereby is authorized to institute and carry on all legal proceedings necessary for the protection of the Mortgaged Premises or any portion thereof, including such proceedings as may be necessary to recover possession of the whole, or any part thereof, and/or apply to the Court to compel the residents, patients, medical insurance providers, including Medicare and Medicaid, tenants, subtenants, occupants and licensees to attorn to the Substitute Receiver, and to institute and prosecute suits for the collection of such rents, fees, income, medical reimbursements, profits and other charges now due and hereafter to become due, and for summary or other proceedings for the removal of any residents, patients, tenant, subtenants, occupants, licensees or other persons therefrom as provided by law; and it is further

**ORDERED**, that the Substitute Receiver shall forthwith deposit all monies received by it at the time it receives same in a special account in its own name as Substitute Receiver in RBS Citizens Bank, N.A., or such other bank as GECC shall require, (the "Depository") and that no withdrawals shall be made therefrom except in the ordinary course of the operation, repair and maintenance of the Mortgaged Premise or as directed herein or by further Order of the Court or the Bankruptcy Court, and that the Substitute Receiver shall furnish the Trustee and Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York, 11530 (Attn: William P. Laino Esq.), with monthly statements of the receipts and expenditures of the receivership, together with a photocopy of the monthly statements received from the above-described Depository.  Nothing herein is intended to amend, modify or abrogate the lock box arrangement for the collection and deposit of accounts receivable by the Substitute

Receiver on behalf of the Facilities pursuant to the Revolving Credit Agreement between the Facilities and GECC; and it is further

**ORDERED**, that the residents, patients, tenants, subtenants, occupants or licensees of the Mortgaged Premises and such other persons as may be in possession of or use the Mortgaged Premises, or any portion thereof, and any medical insurance providers, including Medicare and Medicaid, be and, are hereby directed to attorn to the Substitute Receiver and, until the further order of this Court, to pay over to the Substitute Receiver all rents, license fees, profits and other income of the Mortgaged Premises or any medical reimbursement for services rendered to residents or patients at the Mortgaged Premises now due and unpaid or that may hereafter become due; and it is further

**ORDERED**, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, representatives, employees, servants, attorneys or anyone else acting on their behalf, be enjoined and restrained from collecting the rents, profits, income, license fees, medical reimbursements and other charges resulting from use of or services provided at the Mortgaged Premises or the rendition of services therefore and from interfering in any manner with the Mortgaged Premises or its possession, use or operation by the Substitute Receiver or the supply of any and all utilities or other services to the Mortgaged Premises, and from transferring, removing or changing entries in the books and records of or pertaining to the Mortgaged Premises, or from transferring, removing or in any way disturbing any of the residents, patients, tenants, occupants, licensees or employees at the Mortgaged Premises; and that all such residents, patients, tenants, subtenants, occupants or licensees of the Mortgaged Premises and other persons liable for same, including medical insurance providers for services rendered to such residents or patients, be, and hereby are, enjoined and restrained from paying any such income or other charges for the Mortgaged Premises to Highgate Manor, Highgate Management,

their affiliates, or their partners, agents, representatives, employees, servants, attorneys or anyone else acting on their behalf or to any other person other than the Substitute Receiver herein or his/her duly designated agent, provided, however, that Substitute Receiver may in its reasonable discretion elect to continue the employ of Facility billing, bookkeeping and clerical personnel, as employees of the Substitute Receiver, to the same extent that such employees were employees of Long Hill, and to the extent such election is made the restrictions set forth in this paragraph shall not be applicable to and with respect to such persons; and it is further

ORDERED, that the Trustee shall have no duties, responsibilities or liability with respect to the Substitute Receiver's operation of the Facility; and it is further

ORDERED, that the Trustee, Long Hill Alliance Company, Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, attorneys, representatives, servants, employees and assigns, are directed to, and shall, cooperate fully with the Substitute Receiver in immediately providing the Substitute Receiver with all keys, books and records, financial instruments and bank accounts, files, orders, leases, subleases, licenses, maintenance agreements, contracts, invoices, correspondence, notices, registration statements, employee records and other books, records, papers and agreements relating to the ownership, maintenance, operation or leasing of the Mortgaged Premises or any part or parts thereof and all other documents, materials, and things necessary for the Substitute Receiver to discharge his/her obligations hereunder which any of them may have in their possession; and it is further

ORDERED, that Long Hill, Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, attorneys, representatives, employees and assigns, (a) shall hold in trust and immediately pay over to the Substitute Receiver any and all rents, issues, profits, medical reimbursements, or other income with respect to the Mortgaged Premises received by any of them on or after the appointment of the Substitute Receiver, including those proceeds,

rents, issues, profits and other income that have accrued prior thereto and remain unpaid as of

such appointment; and (b) shall hold in trust and immediately pay over to the Substitute Receiver

any and all security deposits received from residents, patients, tenants, subtentants, licensees or

other persons for the lease, use or occupancy of the Mortgaged Premises; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their

partners, agents, representatives, assigns, servants, employees, and attorneys, be and hereby are

enjoined and restrained from disposing of any rents, issues, income, medical reimbursement, or

profits of the Mortgaged Premises or any part thereof, previously received by any of them except

in payment of all liabilities relating to the operation of the Mortgage Premises as have accrued

prior to the appointment of the Substitute Receiver and outstanding sums secured by the

Consolidated Mortgage and the Leasehold Mortgage, and they are further restrained from

interfering in any manner with the Mortgaged Premises or the possession of same by the

Substitute Receiver; and it is further

ORDERED, that pursuant to the provisions of the General Obligations Law § 7-105, Highgate

Manor, Highgate Management, Long Hill and any entity or person holding any deposits or advanced

rent as security under any lease, use or occupancy or license agreement affecting space in the

Mortgaged Premises affected by this action shall (i) turn same over to the Substitute Receiver within

five (5) days after said Receiver shall have qualified, to be held by the Substitute Receiver in a separate

savings account in the above referenced Depository in the name of the Substitute Receiver as "Special

Deposit Account", pursuant to the terms and provisions of the agreements entered into by the persons

who made such deposits or advance payments of rent and (ii) notify each of such persons by certified

mail that the respective security deposits or advance payments of rent of each of the tenants so received

are being held by the Substitute Receiver pursuant to the provisions of each such person's respective

agreement; and thereupon the said Substitute Receiver shall hold such security subject to such

24

disposition thereof as shall be provided in an order of this Court to be made and entered in this action; and it is further

ORDERED, that the Substitute Receiver be, and hereby is, authorized and directed: (a) to keep the Mortgaged Premises insured against loss or damage by fire and in repair; (b) to pay the taxes, assessments, water charges, sewer rents, electric bills, and other charges on the Mortgaged Premises, in a manner consistent with the provisions of this Order; (c) to comply with all requirements of any municipal department or authority having jurisdiction over the Mortgaged Premises; (d) to procure, if necessary, such insurance and liability insurance against claims for losses or injuries to persons and property, which may be asserted by persons on, near or about the Mortgaged Premises, as may be necessary; and (e) to pay to Plaintiff monthly, out of funds remaining in the custody of the Substitute Receiver, all interest accrued on the Revolving Credit Note, provided that any unpaid interest shall continue to accrue on the Real Estate Loan, Senior Promissory Note and Revolving Credit Documents secured by its Consolidated and Leasehold Mortgages; and it is further

ORDERED, that all persons, other than patients or residents receiving skilled nursing services, now or hereafter in possession of the Mortgaged Premises, or any part thereof, and not holding such possession under valid and existing leases, subleases, licenses or tenancies, do forthwith surrender such possession to the Substitute Receiver; and it is further

ORDERED, that the Substitute Receiver, or any party to this action, may, at any time, upon proper and sufficient notice to all parties who have appeared in this action, apply to this Court for further or other instructions or authority, whenever such instructions or additional authority shall be deemed necessary or desirable in order to enable the Substitute Receiver to properly fulfill its duties or to protect Plaintiff's interest in the property secured by the Consolidated and Leasehold Mortgages; and it is further

**ORDERED**, that the Substitute Receiver shall comply fully with the requirements of CPLR §6401-6404 and that the Substitute Receiver shall execute and file in the Office of the Clerk of Rensselaer County, a copy of this Order, its original oath of office, and its undertaking, with certified copies thereof filed in the Offices of the Clerks of Schenectady and Cortland Counties, and shall serve a copy of its oath of office and its undertaking, on the Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York 11530 (Attn: William P. Laino, Esq.), on the United States Trustee and on all of the parties named in this action or the attorneys who have appeared for such parties, and, thereafter, the Substitute Receiver shall serve any other papers filed by it with the Court in connection with its appointment on all parties to this action who have appeared herein and are not in default and the Department of Health; and it is further

**ORDERED**, that any costs and expenses incurred by Plaintiff pursuant to this Order, including those incurred under the Shortfall Agreement under the Receivership Order, shall be added to the Consolidated Mortgage and Leasehold Mortgage (collectively the "Mortgages"), shall be a lien on the Mortgaged Premises and shall be recoverable from the borrowers, guarantors and other persons and properties liable as provided in said Mortgages and the loan documents secured thereby or executed in connection therewith; and it is further

**ORDERED**, that the Substitute Receiver, Purchaser and Operating Designee shall be deemed to have indemnified the Trustee and the bankruptcy estates of Highgate Management and Highgate Manor and shall hold them harmless for any and all liabilities or Expenses, as defined hereinabove, caused, incurred or created by the Substitute Receiver and for any and all liability arising from the Substitute Receiver's access to, or use of, Patient Records or Patient Information, each as defined in the Purchase Agreement which was approved by the Final Sale Order; and it is further

26

**ORDERED**, that Long Hill Alliance Company will assist in the orderly transition to the Substitute Receiver in connection with the operation of the Facility. The Receivership Order shall remain unaffected with respect to obligations, rights and remedies arising or occurring prior to the date hereof; and it is further

**ORDERED**, that the obligations and duties of the Substitute Receiver hereunder shall survive the termination of the receivership, whether by reason of a closing pursuant to the Final Sale Order or otherwise.

E N T E R ,

_____
J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By: _____

Name: _____

Title: _____

Long Hill Alliance Company, Outgoing Receiver

By: _____

Name: _____

Title: _____

Trustee of the Chapter 11 estates of Highgate Manor Group, LLC and Highgate LTC Management, LLC

By: _____

Name: _____

Substitute Receiver

By: _____

Name: _____

**ORDERED**, that Long Hill Alliance Company will assist in the orderly transition to the Substitute Receiver in connection with the operation of the Facility. The Receivership Order shall remain unaffected with respect to obligations, rights and remedies arising or occurring prior to the date hereof; and it is further

**ORDERED**, that the obligations and duties of the Substitute Receiver hereunder shall survive the termination of the receivership, whether by reason of a closing pursuant to the Final Sale Order or otherwise.

ENTER,

_____
J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By:_____

Name:_____

Title:_____

Long Hill Alliance Company, Outgoing Receiver

By: _Robert A. White_

Name: _Robert A. White_

Title: _Its Attorney_

Trustee of the Chapter 11 estates of
Highgate Manor Group, LLC and
Highgate LTC Management, LLC

By:_____

Name:_____

Substitute Receiver

By:_____

Name:_____

27

**ORDERED**, that Long Hill Alliance Company will assist in the orderly transition to the Substitute Receiver in connection with the operation of the Facility. The Receivership Order shall remain unaffected with respect to obligations, rights and remedies arising or occurring prior to the date hereof; and it is further

**ORDERED**, that the obligations and duties of the Substitute Receiver hereunder shall survive the termination of the receivership, whether by reason of a closing pursuant to the Final Sale Order or otherwise.

ENTER,

_____
J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By: _____

Name: _Richard F. Daines MD_

Title: _Commissioner of Health_

Long Hill Alliance Company, Outgoing Receiver

By: _____

Name: _____

Title: _____

Trustee of the Chapter 11 estates of
Highgate Manor Group, LLC and
Highgate LTC Management, LLC

By: _____, Trustee

Name: _MARK L FISHMAN, TRUSTEE_

Substitute Receiver

By: _____

Name: _____

27

**ORDERED**, that Long Hill Alliance Company will assist in the orderly transition to the Substitute Receiver in connection with the operation of the Facility. The Receivership Order shall remain unaffected with respect to obligations, rights and remedies arising or occurring prior to the date hereof; and it is further

**ORDERED**, that the obligations and duties of the Substitute Receiver hereunder shall survive the termination of the receivership, whether by reason of a closing pursuant to the Final Sale Order or otherwise.

ENTER,

_____

J.S.C.

---

Approved as to Form and Substance:

New York State Department of Health

By: _____

Name: _____

Title: _____

Long Hill Alliance Company, Outgoing Receiver

By: _____

Name: _____

Title: _____

Trustee of the Chapter 11 estates of
Highgate Manor Group, LLC and
Highgate LTC Management, LLC

By: _____

Name: _____

Substitute Receiver

By: _____

Name: Richard J. Brum

~ Attorney For EF Consulting, LLC

27

Title:_____          Title:_____

**ORDERED**, that Long Hill Alliance Company will assist in the orderly transition to the Substitute Receiver in connection with the operation of the Facility.  The Receivership Order shall remain unaffected with respect to obligations, rights and remedies arising or occurring prior to the date hereof; and it is further

**ORDERED**,  that the obligations and duties of the Substitute Receiver hereunder shall survive the termination of the receivership, whether by reason of a closing pursuant to the Final Sale Order or otherwise.

ENTER,

_Claudia Simone Adams_ J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By: _____

Name: _Richard F. Daines MD_

Title: _Commissioner of Health_

Long Hill Alliance Company, Outgoing Receiver

By: _____

Name: _____

Title: _____

Trustee of the Chapter 11 estates of Highgate Manor Group, LLC and Highgate LTC Management, LLC

By: _____

Name: _____

Substitute Receiver

By: _____

Name: _____

27

# EXHIBIT A

**TREATMENT OF PROFESSIONAL FEES DURING INTERIM RECEIVERSHIP**

The Substitute Receiver and Purchaser, subject to Court approval, will pay Trustee fees and expenses and fees and expenses of professionals retained by the Trustee and by the Creditors' Committee ("Committee") from the monthly positive cash flow generated by the operation of the Highgate facilities up to the amounts of (a) $15,000.00 a month in the aggregate for the Trustee and his professionals, (b) $15,000.00 a month in the aggregate for the Committee's professionals, (c) $5,000.00 a month for United States Trustee fees and, assuming the foregoing have been paid or escrowed, $10,000.00 a month for Substitute Receiver fees. GECC will cooperate in the inclusion of the aforesaid fees in cash collateral budgets. The Trustee and the subject professionals would retain the right to seek the payment of fees and expenses from other sources consistent with either orders of the Court or agreements with GECC, subject to Bankruptcy Court Approval. Nothing contained in this Order shall require the United States Trustee to exclusively seek payment of United States Trustee fees due pursuant to 28 U.S.C. § 1930(a)(6), or professionals or the Trustee to exclusively seek payment of their fees and/or expenses due pursuant to 11 U.S.C. §§ 326, 330 and/or 331, from the Substitute Receiver's monthly positive cash flow, and the United States Trustee, the trustee, and professionals, as the case may be, may seek payment of such fees from any other debtor or estate asset.

"Positive Cash Flow", as used in this document, refers to the net cash flow generated from the operation of the Highgate facilities and shall be measured by the "check book" amounts of cash at the beginning and the end of the month without giving effect to any additional capital provided by the Substitute Receiver, Purchaser or Operating Designee or capital expenditures made by the Substitute Receiver, Purchaser or Operating Designee. Checks issued by the Substitute Receiver, Purchaser or Operating Designee but not yet paid shall be treated as

expenditures. Checks received but not yet deposited or paid shall be treated as receipts. All expenditures will be made in the ordinary course of business and will neither be prepaid nor delayed. It would be presumed that expenditures normally paid monthly would be paid on the same date each month. The computation of positive cash flow will be performed separately for each month and will not be cumulative. No effect will be given to negative cash flow in any given month.

M:\BANKRUPT.CY\Highgate\subreceiverorder FINAL.doc