EXHIBIT "3"

# Duplicate Original

## LOCKBOX ACCOUNT AGREEMENT

**THIS LOCKBOX ACCOUNT AGREEMENT** (this "**Agreement**") is made and entered into as of this 24 day of October, 2005, by and among **CITIZENS BANK, N.A.,** a National Association ("**Bank**"), **HIGHGATE MANOR GROUP, LLC,** a New York limited liability company, **HIGHGATE LTC MANAGEMENT, LLC,** a New York limited liability company, and **GUILDERLAND LTC MANAGEMENT, LLC,** a New York limited liability (collectively, "**Company**"), and **GENERAL ELECTRIC CAPITAL CORPORATION,** a Delaware corporation (together with any successors and assigns, "**Lender**").

## RECITALS

**WHEREAS,** pursuant to that certain Loan and Security Agreement dated as of May ___, 2005 between Lender and Company (as it may be amended, supplemented or otherwise modified from time to time, the "**Loan Agreement**"), Lender has agreed to make loans and extend other financial accommodations to Company;

**WHEREAS,** pursuant to the Loan Agreement, Lender has required that all remittances made by account debtors in payment of accounts receivable of Company be made to a lockbox;

**WHEREAS,** pursuant to an Agreement between Company and Bank (the "**Lockbox Agreement**"), Company has established one or more post office lockboxes with Bank (collectively, the "**Lockbox**") through which cash, checks, money orders and other items of value o f C ompany a re p rocessed by Bank for deposit in one or more accounts established by Company with Bank (collectively, the "**Lockbox Account**") which accounts are identified on **Exhibit A** attached hereto and incorporated herein by reference; and

**WHEREAS,** the parties hereto desire to enter into this Agreement to set forth their relative rights and duties with respect to the Lockbox, Lockbox Account and all funds on deposit therein from time to time.

**NOW, THEREFORE,** in consideration of the premises and the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:

## AGREEMENTS

1. **Effectiveness**. This Agreement shall take effect immediately upon its execution by all parties hereto and shall supersede any blocked account or other similar agreement in effect with respect to the Lockbox or the Lockbox Account.

2. **Security Interest**. As collateral security for Company's obligations to Lender under the Loan Agreement and the other loan documents described therein, Company has granted to Lender a continuing security interest in, among other things, (a) the Lockbox and the Lockbox Account, (b) all contract rights and privileges in respect of the Lockbox and the Lockbox

Account, and (c) all cash, checks, money orders, and other items of value of Company, including those received via automated clearinghouse (ACH) or wire transfer, now or hereafter paid, deposited, credited, held (whether for collection, provisionally or otherwise) or otherwise in the possession or under the control of, or in transit to, Bank or any agent, bailee or custodian thereof (collectively, "**Receipts**"), and all proceeds of the foregoing. Bank acknowledges that this Agreement constitutes notice, in accordance with the Uniform Commercial Code, of Lender's security interest in such collateral. Company hereby agrees that Bank, on behalf of Lender, shall be entitled to exercise, upon the written instructions of both Company and Lender, any and all rights which Lender may have under the Loan Agreement, the other loan documents described therein or under applicable law with respect to the Lockbox, Lockbox Account, all Receipts and all other collateral described in this Section 2.

3. **Control of Lockbox Account**. The Lockbox and the Lockbox Account shall be under the sole dominion and control of Company and shall be maintained by Bank in the names set forth on **Exhibit A**.

4. **Procedures for Lockbox Account**. Bank shall follow the following procedures with respect to the Lockbox Account:

(a) Bank shall have exclusive and unrestricted access to the Lockbox and shall have complete and exclusive authority to receive, pickup and open all regular, registered, certified or insured mail addressed to Company at the Lockbox (the "**Mail**") pursuant to the terms of the Lockbox Agreement.

(b) On each business day of Bank, Bank shall (i) open all Mail addressed to the Lockbox and remove and inspect the enclosures, (ii) apply and credit for deposit to the Lockbox Account all Receipts consisting of checks, money orders, drafts, collection remittances and other instruments or items of value from time to time tendered by or on behalf of Company for deposit (collectively, "**Checks**") in the Lockbox Account in accordance with the Lockbox Agreement or otherwise, and (iii) apply and credit to the Lockbox Account all Receipts tendered by or on behalf of Company for deposit therein, including without limitation all automated clearinghouse (ACH) or wire transfers and other payments directed to the Lockbox Account.

(c) Company hereby irrevocably makes, constitutes and appoints Bank (and all persons designated by Bank for such purpose) as Company's true and lawful attorney and agent-in-fact to endorse Company's name on all Checks payable to the name(s) set forth on **Exhibit B**. Upon request by Bank, Company shall provide any endorsement deemed necessary by Bank for the deposit of such Checks. Bank's appointment as agent to endorse such Checks is for the specific, limited and restricted purpose of endorsement for deposit as described above and at no time shall be interpreted as authorizing Bank as such agent to commit Company or Lender to acceptance of any legend of any kind, nature or description appearing on such Checks. Bank will use its best efforts to withhold from deposit any Checks bearing the legend "Paid in Full" or words of similar import; provided, however, that Bank shall have no liability for failing to

# Duplicate Original

withhold such Checks from the clearing system. All such withheld Checks shall be sent to Company.

(d)     Each of Company, Lender and Bank agree that, on a daily basis on each business day of Bank, Bank shall determine the balance of all available funds on deposit in the Lockbox Account and shall automatically initiate, in such amount, a federal funds wire transfer not later than 10:00 a.m. (New York Time) on each such business day to the account designated below, or to such other account as may be designated in writing from time to time by Lender (the "**Concentration Account**"):

> Deutsche Bank
> New York, NY
> ABA 021001033
> GECC/ Healthcare RTS Collections
> Account # 50-269-534
> Reference: Highgate

Company may modify these directions in section 4(d) by written notice to Bank and Lender, provided that such modification shall not become effective until ten (10) business days after receipt by Bank and Lender of such notice by facsimile or overnight delivery service at the addresses or facsimile numbers shown in Section 14 below.

5.     <u>Statements and Other Information</u>.  Bank will provide Lender with such information relating to the Lockbox Account as Lender shall reasonably request; provided, however, that Bank need not provide any such requested information where doing so would require Bank to incur any material costs or expenses or to expend a substantial amount of its time or internal resources, unless Lender agrees to reimburse and/or to compensate Bank appropriately for providing such information. Company hereby authorizes Bank to provide Lender with any Lockbox Account information requested by Lender.

6.     <u>Fees</u>.  Company agrees to pay on demand all fees and charges associated with the Lockbox Account, the items deposited therein and the funds withdrawn therefrom, as well as for all services provided by Bank pursuant to this Agreement (collectively, "**Fees**"). In the event that Company fails to make timely a payment to Bank of any Fees, Bank may thereafter exercise its right of set-off against the Lockbox Account for such amounts. If the balance in the Lockbox Account is not sufficient to pay Bank for any Fees that are or become due Bank and Company fails to make a timely payment to Bank for such Fees, such unpaid Fees shall be paid to Bank by Lender upon Bank's demand for the same, and Company agrees to reimburse Lender for any moneys that Lender shall pay to Bank on account of any Fees; provided, however, Lender shall only be required to pay to Bank such Fees to the extent (x) such Fees, in the aggregate, do not exceed the aggregate amount of Fees for the immediately preceding six (6) month period and (y) the demand by Bank for such Fees is received by Lender within ninety (90) days after the date of termination of this Agreement; and further provided, Bank's right to set-off against the Lockbox

Account for any unpaid Fees and Lender's obligation to pay Bank any unpaid Fees shall not include any legal fees or expenses incurred by Bank.

7.     **Uncollected Funds**.   If any Receipts deposited in the Lockbox Account are returned unpaid or uncollected or otherwise dishonored, Bank shall be entitled to charge any and all such returned or dishonored items against the Lockbox Account or to demand reimbursement therefore directly from Company.   If Company fails to reimburse Bank for such amount or the Lockbox Account contains insufficient funds for such reimbursement, Lender shall repay Bank exclusively from funds previously paid by Bank to Lender in respect of such Receipts, the amount of any actual loss to Bank as a result of such returned or dishonored Receipts, provided that written request for such reimbursement is received by Lender within ninety (90) days of Lender's receipt of the proceeds of such unpaid, uncollected or dishonored item.   Any Fees associated with returned, uncollected or dishonored items shall in all events be recoverable by Bank pursuant to Section 6 above.

8.     **Set-off**.   Except to the extent expressly set forth in Sections 6 and 7 of this Agreement, Bank agrees that, until it has been advised in writing by Lender that all of Company's obligations which are secured by the Lockbox Account have been paid in full, (a) Bank will not exercise or claim any right of set-off or banker's lien against the Lockbox Account or any moneys on deposit therein, and (b) Bank hereby waives until such date any such right or lien which it may have against any moneys on deposit in the Lockbox Account.

9.     **Exculpation of Bank; Indemnification by Company**.

(a)     The authority herein granted to Bank in this Agreement shall not be construed to impose upon Bank any obligation to perform any act or furnish any service requested of it by Company or Lender that is not specifically provided for under the terms of this Agreement, and it is agreed by the parties hereto that Bank does not assume any such obligation.

(b)     Company and Lender agree that Bank shall have no liability to either of them (including any of the entities comprising Company) for any loss or damage that either or both may claim to have suffered or incurred, either directly or indirectly, by reason of this Agreement or any transaction or service contemplated by the provisions hereof, unless occasioned by the gross negligence or willful misconduct of Bank.   Bank's liability in all cases shall be limited to direct money damages actually incurred.   In no event shall Bank be liable for any special, indirect, exemplary or consequential damages, including, but not limited to, lost profits, even if Bank has been advised of the possibility of such damages.

(c)     Company and Lender agree that in no event shall Bank be liable for any loss or delay resulting from any act or delay or failure to act caused by circumstances not within Bank's control.

(d)     Company agrees to defend and to indemnify Bank and hold it harmless from and against any and all claims, actions and proceedings (whether civil, criminal or

administrative in nature), other than those ultimately determined to be founded on the gross negligence or willful misconduct of Bank as established in a court of law by a judgment that is final and non-appealable, and from and against any and all damages, penalties, judgment, liabilities, losses and expenses (including reasonable attorneys' fees and disbursements), whether for internal or external counsel) suffered or incurred as the result of any claim, by any person or entity, arising out of, or otherwise related to, any transaction conducted or service provided by Bank pursuant to this Agreement.

10. **Company Agreement to Pay Bank Expenses**. Company agrees to pay Bank, upon receipt of Bank's invoice, all reasonable costs, expenses and attorneys' fees (including reasonable allocated costs for in-house legal services) incurred by Bank in connection with the preparation of this Agreement and any amendments that may be made to this Agreement and the administration and enforcement of this Agreement and any other instrument or agreement required or contemplated hereunder.

11. **Termination**.

(a) This Agreement may be terminated by Company only upon delivery to Bank of a written notification thereof jointly executed by Company and Lender. This Agreement may be terminated by Lender at any time, with or without cause, upon its delivery of a written notice thereof to each of Company and Bank. This Agreement may be terminated by Bank at any time on not less than thirty (30) days prior written notice delivered to each of Company and Lender. Termination of this Agreement shall not affect any obligation incurred under this Agreement before the effective date of such termination. Bank, upon the effective date of any termination of this Agreement, shall remit to Lender all funds then on deposit in the Lockbox Account after deducting therefrom all moneys due Bank on account of Fees and other items that were deposited in the Lockbox Account and returned unpaid or otherwise dishonored. If, subsequent to Bank's remittance to Lender upon the effective date of termination of this Agreement, any items deposited in the Lockbox Account prior to the Agreement's termination date are returned unpaid or otherwise dishonored, Bank shall forward such items to Company, and, upon its receipt of the same, Company shall promptly reimburse Bank for the amount thereof.

(b) The provisions of Sections 2, 3, 6, 7 and 9 of this Agreement shall survive termination of this Agreement. All rights of Bank provided for in Sections 6, 7, 9 and 10 shall survive any termination of this Agreement.

12. [INTENTIONALLY OMITTED]

13. **Legal Restrictions to Performance of Obligations.** In the event that the Company becomes subject to a voluntary or involuntary proceeding under the United States Bankruptcy Code, if the Bank is otherwise served with legal process which the Bank in good faith believes affects Lockbox Account (or funds therein), or the Bank is of the opinion that acting upon the instructions of Lender would result in the violation of any applicable law, rule or

# Duplicate Original

regulation, the Bank may suspend disbursements from the Lockbox Account otherwise required by the terms hereof until such time as the Bank receives a court order or other assurances satisfactory to the Bank establishing that funds in the Lockbox Account may continue to be disbursed.

14.   **Notices**.  All notices, requests or other communications given to Company, Lender or Bank shall be given in writing (including by facsimile) at the address specified below:

|  |  |
|---|---|
| Lender: | General Electric Capital Corporation |
| | 2 Bethesda Metro Center, Suite 600 |
| | Bethesda, Maryland 20814 |
| | Attention:  Loan Administration |
| | Telephone:  (301) 961-1640 |
| | Facsimile:  (301) 664-9890 |
| | |
| Bank: | **Citizens Bank, N.A.** |
| | 833 Broadway |
| | Albany, New York  12207 |
| Attention: | Michael Paparian |
| Telephone: | (518) 432-2316 |
| Facsimile: | (518) 426-6458 |
| | |
| Company: | Highgate LTC Management, LLC |
| | c/o Northwoods at Hilltop |
| | 1805 Providence Avenue |
| | Niskayuna, NY 12309 |
| Attention: | Eugene M. Nachamkin |
| Telephone: | (518) 374-2212 |
| Facsimile: | (518) 381-9080 |

Any party may change its address for notices hereunder by notice to each other party hereunder given in accordance with this Section 14.  Each notice, request or other communication shall be effective (a) if given by facsimile, when such facsimile is transmitted to the facsimile number specified in this Section 14 and confirmation of receipt is made by the appropriate party, (b) if given by overnight courier, twenty-four (24) hours after such communication is deposited with the overnight courier for delivery, addressed as aforesaid, or (c) if given by any other means, when delivered at the address specified in this Section 14.

15.   **Miscellaneous**.

(a)    This Agreement may be amended only by a written instrument executed by Lender, Bank, and Company acting by their respective duly authorized representatives.

# Duplicate Original

(b)     This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns, but Company shall not be entitled to assign or delegate any of its rights or duties hereunder without first obtaining the express prior written consent of Lender.

(c)     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

(d)     Except as may be expressly provided in this Agreement, nothing contained in this Agreement, whether express or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it and their respective successors and permitted assigns, nor is anything in this Agreement intended to relieve or to discharge the obligations or liability of any third person to any party to this Agreement, and no provision of this Agreement shall afford to any third person any right of subrogation or action over against any party to this Agreement.

(e)     THIS AGREEMENT SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY OTHERWISE APPLICABLE CONFLICTS OF LAWS PRINCIPLES.

(f)     IN THE EVENT OF LITIGATION BETWEEN ANY OF THE PARTIES TO THIS AGREEMENT WITH RESPECT TO ITS SUBJECT MATTER OR ANY CLAIM ARISING OUT OF OR IN ANY WAY CONNECTED TO THIS AGREEMENT, EACH OF THE PARTIES HEREBY CONSENTS TO THE JURISDICTION OF THE STATE OF NEW YORK, ALBANY COUNTY OR THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK.

[SIGNATURES FOLLOW]

# Duplicate Original

IN WITNESS WHEREOF, intending to be legally bound, each of the parties has executed and delivered this Lockbox Account Agreement as of the day and year first above set forth.

Citizens Bank, N.A.
a National Association

By: _____
Name: michael A Paparian
Title: Vice President

HIGHGATE MANOR GROUP, LLC
a New York limited liability company

By: _____(SEAL)
Name:
Title:

HIGHGATE LTC MANAGEMENT, LLC
a New York limited liability company

By: _____(SEAL)
Name:
Title:

GUILDERLAND LTC MANAGEMENT, LLC
a New York limited liability company

By: _____(SEAL)
Name:
Title:

GENERAL ELECTRIC CAPITAL
CORPORATION
a Delaware corporation

By: _____
Name: Wendy Bottler
Title: Authorized Signatory

# Duplicate Original

## EXHIBIT A

## LIST OF ALL LOCKBOX ACCOUNTS

| Name | FEIN | Account Number |
|------|------|----------------|
| Highgate LTC Management, LLC | 13-4059904 | 4001080388 |
| Guilderland LTC Management, LLC | 22-3745272 | 4001080434 |

# Duplicate Original

## EXHIBIT B

## PAYEE NAMES

Northwoods at Cortland
Northwoods at Niskayuna
Northwoods at Hilltop
Northwoods at Rosewood Gardens
Northwoods at Troy
Northwoods at Guilderland Center
Northwoods Rehabilitation
Highgate LTC Management
Northwoods Rehabilitation & ECF at Hilltop
Northwoods Rehabilitation & ECF at Troy
Northwoods Rehabilitation & ECF at Niskayuna
Northwoods Rehabilitation & ECF at Rosewood Gardens
Northwoods Rehabilitation & ECF at Cortland
Highgate LTC Management, Highgate LTC Hilltop
Highgate LTC Management, Highgate LTC Troy
Highgate LTC Management, Highgate LTC Rosewood Gardens
Highgate LTC Management, Highgate LTC Cortland
Highgate LTC Management, Highgate LTC Niskayuna
Northwoods Reh & Ext CF Hilltop
Northwoods Reh & Ext CF Troy
Northwoods Reh & Ext CF Rosewood Gardens
Northwoods Reh & Ext CF Cortland
Northwoods Reh & Ext CF Niskayuna
Highgate Manor of Rensselaer
Highgate Manor of Cortland
Highgate Manor of Rosewood Gardens
Highgate Manor of Hilltop
Guilderland Center Nursing Home
Guilderland LTC Management, LLC