EXHIBIT "6"

**RECEIVED & FILED**

**RECEIVED**

MAY 1 4 2007

**BANKRUPTCY JUDGE
ALBANY, NEW YORK**

UNITED STATES BANKRUPTCY COURT MAY 1 4 2007
NORTHERN DISTRICT OF NEW YORK
— — — — — — — — — — — — OFFICE OF THE BANKRUPTCY CLERK
ALBANY, NY

Chapter 11

In re:

HIGHGATE LTC MANAGEMENT, LLC.,

Case No. 07-11068-1 REL
(Jointly Administered)

Debtor.

— — — — — — — — — — — — — — — — — X

### FINAL ORDER AUTHORIZING THE DEBTORS TO: (A) BORROW MONEY PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), AND 364(e) OF THE BANKRUPTCY CODE; AND (B) USE CASH COLLATERAL ON A CONSENSUAL BASIS AND (C) GRANTING ADEQUATE PROTECTION AND RELATED RELIEF PURSUANT TO SECTIONS 105, 361, AND 363 OF THE BANKRUPTCY CODE

WHEREAS, Highgate LTC Management, LLC ("LTC") and Highgate Manor, LLC

("Manor") (collectively the "Debtors"), having each filed for relief under Chapter 11 of the

United States Bankruptcy Code, 11 U.S.C. §101 et. seq. (the "Bankruptcy Code") on April 16,

2007 (the "Filing Date"), and an order has been entered providing for the joint administration of

the Debtors' Chapter 11 cases (the "Chapter 11 Cases"); and

WHEREAS, prior to the Filing Date, the Debtors entered into various loan, mortgage,

security, forbearance and other related documents with General Electric Capital Corporation

("GECC"), each of which are more particularly described on *Schedule 1* annexed hereto

(collectively, the "Loan Documents"); and

WHEREAS, the Debtors were in default under the terms of the Loan Documents, prior to

the Filing Date; and

WHEREAS, GECC commenced a foreclosure action to foreclose the fee interest of

Manor and leasehold interest of LTC by virtue of the mortgages included in the Loan Documents

regarding the 4 properties described therein (the "Mortgaged Premises") to recover

approximately $27,000,000.00 of the unpaid principal, interest and related fees, charges and enforcement costs due under the Loan Documents (the "Foreclosure Action"); and

WHEREAS, the Foreclosure Action was commenced on or about October 17, 2006 in the Supreme Court of the State of New York, County of Rensselear (General Electric Capital Corporation v. Highgate Manor, LLC, et al., Supreme Court, State of New York, County of Rensselaer, Index No. 219393-06); and

WHEREAS, prior to the Filing Date, on November 29, 2006 with the consent of the New York Department of Health, Long Hill Alliance Company was appointed by order of the State Court (the "Receivership Order", a copy of which is attached hereto as *Exhibit A*) as receiver in the Foreclosure Action to maintain control of the Mortgaged Premises, and to operate the skilled nursing home facilities located at (i) 100 New Turnpike Road, Troy and Schaghticoke, County of Rensselaer, State of New York, (ii) 284 Troy Road, East Greenbush, County of Rensselaer State of New York, (iii) 1805 Providence Ave., Niskayuana, County of Schenectady, State of New York, and (iv) 28 Kellog Road, Cortland, County of Cortland, State of New York (collectively, the "Facilities"); and

WHEREAS, on or about November 27, 2006, GECC and the Receiver entered into a Shortfall Agreement (the "Shortfall Agreement"), a copy of which is annexed hereto as *Exhibit B*, which provided for, *inter alia*, specific reports, budgeting and working capital deficit requirements allowing for the smooth and efficient operation of the Facilities, which Shortfall Agreement was incorporated into the Receivership Order; and

WHEREAS, subsequent to the Filing Date, the Debtors sought approval to use GECC's cash collateral (as that term is defined in Section 363(a) of the Bankruptcy Code) on a

consensual basis subject to the terms and conditions of this Order, provide adequate protection to GECC and for related relief (the "Motion"); and

WHEREAS, the Receiver at a status conference held before this Court on April 20, 2007 indicated a need to have available the ability to borrow from GECC on behalf of the Debtors pursuant to the terms of the Receivership Order and the Shortfall Agreement; and

WHEREAS, GECC indicated its willingness to continue the terms of the Shortfall Agreement with the Receiver provided it receives the protections of the Receivership Order; and

WHEREAS, on April 24, 2007, an official committee of unsecured creditors (the "Committee") was appointed in the Chapter 11 Cases under Section 1102(a)(1) of the Bankruptcy Code; and

WHEREAS, this Court entered a Scheduling Order dated April 20, 2007, scheduling an interim hearing with respect to the Motion on April 25, 2007 at 11:00 a.m. (the "Scheduling Order"); and

WHEREAS, this Court held an interim hearing with respect to the Motion on April 25, 2007 (the "Interim Hearing") at which no objections to the interim relief requested in the Motion were made by any party in interest; and;

WHEREAS, this Court, having considered the Motion and the proceedings before this Court at the Interim Hearing, thereafter entered an "Interim Order Authorizing the Debtors to: (A) Borrow Money Pursuant to Sections 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), and 364(e) of the Bankruptcy Code; (B) Utilize Cash Collateral on a Consensual Basis and Granting Adequate Protection and Related Relief Pursuant to Section 105, 361, 363; and (C) Scheduling a Final Hearing Pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure", dated April 25, 2007 (ECF Doc. #31); and

WHEREAS, this Court held a final hearing with respect to the Motion on May 14, 2007 (the "Final Hearing") at which this Court considered the Motion and the proceedings before this Court; and

WHEREAS, due and sufficient notice of the Motion and the Final Hearing having been given by the Debtors' counsel; and

Good and sufficient cause appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.  This Court has core jurisdiction over the Debtors, the relief sought in the Motion as modified by the Scheduling Order and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

B.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.  Under the circumstances, the notice of the Motion and the Final Hearing given by the Debtors constitutes due and sufficient notice thereof and complies with Rule 4001(b) and (c) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule").

D.  Without prejudice to the rights of the Committee, the Debtors or the ~~first~~ ___Operating Trustee___ ~~subsequently appointed trustee, if any~~ ("Trustee") or any party in interest (but subject to the limitations thereon described in paragraph 21 below);

  (i)  The obligations under the Loan Documents are secured by security interests in and liens (the "Pre-petition Liens") on all of the Debtors' assets as more fully described and defined as the term Collateral in the Loan Documents (the "GECC Pre-petition Collateral");

*being appointed contemporaneously herewith pursuant to Section 1104 of the Bankruptcy Code*

(ii)     As of the Filing Date, the Debtors were indebted and liable to GECC under the Loan Documents in the aggregate amount of approximately $27 million plus expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Loan Documents), charges and other obligations incurred in connection therewith as provided in the Loan Documents (collectively, the "Pre-petition Debt");

(iii)    The Pre-petition Debt constitutes a legal, valid and binding obligation of the Debtors under the Loan Documents, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from Section 362 of the Bankruptcy Code); and

(iv)     The Pre-petition Liens granted pursuant to and in connection with the Loan Documents (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust and other security documents executed by any of the Debtors in favor of GECC) are (a) valid, binding, perfected, enforceable, first priority liens and security interests in the GECC Pre-petition Collateral, (b) subject and subordinate only to (1) the DIP Liens (as defined below), (2) valid, perfected and unavoidable liens otherwise permitted under the Loan Documents and (3) the Carveout (as defined below).

(v)      Nothing contained in this paragraph D shall be binding or deemed to be an admission by any guarantor of the Debtors' obligations under the Loan Documents nor constitute a waiver of any of GECC's rights against such guarantors.

E.     Good cause has been shown for the entry of this Order.

F.     The Receiver has an immediate need to use Cash Collateral and, to the extent necessary and as provided for in the Receivership Order and the Shortfall Agreement, secure additional funding, in order to permit, among other things, the orderly continuation of the operation of the Debtors' businesses, to maintain business relationships with vendors, suppliers, patients and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs. The access of the Receiver to sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the health and welfare of the patients and Receivership of the Facilities, the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors. If the Receiver does not obtain authorization to use Cash Collateral and/or borrow under the Receivership Order and the Shortfall Agreement, the Facilities, the Receivership and the Debtors' estates will suffer irreparable harm.

G.     Funding is not available on more favorable terms from sources other than GECC under the Shortfall Agreement, nor is unsecured credit available. Adequate secured credit is not available under Sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without granting to GECC the DIP Liens (as defined below) and the Superpriority Claims (as defined below) under the terms and conditions set forth in this Order and in the Loan Documents.

H.     The Shortfall Agreement and the Receivership Order were negotiated in good faith and at arm's length by, between and/or among GECC, the Receiver and New York State Department of Health ("DOH"), and the terms of this Final Order were negotiated in good faith and at arms' length by, among GECC, the Receiver, DOH, the Debtor and the Committee, and to the extent GECC allows for post-petition borrowings under these documents, GECC shall be

entitled to the full protection of Section 364(e) of the Bankruptcy Code if this Order or any provision hereof is vacated, reversed or modified on appeal or otherwise.

I.    On April 13, 2007, the Court entered a Stipulation and Interim Order Authorizing Debtors' Use of Cash Collateral (the "Stipulation and Order").

J.    Based on the foregoing, and upon the record made before this Court at the Interim Hearing and the Final Hearing, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED AND ADJUDGED THAT:**

1.    The Receiver's request to borrow and use Cash Collateral is granted on a final basis on the terms and conditions set forth in this Order. This Order shall become effective immediately upon its entry.

2.    The Receiver is hereby authorized to use Cash Collateral and borrow money in accordance with the terms of this Order, the Loan Documents, the Receivership Order and the Shortfall Agreement, which shall be used for all purposes permitted under the Budget (as defined below), including, without limitation, the ongoing working capital needs of the Debtors' estates and for the payment of interest, fees and expenses in accordance with this Order and the Loan Documents.

3.    Without prejudice to the rights of the Committee, the terms, conditions and covenants of the Receivership Order, Shortfall Agreement and the other Loan Documents (as made applicable thereby) are hereby approved to the extent not inconsistent with this Order.

4.    In furtherance of the foregoing and without further approval of this Court, to the extent consistent with this Order, the Receiver is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution and recordation of security agreements, mortgages and financing statements), and to

pay all fees, that may be reasonably required or necessary for the post petition performance of the obligations under the Loan Documents, the Receivership Order and the Shortfall Agreement.

5.     Without prejudice to the rights of the Debtors, the Committee, or the Trustee as set forth in paragraph 21 hereof, no post-petition obligation, payment, transfer or grant of security under the Loan Documents, the Shortfall Agreement, or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under Section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim, except as provided in this Order.

**Cash Collateral**

6.     The Receiver shall be permitted to use Cash Collateral (in accordance with the terms of the budget annexed hereto as *Exhibit C* (the "Budget") arising from, or constituting proceeds of, GECC's Pre-petition Collateral existing as of the Filing Date (the "Pre-petition Cash Collateral") and use Cash Collateral generated after the Filing Date (the "Post-petition Cash Collateral") solely for the following purposes:

a)     The Receiver shall make interest payments to GECC (and pay all fees and expenses due GECC, provided that prior to the payment of any professional fees and expenses, Debtors' counsel, Committee Counsel and the Office of the United States Trustee, shall be given 10 days notice of such fees and expenses with an opportunity to object thereto, and provided further, that such payments to GECC shall be subject to a final application submitted by GECC to the Court) pursuant to Section 506 of the Bankruptcy Code as and when (and in the amounts) due under the Loan Documents until a Plan is confirmed, the Chapter 11 Cases are dismissed, the Chapter 11 Cases are converted to cases under Chapter 7 of the Bankruptcy Code, or a trustee is appointed; and

b)    The Receiver shall not be permitted to use Cash Collateral for any other purpose

except as provided for in the Budget (and any order of this Court).

7.    In order to secure and provide adequate protection for the use of the Cash

Collateral, to the extent of any diminution in the value of GECC's interest in the Cash Collateral

resulting from the use of the Cash Collateral, GECC is hereby granted pursuant to Section 361

and 363(e) of the Bankruptcy Code a valid, binding, enforceable and perfected continuing

replacement first-priority lien and security interest (the "Replacement Liens") in and on any and

all real and personal property (both tangible and intangible), equipment, accounts receivable or

rents of the Debtors, including all postpetition contract rights, agreements or the like, and all

other assets of the Debtors, of any kind or nature, wherever located, now owned or hereafter

acquired or arising, whether or not constituting GECC's Pre-petition Collateral, Pre-petition

Cash Collateral, or Post-petition Cash Collateral (collectively referred to herein as the "Adequate

Protection Collateral") senior to all other liens against the Debtors' estate including without

limitation, any governmental authority or landlord with right of set off or recoupment, subject

only to (a) the DIP Liens, (b) Permitted Liens (as defined below), (c) the Carve Out (as defined

below) and (d) any liens of the IRS which are determined by subsequent order or agreement of

the parties to be senior to the Pre-petition Liens; for now all parties reserve their respective rights

with respect to the validity, extent, nature and priority of any liens of the IRS; however the

parties agree that the resolution of these issues will be resolved using the same procedures and

deadlines outlined in paragraph 21 below as relates to the Pre-petition Liens of GECC.  The

Replacement Liens shall not attach to any claims or actions under Chapter 5 of the Bankruptcy

Code and any proceeds thereof (the "Avoidance Recoveries").  The grant of Replacement Liens

hereunder is solely as and to the extent that, prior to the Filing Date, GECC had valid

enforceable, perfected and unavoidable liens and security interest in the Cash Collateral and to the extent that no such valid right exists in favor of GECC, the grant of the Replacement Liens hereunder shall be of no force and effect except to the extent necessary to afford GECC adequate protection for the use of the Pre-petition Collateral in which GECC otherwise had an enforceable, perfected and unavoidable lien and security interest.

8.     From and after the date of this Order, the Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtors and their estate except (a) for those expenses that are expressly authorized in the Budget, including professional fees and expenses, (b) those expenses expressly authorized under this Order, or (c) those expenses consented to in writing by GECC.   The Receiver may pay actual expenses that are different from the amounts stated as long as the total amount of borrowing is not increased; any such increase may be made only with the consent of GECC and the Committee.  The Budget shall include the Receiver's, the Debtors' and the Committee's best estimate of anticipated professional fees and expenses to be paid during the Budget period, provided, however, that such estimate is subject to uncertainties and that the actual professional fees and expenses may exceed such estimated amounts and the inclusion in the Budget of such estimate is not intended to limit the amount or reimbursement of such fees and expenses.

9.     Debtors acknowledge that GECC will not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Collateral, provided, however, that the Debtors' waiver and release as set forth herein shall not limit or affect in any way any right of the Committee or a Trustee, including, without limitation, the right of the Committee or a Trustee to bring any action or claim against GECC as if there had been no release or waiver by the Debtors.

**Borrowing**

10.     Pursuant to Section 364(c)(1) of the Bankruptcy Code, any post-petition

borrowings under the Receivership Order or the Shortfall Agreement (the "Shortfall

Obligations") shall constitute an allowed administrative expense claim against the Debtors with

priority over any and all administrative expenses, diminution claims and all other claims against

the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without

limitation, all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the

Bankruptcy Code, and over any and all administrative expenses or other claims arising under

Sections 105, 326, 328, 330, 331, 503(b), 507(a), 507(b), 726, 1113 and 1114 of the Bankruptcy

Code (collectively the "Superpriority Claim"), whether or not such expenses or claims may

become secured by a judgment lien or other non-consensual lien, levy or attachment, which

Superpriority Claim shall be payable from and have recourse to all pre- and post-petition

property of the Debtors and all proceeds thereof, subject only to the payment of the Carveout to

the extent specifically provided for herein.   The Superpriority Claim shall not extend to any

Avoidance Recoveries.

11.     As used in this Order, "Carveout" means: (i) all fees required to be paid to the

Clerk of the Bankruptcy Court and to the Office of the United States Trustee under Section

1930(a) and (b) of Title 28 of the United States Code; (ii) the aggregate allowed unpaid fees and

expenses payable under Sections 330 and 331 of the Bankruptcy Code to professionals retained

pursuant to an order of the Court by the Committee up to $75,000 for services rendered and

expenses incurred on and after the Termination Date (as defined below); (iv) all fees and

expenses incurred by any trustee under Section 326(a) of the Bankruptcy Code; and (iv) any

liens granted by Section 362(b)(18) of the Bankruptcy Code; and (v) any liens created by Section

*[Handwritten annotations in right margin and bottom of page, partially legible: "to the extent that the Trustee has performed services identifiable to facilitate the sale of the underlying Mortgaged Premises"]*

*[Handwritten annotation at bottom: "(iii) The aggregate allowed unpaid fees and expenses payable under Section 326 of the Bankruptcy Code to the Trustee, or any professionals retained by the ..."]*

362(b)(1) of the Bankruptcy Code. The Carevout is without prejudice to the rights of the Committee's retained professionals to seek compensation and reimbursement of expenses allowed and payable under Sections 330 and 331 of the Bankruptcy Code or under any interim procedures order and to be paid during the course of the Chapter 11 cases prior to the Termination Date and the Carveout shall not be reduced by the amount of any compensation and reimbursement of expenses paid or incurred (to the extent ultimately allowed by the Court) prior to the occurrence of the Termination Date. The Receiver shall establish a special account (the "Committee Professional Carve-Out Account") and deposit funds into the Committee Professional Carve-Out Account on a weekly basis in amounts consistent with the Budget for the fees and expenses of the Committee's professionals in order to assure that the funds earmarked in the Budget for the Committee's professionals are available for such professionals. The DIP Liens, the Replacement Liens and the Superpriority Claim of GECC in the funds in the Committee Professional Carve-Out Account shall be subject and subordinate to the claims for the postpetition fees and expenses of the Committee's professionals unless such funds in the Committee Professional Carve-Out Account exceed the final amount of allowed claims for postpetition fees and expenses of the Committee's professionals.

**Grant of DIP Liens**

12.     As security for the Shortfall Obligations, effective and perfected upon the date of this Order and without the necessity of the execution, recordation or filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to GECC (all property identified in clauses (a) and (b) below being collectively referred to as the "Post-petition Collateral"), subject only to the Carve-Out (all such liens and security interests granted

to GECC pursuant to the Interim Order and this Order, the "DIP Liens"): (a) pursuant to Section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon or pledge of all post-petition property of the Debtors except for Excluded Assets (defined below), to the extent not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Filing Date or valid liens in existence as of the Filing Date that are perfected subsequent to such date to the extent permitted by Section 546(b) of the Bankruptcy Code (the "Permitted Liens"). "Excluded Assets" means: (1) the Avoidance Recoveries; (2) cash being held by the Debtors (or the Receiver on behalf of the Debtors) for the purpose of providing for payment of taxes, government charges and employee-related taxes and charges (the "Trust Funds"); (3) any funds being held by the Debtors or the Receiver deposited by patients at the Facilities for the sole purpose of purchasing food or personal items at the Facilities; and (b) pursuant to Section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all of the post-petition property of the Debtors (other than Excluded Property and property described in clause (a) of this paragraph 12) that is subject to valid, perfected and unavoidable liens, in existence immediately prior to the Filing Date, or to valid and unavoidable liens in existence immediately prior to the Filing Date that are perfected subsequent to the Filing Date as permitted by Section 546(b) of the Bankruptcy Code, which security interests and liens of GECC are immediately junior to such valid, perfected and unavoidable liens.

13.    The DIP Liens shall not be subject or subordinate to (a) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under Section 551 of the Bankruptcy Code or (b) any liens or security interests arising after the Filing Date, including, without limitation, any liens or security interests granted in favor of any

landlord or any federal, state, municipal or other Governmental Unit (as defined in 11 U.S.C. §101(27)). In addition, pursuant to Sections 105 and 362 of the Bankruptcy Code, any such holder shall be stayed and prohibited from asserting any such setoff or other charge, or any recoupment rights against the Debtors' accounts receivables (except as set forth herein).

Notwithstanding the grant of the DIP Liens and the Superpriority Claim, or the rights of GECC under the Loan Documents, the Shortfall Agreement, the Receivership Order or this Order, the DOH shall (a) ~~reserve all rights to assert any~~ *(a) retain it's* liens and security interests, *if any,* against the Debtors' assets, including the priority rights thereof, (b) ~~reserve~~ *retain* its rights, if any, to recoup medical provider reimbursement overpayments from medicaid receivables ("<u>Medicaid Receivables</u>") of the Debtors, and (c) reserve its rights of setoff, if any, against Medicaid Receivables. GECC, the Debtors, the Committee and the DOH shall reserve their respective rights to contest and challenge whether the DOH is exercising a right of recoupment versus setoff ~~and whether the automatic stay precludes the exercise of a right of recoupment. Further, DOH agrees that as a~~ result of the filing of the Chapter 11 cases, its rights of setoff are subject to the automatic stay, and, prior to attempting to exercise such rights, it shall file an application on notice to all parties in interest herein for relief from stay. Additionally, GECC, the Debtors, the Committee and DOH each reserve their respective rights to assert or contest whether any administrative claims that may arise in favor of the DOH as a result of the Debtors' failure to pay post-petition cash receipts assessments are entitled to priority over and above the liens and claims of GECC and/or ~~any other party in interest.~~ Finally, the IRS hereby reserves its rights to seek approval from the Court for the right to set off post petition credit due the Debtors as against post petition unpaid liabilities of the Debtors, and GECC, the Debtors and the Committee reserve their respective rights to challenge or oppose such request.

* The DOH's claim for post ~~petition~~ Filing Date cash receipts assessments for the period through June 28, 2007 shall be entitled to a claim of administration pursuant to Section 503(b) of the Bankruptcy Code entitled to priority under Section 507 (a)(2) of the Bankruptcy Code claims Senior to ~~all~~ claim of all other creditors, except GECC, that maintain claims Under Section 503(b) [?]

*[handwritten: or The failure to meet any of the deadlines set forth in the Order appointing a Chapter 1104 Operating Trustee]*

14.     Upon the occurrence of a post Filing Date default under the Receivership Order,

Shortfall Agreement and/or this Order *[handwritten: (]* ("Event of Default"), the automatic stay provisions of

Section 362 of the Bankruptcy Code will be vacated and modified to the extent necessary to

permit GECC to exercise upon five business days prior written notice (the "Remedies Notice

Period") by facsimile and e-mail to the United States Trustee, the Debtors, Counsel to the

Debtors, counsel to the Receiver, and Counsel to the Committee, *[handwritten: The Trustee (and counsel, if any)]* all rights and remedies under

the Loan Documents including continuation of the foreclosure action; provided that the Debtors,

Receiver or the Committee shall have the right to seek an order of this Court enjoining such

action. During the Remedies Notice Period, the Debtors, the Receiver or the Committee shall be

entitled to request an emergency hearing before the Court for the purposes of (a) contesting

whether an Event of Default has occurred or (b) seeking injunctive or other affirmative relief

from the Court.

15.     GECC is hereby authorized, but not required, to file or record financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments

in any jurisdiction or take any other action in order to perfect the liens and security interests

granted to it hereunder. Whether or not GECC chooses, in its sole discretion, to file such

financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments or otherwise confirm perfection of the liens and security interests granted to it

hereunder, such liens and security interests shall be deemed automatically perfected by the

docket entry of this Order by the Clerk of the Court. Upon the request of the GECC, without any

further consent of any party, the Debtors and/or Receiver are authorized to take, execute and

deliver such instruments as may be reasonably necessary to enable GECC to perfect the DIP

Liens.

16.     A certified copy of this Order may, in the discretion of GECC be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

17.     If an order dismissing any of the Chapter 11 Cases under Section 1112 of the Bankruptcy Code or otherwise is at any time entered, the terms and provisions of this Order shall survive and this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the same.

18.     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, the provisions of Section 364(e) of the Bankruptcy Code, shall apply to the terms and provisions hereof.

19.     Except as expressly provided in this Order or the Loan Documents, the DIP Liens, the Superpriority Claim and all other rights and remedies of GECC granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (a) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, or terminating the joint administration of these Chapter 11 Cases, or (b) the entry of an order confirming a plan of reorganization in any of the Chapter 11 Cases.  The terms and provisions of this Order shall continue in these Chapter 11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered, or in any superseding Chapter 7 cases under the Bankruptcy Code and the DIP Liens, the Superpriority Claim and all other rights and remedies of GECC granted by the provisions of this Order shall continue in full force and effect until the Shortfall Obligations are paid in full.

20.     Subject to paragraph 21 of this Order, nothing in this Order, the Receivership Order, the Shortfall Agreement or the Loan Documents shall prejudice the rights of the Committee to seek to object to or challenge the findings herein, including, but not limited to those in relation to (a) the validity, extent, or perfection of the mortgages, security interests and liens of GECC in and to the GECC Pre-petition Collateral, or (b) the validity, priority, status or size of the Pre-petition Debt.

21.     The stipulations and admissions contained in this Order, shall be binding upon the Debtors and all other parties in interest, including, without limitation, the Committee, unless the Committee (which shall have and is hereby granted standing to do so), or another party in interest (including the Debtors) with standing and requisite authority has timely filed an adversary proceeding or contested matter on or before the later to occur of: (a) 75 days after the entry of an order retaining counsel by the Committee insofar as a challenge by the Committee is concerned (or, in the event a Trustee is appointed) until 75 days after the appointment of the Trustee) (or for such longer period as may be obtained (x) for cause shown on motion filed by the Committee or Trustee, but not necessarily heard, before the expiration of such period, or (y) with written consent of GECC), or (b) 45 days from the date of this Order for any other party in interest: (i) challenging the validity, enforceability, perfection, priority or extent of the Pre-petition Debt or the Pre-petition Liens on the GECC Pre-petition Collateral, (ii) otherwise asserting or prosecuting any action for preferences, fraudulent conveyances, other avoidance claims or any other any claims, counterclaims or causes of action, objections, contests or defenses (collectively, "Claims and Defenses") and (c) there is a final order in favor of the plaintiff sustaining any Claims and Defenses in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is timely filed, (x) the Pre-

petition Debt shall constitute allowed claims, not subject to counterclaim, setoff, subordination, re-characterization, defense or avoidance, for all purposes in the Chapter 11 Cases and any subsequent Chapter 7 cases, (y) the liens of GECC on the GECC Pre-petition Collateral shall be deemed to have been, as of the Filing Date, legal, valid, binding and perfected, not subject to re-characterization, subordination or avoidance and (z) the Pre-petition Debt and the liens of GECC on the GECC Pre-petition Collateral shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any subsequent chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed, the findings shall be without prejudice to the litigation of any Claims and Defenses by the Committee, Trustee or any other person or entity, and the Court shall retain the power to unwind the protections provided, and payments made, to GECC to the extent necessary to grant full relief with respect to any Claims and Defenses that are successful.

**Limitation on Use of Borrowing and Collateral**

22.      Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Adequate Protection Collateral, Post-petition Collateral or the Carveout may be used to (i) object, contest or raise any defense to the validity, perfection, priority, extent or enforceability of any amount due under the Loan Documents or the liens or claims granted under this Order or, the Loan Documents; (ii) assert any Claims or Defenses or causes of action against GECC or its agents, affiliates, representatives, attorneys or advisors related to the Loan Documents, (iii) prevent, hinder or otherwise delay GECC's assertion, enforcement or realization on the Adequate Protection Collateral or the Post-petition Collateral in accordance with the Loan Documents or this Order, or (iv) seek to modify any of the rights

the sooner to occur of (i) June 28 2007, or (ii)

granted to GECC under the Loan Documents, under the Receivership Order and/or Shortfall

Agreement in each of the foregoing cases without such parties' prior written consent.

23.     All Shortfall Obligations shall be immediately due and payable, and, except as

otherwise provided in this paragraph, all commitments to advance funds under the terms of this

Order and the Shortfall Agreement will terminate, and authority to use Cash Collateral on

consent of GECC shall cease, upon the date (the "Termination Date") of the occurrence of an

(the "Terminate Date")

Event of Default after termination of the Remedies Notice Period. The failure by the Debtors to

^

perform, in any material respect, any of the terms, conditions, covenants or obligations under this

Order unless such failure is cured during the Remedies Notice Period occurrence shall constitute

an Event of Default under this Order. Upon the occurrence of an Event of Default, a revised

short term budget shall be put in place by agreement of GECC, the Receiver and the Committee

in order to satisfy the obligations under paragraph 2 of the Shortfall Agreement, which shall

include at least payments to Utilities. Until agreement is reached on a revised short term budget,

the existing budget shall remain in effect.

24.     Surcharge. Except as expressly provided in this paragraph, no Person, including a

Governmental Unit (as defined above), will be permitted to surcharge the Post-petition Collateral

under Section 506(c) of the Bankruptcy Code or obtain a lien, set off right, or other charge or

adverse claim of any kind or exercise any right of recoupment with respect to the Post-petition

Collateral which is senior or equal to the DIP Liens in the Post-petition Collateral. The Court

will retain jurisdiction over the Post-petition Collateral for the limited purpose of enforcing this

paragraph. Notwithstanding the foregoing, all rights of the Committee, the Debtors and a

Trustee to seek to surcharge or otherwise charge against any of the Pre-petition Collateral, the

Post-petition Collateral or GECC, under Section 105(a)(, 506(c) or 552 of the Bankruptcy Code

or otherwise, any costs or expenses of administration which have been incurred in any of the Chapter 11 Cases at any time are hereby expressly reserved and all rights of GECC to oppose any such surcharge or charge are hereby also expressly reserved.

25.      The Receiver agrees to file and pay from the Debtors' available assets all Federal tax returns and pay all required Federal tax deposits during the term of this Order.

26.      <u>Certain Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of GECC under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of GECC to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Chapter 11 Cases, conversion of any of the Chapter 11 Cases to cases under Chapter 7, or appointment of a chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of GECC.

27.      <u>Failure to Seek Relief</u>.  GECC's failure to seek relief or otherwise exercise its rights and remedies under the Loan Documents or, as the case may be, the Receivership Order, Shortfall Agreement or this Order shall not constitute a waiver of any of its rights hereunder, thereunder or otherwise.

28.      In the event of any inconsistency between the provisions of this Order and the Loan Documents, Receivership Order or the Shortfall Agreement, the provisions of this Order shall govern.

29.     GECC shall be deemed to be a party-in-interest for all purposes in the Chapter 11 Cases with the right and opportunity to appear and be heard on all matters arising in the Chapter 11 cases including, without limitation:  (a) employment and payment of professionals by the Debtors' estate; (b) the sale of any estate property; (c) any plan of reorganization proposed in the case; and (d) any proposed conversion or dismissal of the case.

30.     The terms of this Order allowing for use of Cash Collateral on consent of GECC and borrowing and any extension thereof shall terminate immediately if the Receiver is required to comply with Section 543(a) of the Bankruptcy Code, ~~a trustee is appointed~~, or for any reason any part of the Receivership Order is modified, stayed or terminated unless GECC consents to the contrary in writing.

31.     Sufficient notice of the hearing and entry of this Final Hearing have been given, and such notice shall be and hereby is adjudicated sufficient to provide due process to, and to bind, any other party asserting any lien or other interest of any kind (including any setoff, any recoupment, or any other charges or adverse claim) in any of GECC's Pre-petition Collateral.

32.     The Court has and will retain jurisdiction to enforce this Order according to its terms.

33.     The Debtors counsel shall promptly serve notice of entry of this Order, together with a copy of this Order, by first class mail, postage prepaid upon (i) the U.S. Trustee, (ii) counsel for GECC, (iii) counsel for the Receiver, (iv) the Receiver, (v) counsel for the Committee, (vi) DOH, (vii) U.S. Attorney and (viii) all other parties requesting notice pursuant to Bankruptcy Rule 2002.

34.   Copies of all reports, schedules, budgets, financial and other information furnished by the Debtors or the Receiver to GECC shall simultaneously be furnished to the Committees' counsel and financial advisors.

MAY 1 4 2007

_____
Hon. Robert E. Littlefield, Jr.
United States Bankruptcy Judge

**SCHEDULE "1" TO**
**INTERIM ORDER AUTHORIZING THE DEBTORS TO:**
**(A) BORROW MONEY PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2),**
**364(c)(3), AND 364(e) OF THE BANKRUPTCY CODE; (B) UTILIZE CASH**
**COLLATERAL ON A CONSENSUAL BASIS AND GRANTING ADEQUATE**
**PROTECTION AND RELATED RELIEF PURSUANT TO SECTION 105, 361, 363; AND**
**(C) SCHEDULING A FINAL HEARING PURSUANT TO RULE 4001 OF THE**
**FEDERAL RULES OF BANKRUPTCY PROCEDURE**

**Loan Documents Between General Electric Capital**
**Corporation, As Lender, and Highgate Manor Group, LLC,**
**Highgate LTC Management, LLC and Others, As Borrowers**

1.      Mortgage dated March 13, 2000 between Highgate Manor Group, LLC, as

Mortgagor, and M&T Real Estate, Inc., as Mortgagee, in the principal amount of

$21,500,000.00.

2.      Assignment of Mortgage No. 1 dated May 20, 2005 between M&T Real Estate, as

Assignor, and General Electric Capital Corporation, as Assignee.

3.      Real Estate Loan Agreement dated May 26, 2005 by and among Highgate Manor,

LLC, Highgate LTC Management, LLC and Guilderland LTC Management, LLC, as Borrowers,

and General Electric Capital Corporation, as Lender, in the principal amount of $23,500,000.00.

4.      Consolidated and Modified Senior Promissory Note dated May 26, 2005 by and

among Highgate Manor, LLC, Highgate LTC Management, LLC and Guilderland LTC

Management, LLC, as Borrowers, and General Electric Capital Corporation, as Lender, in the

principal amount of $23,500,000.00.

5.      Mortgage dated May 26, 2005 between Highgate Manor Group, LLC, as

Mortgagor, and General Electric Capital Corporation, as Mortgagee, in the principal amount of

$6,972,815.25.

6.      Consolidated and Modified Mortgage, Assignment of Rents, Security Agreement

and Fixture Financing Statement dated May 26, 2005 between Highgate Manor Group, LLC, as

Mortgagor, and General Electric Capital Corporation, as Mortgagee, securing the principal amount of $23,500,000.00.

7.     Leasehold Mortgage, Assignment of Rents, Security Agreement and Fixture Financing Statement dated May 26, 2005 between Highgate LTC Management, LLC, as Mortgagor, and General Electric Capital Corporation, as Mortgagee, securing the principal amount of $23,500,000.00.

8.     Loan and Security Agreement date May 26, 2005 by and among Highgate Manor Group, LLC, Highgate LTC Management, LLC and Guilderland LTC Management, LLC, as Borrowers, and General Electric Capital Corporation, as Lender, providing a revolving loan up to $4,000,000.00 in principal amount.

9.     Revolving Credit Note dated May 26, 2005 by and among  Highgate Manor Group, LLC, Highgate LTC Management, LLC and Guilderland LTC Management LLC in the principal amount of $4,000,000.00.

10.     Security Agreement dated May 26, 2005 by and among Highgate Manor Group, LLC Highgate LTC Management, LLC, Guilderland LTC Management, LLC, as Debtors, and General Electric Capital Corporation, as Secured Party securing a loan in the principal amount of $23,500,000.00.

11.     UCC-1 Financing Statements filed in favor of General Electric Capital Corporation as Secured Party including those filed on April 26, 2005, April 27, 2005, May 27, 2005, May 31, 2005, June 1, 2005 and June 7, 2005 against Highgate Manor Group, LLC, and on April 26, 2005, April 27, 2005 , May 27, 2005, May 31, 2005, June 1, 2005 and June 7, 2005 against Highgate LTC Management, LLC, and on April 26, 2005 and May 27, 2005 against Guilderland LTC Management, LLC, as Debtors.

12.     Forbearance Agreement dated April 12, 2006 by and among Highgate Manor Group, LLC, Highgate LTC Management, LLC, Guilderland LTC Management, LLC, as Borrowers, and Dianna R. Koehler-Nachamkin, Eugene M. Nachamkin, Scott H. Bialick and Howard S. Krant, as Guarantors, and Patricia Bruder and Longview Horizon, LLC, as Principals, and General Electric Capital Corporation, as Lender.

13.     First Amendment to Forbearance Agreement dated May 31, 2006 by and among Highgate Manor Group, LLC, Highgate LTC Management, LLC, Guilderland LTC Management, LLC, as Borrowers, and Dianna R. Koehler-Nachamkin. Eugene M. Nachamkin, Scott H. Bialick and Howard S. Krantt, as Guarantors, and Patricia Bruder and Longview Horizon, LLC, as Principals, and General Electric Capital Corporation, as Lender.

14.     Second Amendment to Forbearance Agreement dated June 23, 2006 by and among Highgate Manor Group, LLC, Highgate LTC Management, LLC, Guilderland LTC Management, LLC, as Borrowers, and Dianna R. Koehler-Nachamkin, Eugene M. Nachamkin, Scott H. Bialick and Howard S. Krantt, as Guarantors, and Patricia Bruder and Longview Horizon, LLC, as Principals, and General Electric Capital Corporation, as Lender.

15.     Agreement of Principals dated May 26, 2005 by and among Dianna R. Koehler-Nachamkin, Eugene M. Nachamkin, Scott H. Bialick, Howard S. Krantt, Patricia Bruder and Longview Horizon, LLC, as Principals, and General Electric Capital Corporation, as Agent.

*Exhibit A*

At an Ex-Parte Part of the Supreme Court of
the State of New York held in and for the
County of Rensselaer at the Courthouse
thereof, Congress and Second Street, Troy,
New York, on *11/29*, 2006.

PRESENT:

Honorable *CHRISTIAN HUMMEL*
*ACTING Supreme* Justice.
*Court*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF RENSSELAER

------------------------------------------------X

GENERAL ELECTRIC CAPITAL CORPORATION,

       Plaintiff,

      -against-

HIGHGATE MANOR GROUP, LLC, HIGHGATE
LTC MANAGEMENT, LLC, GUILDERLAND LTC
MANAGEMENT, LLC, DIANNA R. KOEHLER-
NACHAMKIN, EUGENE M. NACHAMKIN,
SCOTT H. BIALICK, HOWARD S. KRANT,
AMC NEW YORK, INC., d/b/a ROYAL CARE
PHARMACY, NEW YORK STATE DEPART-
MENT OF TAXATION AND FINANCE
and JOHN DOE NOS. 1-10 being fictitious and unknown to
plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the premises
described in the complaint,

       Defendants.

------------------------------------------------X

Index No.: 219393-06

**ORDER
APPOINTING RECEIVER**

    UPON reading the Amended Summons and Amended Verified Complaint together with
an Amended Notice of Pendency of the action filed in the Office of the Clerk of Rensselaer
County on the 8th day of November, 2006, which Amended Notice of Pendency was also filed in
the Office of the Clerk of Schenectady County on November 9, 2006 and in the Office of the
Clerk of Cortland County on November 9, 2006 and upon reading the Affirmation of William F.
Laino, Esq. dated November *20*, 2006 (the "Laino Affirmation") filed in support of Plaintiff

General Electric Capital Corporation's ("Plaintiff" or "GECC") application pursuant to RPAPL§ 1325 (1) and CPLR § 6401(a) for the appointment of a temporary receiver (the "Receiver"); and it appearing to the satisfaction of the Court

THAT this action was brought by Plaintiff to foreclose a certain Consolidated and Modified Mortgage Assignment of Rents, Security Agreement and Financing Statement dated May 26, 2005 (the "Consolidated Mortgage") executed, acknowledged and delivered by Defendant Highgate Manor Group, LLC ("Highgate Manor"), a New York limited liability company, as mortgagor, to Plaintiff, as mortgagee, and a certain Leasehold Mortgage, Assignment of Rents, Security Agreement and Fixture Financing Statement dated May 26, 2005 (the "Leasehold Mortgage") executed, acknowledged and delivered by Defendant Highgate LTC Management LLC ("Highgate Management"), a New York Limited Liability Company, as mortgagor, to Plaintiff, as mortgagee, to secure the payment inter alia, of a certain Loan Agreement ("Real Estate Loan Agreement") of even date and Consolidated and Modified Senior Promissory Note (the "Senior Promissory Note") in the sum of $23,000,000.00 and a Revolving Credit Agreement and Revolving Credit Note of even date in the maximum amount of $4,000,000.00 (collectively the "Revolving Credit Documents"), and the performance of all other covenants, agreements and obligations of inter alia, Highgate Manor and Highgate Management to Plaintiff; and it further appearing

THAT the Consolidated Mortgage constitutes a lien encumbering Highgate Manor's fee interest in certain premises referred to and described in the Amended Verified Complaint and Amended Notice of Pendency, known as 284 Troy Road, East Greenbush, County of Rensselaer, State New York; 100 New Turnpike Road, Troy and Schagitoke, County of Rensselaer, State of New York; 1305 Providence Avenue, Niskayuna, County of Schenectady, State of New York, and 28 Kellog Road, Cortland, County of Cortland, State of New York, all as more particularly

described in Exhibit B annexed to the Laino Affirmation (collectively, the "Mortgaged Premises"); and it further appearing

THAT the Leasehold Mortgage constitutes a lien encumbering Highgate Management's leasehold interest in the Mortgaged Premises; and it further appearing

THAT in and by the Consolidated Mortgage and the Leasehold Mortgage the mortgagors covenanted that inter alia, if a default should be made in the payment of the principal sum and/or interest thereon at the time therein specified for the payment thereof, or in the performance of any other covenant contained therein or in the Revolving Credit Documents as defined in the Amended Verified Complaint, GECC would be entitled, upon the event of default, to apply, as a matter of right, for the appointment of a Receiver to operate the Mortgaged Premises and to collect the rents, issues, income, fees and profits of the Mortgaged Premises, which application, by the terms of the Consolidated Mortgage and the Leasehold Mortgage and by operation of Real Property Law §254(10), may be made without notice and without regard to the adequacy of any security for the indebtedness secured by said Consolidated Mortgage and Leasehold Mortgage; and it further appearing

THAT the Consolidated Mortgage and Leasehold Mortgage are in default due, inter alia, to Highgate Manor's failure to make the payments due under the Real Estate Loan and the Senior Promissory Note; Highgate Manor's and Highgate Management's failure to pay certain taxes in the amount of $4,100,000.00 and Highgate Manor's and Highgate Management's failure to comply with other affirmative and negative covenants set forth in the Consolidated Mortgage, the Leasehold Mortgage and the Revolving Credit Documents; and that as a result of said defaults, Plaintiff has duly accelerated the payment of all amounts due or secured by the Consolidated Mortgage and the Leasehold Mortgage, and that the same are now due and it further appearing

3

THAT all or a portion of the Mortgaged Premises is operated as four skilled nursing facilities (collectively, the "Facility", and the operator(s) of the Facility are hereinafter referred to [collectively] as the "Prior Operator") licensed by the New York State Department of Health and that Highgate Manor receives lease payments from Highgate Management for lease of the Mortgaged Premises and that Highgate Management receives income for the use of the Mortgaged Premises by residents or patients for skilled nursing and other services, and that such income might be applied toward and to the reduction of the mortgage indebtedness, to necessary disbursements in connection with the use, operation and maintenance of the Mortgaged Premises, and to the payment of real estate taxes, water and sewer rents, meter charges and insurance as and when they become due; and that the appointment of a Receiver of the operation of the Facility and of such rents, issues and profits of the Mortgaged Premises is necessary and desirable for the protection of the Plaintiff and the preservation of the Mortgaged Premises; and it is further appearing

THAT on April 26, 2005, pursuant to the assignments of rents and security agreements contained in the Consolidated Mortgage and Leasehold Mortgage, GECC duly filed a Financing Statement (UCC-1) with the Secretary of State of the State of New York evidencing a security interest given by Highgate Manor to GECC in the collateral described therein, which includes all rents, income, accounts, accounts receivable, general intangibles, equipment, inventory, fixtures and proceeds of the foregoing (the "Collateral") relating to the Mortgaged Premises, as security for payment of all amounts due under the Consolidated Mortgage and Leasehold Mortgage and that such UCC-1 was also filed on May 31, 2005 in the Office of the Clerk of Rensselear County and on June 1, 2005 in the Office of the Clerk of Cortland County and on June 7, 2005 in the Office of the Clerk of Schenectady County; and it further appearing

4

THAT Plaintiff is the lawful holder of the Real Estate Loan Agreement, Senior Promissory Note, Consolidated Mortgage, Leasehold Mortgage, Revolving Credit Documents and Financing Statement; and it further appearing

THAT Plaintiff has a duly perfected security interest in the Collateral for payment of all sums due it under the Consolidated Mortgage; and it further appearing

THAT the borrowers under the Real Estate Loan, Senior Promissory Note and Revolving Credit Documents secured by the Consolidated Mortgage and Leasehold Mortgage have heretofore admitted the validity of said instruments and their default thereunder; and it further appearing

THAT the New York State Department of Health ("Department of Health") has been apprised of this application and has approved the form of this Order and the Receiver to be appointed hereunder.

NOW, on motion of Moritt Hock Hamroff & Horowitz LLP, attorneys for Plaintiff, it is

ORDERED, that, Long Hill Alliance Company, having an office located at 580 Long Hill Avenue, Shelton, CT, be and hereby is appointed Receiver of the Mortgaged Premises, for the benefit of Plaintiff, with the usual powers and directions, including the authority to act as interim operator of the Facility and including the power to collect all rents, issues, fees, revenues, profits, and all other monies and proceeds now due and unpaid or to become due during the pendency of this action, and issuing from the Mortgaged Premises, including, but not limited to, all rents and other payments now due and unpaid or to become due from or on behalf of all residents, patients, medical insurance providers, including without limitation, Medicare and Medicaid, tenants, subtenants, occupants and licensees at the Mortgaged Premises, or any part thereof; and it is further

5

ORDERED, that prior to entering upon its duties as Receiver, the Receiver shall execute to the People of the State of New York, and file in the Office of the Clerk of Rensselaer County, with certified copies in the Offices of the Clerks of Schenectady County and Cortland County, an undertaking with sufficient surety, in the penal sum of $10,000.00 conditioned upon the faithful performance of its duties as the Receiver; and it is further

ORDERED, that prior to entering upon its duties, an officer of the Receiver shall execute and file an oath that the Receiver will faithfully and fairly discharge the trust committed to it; and it is further

ORDERED, that the Receiver shall accept the Mortgaged Premises in its then present "as is" condition; and it is further

ORDERED, that the duration of the appointment of the Receiver as receiver of the Mortgaged Premises shall continue until sale of the Mortgaged Premises pursuant to a Judgment of Foreclosure and Sale issued by this Court and delivery of a Referee's Deed to such purchaser, or until further order of this Court. Any prospective purchaser at such foreclosure sale or the appointment of a substitute Receiver shall be subject to the approval of the Department of Health of the State of New York pursuant to law and its rules and regulations applicable thereto. At the time of, and as a condition to any such purchase of the Facility or any one of them, "tail" insurance, on terms and conditions reasonably acceptable to Receiver and Plaintiff, shall be purchased covering the Receiver and paid for by the assets of the receivership, unless such assets shall be insufficient, in which case such insurance shall be paid for by the prospective purchaser of the Facility or any one of them. Anything in this Order to the contrary notwithstanding, the Department of Health may apply to this Court for an immediate Order terminating the authority of the Receiver or for an Order of Involuntary Receivership pursuant to the Public Health Law, if the Department of Health determines, in its sole discretion, that deficiencies have occurred at the

6

Mortgaged Premises which warrant the removal of the Receiver; (ii) the Receiver has been convicted of a crime; (iii) if otherwise mandated by law; (iv) upon the mutual written consent of Plaintiff, the Department of Health and the Receiver; or (v) if the Department of Health determines, with respect to matters other than deficiencies as set forth in clause (i) above, in its sole discretion, that the Receiver is not in substantial compliance with the terms and provisions of this Order, provided, however, that in such event the Department of Health will have provided the Receiver and Plaintiff with written notification of the nature and extent of its non-compliance, and the Receiver has failed, in the Department of Health's opinion, to make sufficient progress toward attaining compliance. The Receiver waives any right to a hearing under any section of the Public Health Law relative to revocation of an operating certificate, and agrees to surrender the operating certificate issued to it upon expiration or termination of its receivership; and it is further

ORDERED, that anything in this Order to the contrary, the Receiver may apply to this Court for an order terminating the authority of the Receiver if the Receiver determines that funds provided from Facility Revenues (defined below) and funds provided pursuant to that certain separate written instrument, by and between the Receiver and Plaintiff, approved by the Department of Health and dated on or about the date of this Order (the "Shortfall Agreement"), are inadequate to permit it to operate the Facility in full compliance with the requirements of this Order. A copy of the executed Shortfall Agreement is annexed as Exhibit 5 to the Laino Affirmation. Receiver shall continue to serve in its capacity hereunder until otherwise directed by this Court, and any shortfalls shall be covered by Plaintiff pursuant to the Shortfall Agreement. Receiver shall not have any liability or responsibility to pay any shortfall out of its own funds; and it is further

ORDERED, that prior to closing any foreclosure sale, the prospective purchaser shall submit an application for approval of establishment to the Public Health Council within sixty (60) days following the acceptance of its bid by the Referree to Sell and no sale shall be closed, consummated or approved by the Court unless and until the Department of Health has approved such purchaser and issued to it an operating certificate as it deems appropriate; and it is further

ORDERED, that provided the Facility or Prior Operator has a Title XIX provider agreement and the Receiver continues to meet the requirements for participation as a provider in the Medicaid program, the Receiver shall be reimbursed as an operator for patient services provided by it or in the name of the Facility through the Medicaid program pursuant to 10 N.Y.C.R.R. Subpart 86-2. The Receiver's expenses of operation shall be paid out of the rents, profits, income, Medicaid reimbursements and other sums received by the Receiver. The Department of Health shall not be responsible for any expenses incurred by the Receiver and related to the operation of the Facility which are not reimbursed pursuant to Subpart 86-2 or by any other payor; and it is further

ORDERED, that the Receiver shall not act as an agent of the Department of Health nor represent or hold itself out as an agent for the Department of Health in any matter, nor shall it hold itself out as a political subdivision of the State of New York. Notwithstanding the provisions of any other agreement to the contrary, the Receiver shall not add a new member, director, officer or stockholder, transfer or otherwise dispose of any shares of stock or voting rights, or modify the management or legal structure of the Receiver during the term of the receivership without the prior written approval of the Department of Health. The Receiver shall act in good faith and shall not delegate its duties and responsibilities to any other individual or entity, except that it may hire its own administrators and staff as specifically set forth in the Order as the same may be amended from time to time. The Receiver shall operate the Facility in

8

substantial compliance with all applicable laws, rules and regulations, including, but not limited to, the requirements for participation in the Medicare/Medicaid programs. If, upon commencement of the receivership, the Facility is not found to be in such substantial compliance, the Receiver shall be obligated to take reasonable actions so as to bring the Facility into such substantial compliance within a reasonable period of time. Such costs and expenses, as approved by Plaintiff, as well as any legal costs incurred in connection with the Receiver's applications to the Court, any penalties or fines finally imposed upon the Receiver or for which Receiver is deemed responsible by the State of New York or any other governmental agency, shall be subject to reimbursement by Plaintiff under the Shortfall Agreement. In its operation of the Facility as Receiver, the Receiver shall not engage in any practice that may result, directly or indirectly, in any financial gain to itself in its capacity as Receiver, except as expressly set forth herein. The Receiver shall be paid monthly fees for services as Receiver which, if annualized, would yield a sum equal to the greater of (i) $125,000 per month and (ii) three percent (3%) of monthly gross revenues at the Facility (the "Monthly Fee"), and shall be reimbursed for its legal and other expenses. The Monthly Fee and reimbursements shall be payable out of the rents, profits, income, Medicaid reimbursements and other charges received by the Receiver and to the extent such funds are insufficient, by the Plaintiff under the Shortfall Agreement. The payment to the Receiver of the Monthly Fee shall be prior to all other Facility Expenses. The reimbursement of the Monthly Fee by Medicaid shall be subject to 10 N.Y.C.R.R. Subpart 86-2; and it is further

ORDERED, that the Receiver is not the owner of the Facility and, except as required or permitted herein, shall not be responsible for any payables, liabilities or obligations of any kind incurred before the inception of the receivership, which shall remain the responsibility of the Prior Operator and which the Prior Operator shall pay in the ordinary course, provided, however,

9

that in the event the Prior Operator does not satisfy such obligations, the Receiver shall, consistent with applicable law governing receiverships, pay such past and future operating expenses as necessary or desirable in its judgment, to maintain operation of the Facility in accordance with the laws and applicable rules and regulations of the Department of Health governing the operation of the Facility, provided that such operating expenses (whether past or otherwise) shall only be payable out of the rents, profits, income, Medicaid reimbursements and other charges received by the Receiver, and any shortfall shall be paid by Plaintiff pursuant to the Shortfall Agreement; and it is further

ORDERED, that in the event of the expiration or termination of the receivership, including by sale of the Mortgaged Premises pursuant to a Judgment of Foreclosure and Sale, the Receiver shall execute and deliver such assignments, reassignments, conveyances, releases and other documents as may be reasonably required to transfer the assets, liabilities and operation of the Facility and/ or the Prior Operator, and divest itself of all incidents of ownership thereof to such person(s) or entities as the Prior Operator shall designate or, in the event of a foreclosure sale, to the purchaser at such sale, subject to the approval of the Department of Health; and it is further

ORDERED, that the Receiver, within ninety (90) days after the end of each calendar quarter, shall provide the Department of Health, Plaintiff and the Prior Operator with an accounting, in accordance with the Prior Operator's previous practices or on such other basis as the Department of Health may require, of its operation of the Facility during the term of its receivership. Nothing herein contained shall be construed so as to limit Receiver's obligation to maintain financial accounts and comply with reporting requirements to the Department of Health as hereinafter provided. The provisions of this section shall survive the expiration or termination of the receivership; and it is further

10

ORDERED, that the Department of Health will not have an adequate remedy at law in the event of a breach or threatened breach by the Receiver of any of its obligations under this Order, and the Department of Health shall be entitled to such equitable and injunctive relief as may be available to restrain a violation or threatened violation of the provisions of this Order, or to compel compliance with and enforce the provisions hereof. Nothing herein shall be construed as prohibiting the Prior Operator or Plaintiff from pursuing any other remedies available to it for such breach or threatened breach, including the recovery of damages, or as specifically granting any rights to any parties not named in this Order; and it is further

ORDERED, that the Receiver shall not incur any obligation or make borrowings secured by the Facility or any part of the Facility or the Facility's assets, or undertake any transaction, other than in the ordinary course of business, subject to this Order, which would place an encumbrance upon the assets of the Facility during the term of the receivership; and it is further

ORDERED, that the Receiver may apply and file in its name to such administrative and/or judicial rate appeals as the Prior Operator may have applied for or filed under the Medicaid, Medicare, or any other third party reimbursement or insurance program. The Receiver shall prepare, file and prosecute such appeals before the appropriate administrative or judicial bodies including such actions or proceedings relating to periods prior to the Receivership Date. It is expressly understood that the Receiver may file such rate appeals as it may deem appropriate arising from its operations. Monies generated by all appeals shall be retained or applied by the Receiver in accordance with this Order; and it is further

ORDERED, that during the term of the receivership, the Receiver shall keep and maintain accurate records of the time its personnel devotes to the management and operation of the Facility, indicating in reasonable detail for a time and project utilization matters on which they worked so that the time may properly be allocated to appropriate cost centers; and it is further

11

ORDERED, that if the Receiver shall file a voluntary petition in bankruptcy or shall be adjudicated a bankrupt or shall file any petition or answer seeking reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar relief under the present or any future Federal, State or other statute or law, or shall seek or consent to or acquiesce in the appointment of any trustee, receiver or liquidator of the Receiver or of the Facility, and such appointment shall not have been vacated or stayed, on appeal or otherwise, or if within twenty (20) days after the expiration of any such stay, such appointment shall not have been vacated, Plaintiff or the Department of Health may apply to this Court for the immediate appointment of a substitute receiver. Nothing herein shall prohibit the Department of Health from commencing proceedings for the appointment of an involuntary receiver pursuant to the Public Health Law; and it is further

ORDERED, that the Prior Operator and Plaintiff shall be entitled to access to all of the books and records relating to the operation of the Facility during the receivership, at the Facility, during normal business hours upon 24 hours notice to the Receiver upon the condition that this does not interfere with the operation of said Facility and that Plaintiff's access shall not violate any patient's right of privacy or confidentiality; and it is further

ORDERED, that except as otherwise limited in this Order, the powers, rights, duties and obligations of the Receiver shall include those accorded a receiver appointed in an action to foreclose a mortgage on real property and in equity, and the Receiver shall also have the powers, duties, rights and obligations as if appointed under Section 2810(2) of the Public Health Law, unless otherwise limited herein, including, but not limited to, the following:

1.    The Receiver may sue and only be sued in its capacity as receiver for the Facility. Absent gross negligence or willful misconduct, no officer or director or affiliate of Receiver may

12

be held liable or responsible for any penalties or fines assessed against, or other liability or obligation of, the Receiver.

    2.     The Receiver shall use reasonable care, diligence and prudence in the use and maintenance of the Mortgaged Premises.

    3.     The Receiver shall maintain an appropriate system of financial accounts with respect to the operation of the Facility, shall meet all reporting requirements of the Department of Health, and shall itemize receipts and expenditures in a current and business-like manner in accordance with New York State rules and regulations as well as the New York State RHCF Accounting and Reporting Manual. The Receiver shall have full control over and take full responsibility for all accounts and bookkeeping with the Facility during the term of its receivership hereunder, including, in Receiver's reasonable discretion, by continuing the use of existing personnel at the Facility who performed such responsibilities and functions prior to the receivership, and continuing the use of existing billing and bookkeeping processes.

    4.     Except as limited by subparagraphs 8 and 9 below, the Receiver may enter into contracts and incur expenses for the maintenance and operation of the Mortgaged Premises and the Receiver is authorized to retain such person or persons to perform all services necessary in connection with the repair and maintenance of the Mortgaged Premises and to pay all charges necessary for the repair and maintenance of the Mortgaged Premises incurred in the ordinary course.

    5.     The Receiver shall collect incoming payments from all sources and apply them to the costs incurred in the performance of its functions hereunder. In the event that the Department of Health determines that deficiencies exist at the Facility, and in accordance with applicable law imposes a civil penalty, such penalty may be assessed against the Receiver if the Department of Health, in its discretion, determines either that the deficiencies arose subsequent

13

to the appointment of the Receiver or that the deficiencies arose prior to such appointment, but were not corrected within a reasonable period of time. Such penalty, if any, shall be paid out of the assets of the receivership.

6. The Receiver may hire and fire such personnel, including professional consultants, as from time to time it may deem necessary or advisable, except as prohibited by law or regulation or as limited by subparagraphs 8 and 9 below. The Receiver may not hire in any capacity, retain as a consultant or in any other way utilize the services of any partner, director, officer, shareholder or member of the Prior Operator or Prior Operator entities. Such consultants shall be required to keep and maintain accurate records of the time they devote to the management and operation of the Facility indicating in reasonable detail the nature and extent of the matters on which they worked so that their time may properly be allocated to appropriate cost centers, and in the event such expenses are reimbursable under the Medicaid program, as to which the Department of Health makes no representation and takes no position.

7. The Receiver, in its reasonable discretion and on terms and conditions acceptable to it and the carrier(s), shall continue the Facility's malpractice and general liability insurance and may secure malpractice and general liability insurance in its own name and/or the Receiver may be added by endorsement to the Facility's malpractice and general liability insurance policies. Such insurance may be in amounts greater than provided for immediately prior to the Receivership. The Department of Health at this time takes no position with respect to the reimbursability of such expenses under the Medicaid program.

8. Prior to making any capital or leasehold improvement in excess of Fifteen Thousand Dollars ($15,000.00), the Receiver shall advise the Prior Operator, Plaintiff and the Department of Health of its plans and shall obtain the written consent of the Prior Operator and Plaintiff, provided, however, that the consent of the Prior Operator and the Plaintiff will not be

14

required if such improvement is mandated by the New York State Department of Health in order to effect compliance with applicable statutes and regulations. In the absence of such consent (if such consent is required pursuant to the terms of this Section 8), Receiver may apply to the Court for termination of its duties as Receiver under this Order.

9.      Except as provided in subparagraph 8 above, the Receiver is authorized, (I) from time to time without further order of the Court, to negotiate and enter into any new contract, lease or agreement or renewal thereof, the terms of which do not exceed one year and the consideration for which does not exceed Twenty Five Thousand Dollars ($25,000.00); (ii) without further order of the Court, to make payments and perform existing contracts, leases and agreements in the normal course of the operations of the Mortgaged Premises as a skilled nursing facility for patients and residents, subject to the rules and regulations of the New York State Department of Health and pursuant to the terms and conditions of such existing contracts, leases and agreements, and (iii) subject to further order of the Court, execute the surrender, or release of, or the modification or amendment which materially alters the terms of, any contract, lease or agreement now or hereafter in existence with respect to the Mortgaged Premises.

10.     The Receiver has and shall have no employment, consulting agreements or other business agreements of any kind whatsoever with the Prior Operator or any principal of the Prior Operator or Prior Operator entities and no agreement of such kind will be entered into during the term of this Agreement; and it is further

ORDERED, that the Receiver have full access to, and shall make, all books and records, accounts, agreements and documents of whatsoever nature, or copies thereof, relating to the Facility available to the Department of Health upon demand. There will be no charge to the Department of Health for any copies made. Nothing herein shall be deemed to transfer ownership of the books and records of the Facility to the Receiver; and it is further

15

ORDERED, that no provision contained herein shall be deemed to relieve the Prior Operator or any person from any civil or criminal liability incurred or imposed by law by reason of their acts or omissions prior to the appointment of the Receiver; and it is further

ORDERED, that a provisional operating certificate shall be deemed to have been issued to the Receiver as of the Receivership Date. Such operating certificate shall be issued and delivered to the Receiver by the Department of Health as soon as practicable and shall remain in effect during the period the Receiver serves as Receiver of the Mortgaged Premises hereunder. Upon termination of the receivership, the Receiver shall surrender its operating certificate to the Department of Health. The Department of Health shall promulgate a Medicaid reimbursement rate for the Receiver in accordance with Subpart 86-2. The Department of Health, provided all conditions of participation in Title XVIII and Title XIX are met, shall recommend to the United States Department of Health and Human Services that a Title XVIII Provider Agreement be issued to the Receiver and to issue a Title XIX Provider Agreement to the Receiver. Except as otherwise specifically provided herein, nothing contained herein shall be construed in any way to alter or abridge the right and authorities of the Department of Health or the Public Health Council as provided for in the Public Health Law. Nothing herein contained shall be deemed to change the Medicaid reimbursement policies, rules and regulations of the New York State Department of Health; and it is further

ORDERED, that Plaintiff shall pay to the Receiver any and all shortfalls pursuant to the Shortfall Agreement. The Shortfall Agreement, as per its terms, may be terminated by Plaintiff upon seventy-five (75) days written notice to the Receiver and the Department of Health; provided, however, that Plaintiff's duty to fund any shortfalls under the Shortfall Agreement shall continue until the effective date of any order terminating the Receivership. Following

such termination of the receivership, the Receiver shall not be liable or responsible as either receiver or operator for the operations of the Facility; and it is further

ORDERED, that any notices to the Department of Health by the Receiver shall be sent to:

Donald P. Berens, Jr., General Counsel
New York State Department of Health
Nelson A. Rockefeller Empire State Plaza
Erastus Corning Tower, 24th Floor, RM 2482
Albany, New York 12237
Attn: Alan J. Lawitz, Associate Attorney;

and it is further

ORDERED, that the Receiver be, and hereby is, authorized and directed to demand, collect and receive from Highgate Manor, Highgate Management, the residents, patients, tenants, subtenants, occupants and licensees in possession of or using the Mortgaged Premises, and any other persons liable therefore, all the rents, license fees, medical reimbursements, and other charges thereof now due and unpaid, or hereafter to become due, and that the Receiver be and hereby is authorized to institute and carry on all legal proceedings necessary for the protection of the Mortgaged Premises or any portion thereof, including such proceedings as may be necessary to recover possession of the whole, or any part thereof, and/or apply to the Court to compel the residents, patients, medical insurance providers, including Medicare and Medicaid, tenants, subtenants, occupants and licensees to attorn to the Receiver, and to institute and prosecute suits for the collection of such rents, fees, income, medical reimbursements, profits and other charges now due and hereafter to become due, and for summary or other proceedings for the removal of any residents, patients, tenant, subtenants, occupants, licensees or other persons therefrom as provided by law; and it is further

ORDERED, that the Receiver shall forthwith deposit all monies received by it at the time it receives same in a special account in its own name as Receiver in *Pioneer Savings Bar*

*Troy*_____, New York, (the "Depository") and that no withdrawals shall be made

17

therefrom except in the ordinary course of the operation, repair and maintenance of the Mortgaged Premise or as directed herein or by further Order of the Court, and that the Receiver shall furnish Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York, 11530 (Attn: William P. Laino Esq.), with monthly statements of the receipts and expenditures of the receivership, together with a photocopy of the monthly statements received from the above-described Depository. Nothing herein is intended to amend, modify or abrogate the lock box arrangement for the collection and deposit of accounts receivable by the Receiver on behalf of the Facilities pursuant to the Revolving Credit Agreement between the Facilities and GECC; and it is further

ORDERED, that the residents, patients, tenants, subtenants, occupants or licensees of the Mortgaged Premises and such other persons as may be in possession of or use the Mortgaged Premises, or any portion thereof, and any medical insurance providers, including Medicare and Medicaid, be and, are hereby directed to attorn to the Receiver and, until the further order of this Court, to pay over to the Receiver all rents, license fees, profits and other income of the Mortgaged Premises or any medical reimbursement for services rendered to residents or patients at the Mortgaged Premises now due and unpaid or that may hereafter become due; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, representatives, employees, servants, attorneys or anyone else acting on their behalf, be enjoined and restrained from collecting the rents, profits, income, license fees, medical reimbursements and other charges resulting from use of or services provided at the Mortgaged Premises or the rendition of services therefore and from interfering in any manner with the Mortgaged Premises or its possession, use or operation by the Receiver or the supply of any and all utilities or other services to the Mortgaged Premises, and from transferring, removing or

18

changing entries in the books and records of or pertaining to the Mortgaged Premises, or from transferring, removing or in any way disturbing any of the residents, patients, tenants, occupants, licensees or employees at the Mortgaged Premises; and that all such residents, patients, tenants, subtenants, occupants or licensees of the Mortgaged Premises and other persons liable for same, including medical insurance providers for services rendered to such residents or patients, be, and hereby are, enjoined and restrained from paying any such income or other charges for the Mortgaged Premises to Highgate Manor, Highgate Management, their affiliates, or their partners, agents, representatives, employees, servants, attorneys or anyone else acting on their behalf or to any other person other than the Receiver herein or his/her duly designated agent, provided, however, that Receiver may in its reasonable discretion elect to continue the employ of Facility billing, bookkeeping and clerical personnel, and to the extent such election is made the restrictions set forth in this paragraph shall not be applicable to and with respect to such persons; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, attorneys, representatives, servants, employees and assigns, are directed to, and shall, cooperate fully with the Receiver in immediately providing the Receiver with all keys, books and records, financial instruments and bank accounts, files, orders, leases, subleases, licenses, maintenance agreements, contracts, invoices, correspondence, notices, registration statements, employee records and other books, records, papers and agreements relating to the ownership, maintenance, operation or leasing of the Mortgaged Premises or any part or parts thereof and all other documents, materials, and things necessary for the Receiver to discharge his/her obligations hereunder which any of them may have in their possession; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, attorneys, representatives, employees and assigns, (a) shall hold in trust and

19

immediately pay over to the Receiver any and all rents, issues, profits, medical reimbursements, or other income with respect to the Mortgaged Premises received by any of them on or after the appointment of the Receiver, including those proceeds, rents, issues, profits and other income that have accrued prior thereto and remain unpaid as of such appointment; and (b) shall hold in trust and immediately pay over to the Receiver any and all security deposits received from residents, patients, tenants, subtenants, licensees or other persons for the lease, use or occupancy of the Mortgaged Premises; and it is further

ORDERED, that Highgate Manor, Highgate Management, their affiliates and all of their partners, agents, representatives, assigns, servants, employees, and attorneys, be and hereby are enjoined and restrained from disposing of any rents, issues, income, medical reimbursement, or profits of the Mortgaged Premises or any part thereof, previously received by any of them except in payment of all liabilities relating to the operation of the Mortgage Premises as have accrued prior to the appointment of the Receiver and outstanding sums secured by the Consolidated Mortgage and the Leasehold Mortgage, and they are further restrained from interfering in any manner with the Mortgaged Premises or the possession of same by the Receiver; and it is further

ORDERED, that pursuant to the provisions of the <u>General Obligations Law</u> § 7-105, Highgate Manor, Highgate Management and any entity or person holding any deposits or advanced rent as security under any lease, use or occupancy or license agreement affecting space in the Mortgaged Premises affected by this action shall (i) turn same over to the Receiver within five (5) days after said Receiver shall have qualified, to be held by the Receiver in a separate savings account in the above referenced Depository in the name of the Receiver as "Special Deposit Account", pursuant to the terms and provisions of the agreements entered into by the persons who made such deposits or advance payments of rent and (ii) notify each of such persons by certified mail that the respective security deposits or advance payments of rent of each of the tenants so received are being held by the Receiver

20

pursuant to the provisions of each such person's respective agreement; and thereupon the said Receiver shall hold such security subject to such disposition thereof as shall be provided in an order of this Court to be made and entered in this action; and it is further

ORDERED, that the Receiver be, and hereby is, authorized and directed: (a) to keep the Mortgaged Premises insured against loss or damage by fire and in repair; (b) to pay the taxes, assessments, water charges, sewer rents, electric bills, and other charges on the Mortgaged Premises, in a manner consistent with the provisions of this Order; (c) to comply with all requirements of any municipal department or authority having jurisdiction over the Mortgaged Premises; (d) to procure, if necessary, such insurance and liability insurance against claims for losses or injuries to persons and property, which may be asserted by persons on, near or about the Mortgaged Premises, as may be necessary; and (e) to pay to Plaintiff monthly, out of funds remaining in the custody of the Receiver, all interest accrued on the Real Estate Loan, Senior Promissory Note and Revolving Credit Documents secured by its Consolidated and Leasehold Mortgages; and it is further

ORDERED, that all persons, other than patients or residents receiving skilled nursing services, now or hereafter in possession of the Mortgaged Premises, or any part thereof, and not holding such possession under valid and existing leases, subleases, licenses or tenancies, do forthwith surrender such possession to the Receiver; and it is further

ORDERED, that the Receiver, or any party to this action, may, at any time, upon proper and sufficient notice to all parties who have appeared in this action, apply to this Court for further or other instructions or authority, whenever such instructions or additional authority shall be deemed necessary or desirable in order to enable the Receiver to properly fulfill its duties or to protect Plaintiff's interest in the property secured by the Consolidated and Leasehold Mortgages; and it is further

21

ORDERED, that the Receiver shall comply fully with the requirements of CPLR §6401-6404 and that the Receiver shall execute and file in the Office of the Clerk of Rensselaer County, a copy of this Order, its original oath of office, and its undertaking, with certified copies thereof filed in the Offices of the Clerks of Schenectady and Cortland Counties, and shall serve a copy of its oath of office and its undertaking, on the Plaintiff's attorneys, Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, New York 11530 (Attn: William P. Laino, Esq.) and on all of the parties named in this action or the attorneys who have appeared for such parties, and, thereafter, the Receiver shall serve any other papers filed by its with the Court in connection with its appointment on all parties to this action who have appeared herein and are not in default and the Department of Health of the State of New York; and it is further

ORDERED, that all of Plaintiff's costs and expenses incurred by it pursuant to this Order, including those incurred under the Shortfall Agreement, shall be added to the Consolidated Mortgage and Leashold Mortgage (collectively the "Mortgages"), shall be a lien on the Mortgaged Premises and shall be recoverable from the borrowers, guarantors and other persons and properties liable as provided in said Mortgages and the loan documents secured thereby or executed in connection therewith.

E N T E R ,

_____
J.S.C.

Approved as to Form and Substance:

New York State Department of Health

By:_____

Name:_____

Title:_____
F:\Geco\Highgate\Docs\Receivership Order Final V3 112006.Doc

Long Hill Alliance Company Proposed Receiver

By:_____

Name:_____

Title: *Treasurer*

22

# SHORTFALL AGREEMENT

THIS SHORTFALL AGREEMENT is entered into as of the *27* day of November, 2006 by and between GENERAL ELECTRIC CAPITAL CORPORATION, 2 Bethesda Metro Center, Suite 600, Bethesda, MD 20814 ("GECC") and LONG HILL ALLIANCE COMPANY, 580 Long Hill Avenue, Shelton, CT ("Long Hill");

WHEREAS, GECC holds a Consolidated Mortgage and Leasehold Mortgage (the "Mortgages") which are liens respectively on certain real properties (the "Mortgaged Premises") and personal property used in connection with the operation of four skilled nursing facilities (the "Facilities") located in Rensselaer, Schenectady and Cortland Counties, State of New York; and

WHEREAS, GECC has commenced, or intends to commence, an action to foreclose the Mortgages pursuant to Article 13 of the Real Property Actions and Proceedings Law (the "Foreclosure Action"); and

WHEREAS, in connection with the Foreclosure Action, Long Hill has been, or may be, appointed by the Supreme Court of the State of New York, County of Rensselaer (the "Foreclosure Court") as receiver (the "Receiver") for the Mortgaged Premises pursuant to an Order Appointing Receiver (the "Receivership Order"); and

WHEREAS, pursuant to Receivership Order, Receiver will manage the Mortgaged Premises, operate the Facilities and receive the rents, profits, income and other charges due the Facilities or earned by the Mortgage Premises (the "Receivership Income") and incur certain expenses in the operation of the Facilities and the Mortgaged Premises (the "Receivership Expenses"); and

WHEREAS, GECC and Receiver wish to provide by this Shortfall Agreement, for the funding of Shortfalls (as defined herein) in the event Receivership Expenses exceed Receivership Income from time to time;

NOW THEREFORE, in consideration of the mutual covenants contained herein, it is agreed by and between GECC and Receiver as follows:

1.    <u>Operation of Facilities</u>. Receiver shall accept appointment as receiver of the Mortgaged Premises and operate the Facilities as provided in Receivership Order.

2.    <u>Reporting</u>.

(a)    <u>Budget</u>. Within 30 days after entry of Receivership Order (the "Commencement Date"), Receiver shall submit to GECC a proposed budget for the period commencing on the Commencement Date through the date which is ninety (90) days subsequent to the Commencement Date. As soon as reasonably practical thereafter, GECC shall approve such budget or work with Receiver to establish a mutually agreeable budget (the budget, as submitted for approval and as revised from time to time during the term of this Agreement, as set forth below, is referred to herein as the "Budget"). A new Budget shall be submitted by Receiver for approval by GECC for each ninety (90) day period thereafter during the term of this Agreement. Receiver shall consult with and seek approval of GECC for any extraordinary items not covered by any approved Budget. All Budgets shall be subject to the approval of GECC.

(b)    <u>Monthly Report</u>. Receiver shall provide to GECC monthly financial and census reports (each, a "Monthly Report") containing the following information:

(i)    Move-ins and move-outs and deposits taken and general marketing activity.

2

   (ii)  Financial performance measured against the Budget including statements of revenue and expense, accounts payable, accounts receivable and cash receipts/disbursements information.

   (iii)  such other reports as may be required by the Loan Documents as defined in the Mortgages or reasonably requested by GECC.

   (c)  <u>Working Capital Deficit.</u>

   (i)  GECC hereby agrees to pay any "Shortfall", which shall mean those instances in which Receivership Income of the Facility received by Receiver for any monthly period is insufficient to pay the Monthly Fee (as defined in the Receivership Order) and all Receivership Expenses as set forth on an approved Budget plus any costs and expenses incurred in an emergency, that are extraordinary or that may be required by applicable law. Such Receivership Expenses shall include but not be limited to all operating expenses, accounts payable, including insurance and vender expenses together with all employee wages, employment taxes, and all sums for workers compensation and unemployment expenses together with all employee fringe benefits (other than the wages, taxes and benefits of Receiver and its regular employees) and such expenses assumed by Receiver in connection with the employees hired by Receiver for the purpose of Receivership and any such accrued expenses or benefits which are due and owing to such employees and unpaid at the termination of Receivership, any Equipment Obligations (as defined below), any Change of Ownership Obligations (as defined below) and any other expenses of Receiver in terminating its operations of the Facility.

   (ii)  The term "Equipment Obligations" shall mean any cost and expense associated with securing use of the equipment presently at the Facility or the

3

provision of adequate replacement equipment for the Facility, including the repair or replacement of any or all of such equipment in the event replacement or repair is necessary.

(iii)     The parties acknowledge that if a court or agency of final authority should determine that a change of ownership of the Facility has occurred by virtue of this receivership, GECC will be responsible for any and all Shortfall associated with improvements, modifications, changes to the Facility and changes in operation necessary for securing compliance with the change in ownership inspection, and licensure of Receiver (the "Change of Ownership Obligations"); provided, however, that regardless of anything to the contrary in this Agreement, GECC shall have no responsibility for any Change of Ownership Obligation that (i) accrues or is incurred after the termination of this Receivership or (ii) is not approved in writing by GECC, it being agreed that if GECC does not approve any Change in Ownership Obligation mandated by the Department of Health of the State of New York, GECC shall pay any non-compliance fees or charges assessed or levied against Receiver by the Department of Health of the State of New York as a result of GECC's failure to approve such Change in Ownership Obligation.

(iv)     Receiver shall have no liability or responsibility to pay any Shortfall from its own funds.

(v)     Simultaneously with the delivery by Receiver of the Monthly Reports, Receiver shall certify whether any Shortfall exists. Receiver's certification shall be executed by its Chief Financial Officer and shall include a report setting forth the reasons for such Shortfall in reasonable detail. If it appears that Receivership Expenses

4

provided for in an approved Budget exceed Receivership Income for any such month, GECC shall make available to Receiver by wire transfer to the account of Receiver, pursuant to instructions contained in the certification, funds sufficient to pay such Shortfall (the "Shortfall Funding"). Provided the Shortfall exists, such Shortfall Funding shall be provided to Receiver within three (3) days following certification of any Shortfall by Receiver. Upon termination of the receivership, any and all accounts receivable and other credits for pre-paid expenses and other assets acquired by Receiver and used in the operation of the Facility shall, upon the payment by GECC of all amounts due hereunder, be paid or transferred over to GECC or its designee; provided, however, that the amounts paid over to GECC shall not exceed the amounts due to it under the Mortgages and the loan documents secured thereby and the amounts paid over by it to the Receiver under the Shortfall Agreement.

(vi)    Pursuant to the Receivership Order, and in addition to Receiver's right to have any Shortfall paid by GECC as set forth above, "tail" insurance, on terms and conditions reasonably acceptable to Receiver and GECC, shall be purchased covering the Receiver and paid for by the assets of the receivership, unless such assets shall be insufficient, in which case such insurance shall be paid for by the prospective purchaser of the Facility or any one of them.

2.    Term.  This Shortfall Agreement and GECC's obligation to provide Shortfall Funding shall continue from the Commencement Date until expiration of the receivership pursuant to the Receivership Order, unless earlier terminated:  (a) by GECC prior to such expiration on seventy five (75) days written notice to Receiver and the New York State Department of Health (the "Notice of Termination"), or (b) by an earlier order of the Foreclosure

5

Court, (either, a "Termination"). Notwithstanding such Notice of Termination, GECC shall continue to fund any Shortfall, as provided in Section 2 above, but in no event beyond the earlier of the effective date of the order terminating the receivership or 75 days following the Notice of Termination (the "Post-Notice Period"). During the Post-Notice Period, GECC's liability for payment of expenses which arise during such Post-Notice Period and which are not contained in an approved Budget shall not exceed $100,000.00 in the aggregate (the "Unbudgeted Expense CAP"). Notwithstanding the provisions of Section 2 or the Unbudgeted Expense CAP, GECC shall not be responsible to fund expenses during the Post-Notice Period which are incurred by the Facilities in connection with a closure of the Facilities. Receiver shall not thereafter be responsible as either receiver or operator of the Facility. Upon delivery of such Notice of Termination, GECC and Receiver shall jointly move before the Foreclosure Court for termination of Receivership Order or, at GECC's election, appointment of a new receiver. Receiver shall cooperate with any application to the Department of Health for a new receiver.

3. <u>Miscellaneous</u>.

(a) <u>Relationship of Parties</u>. Nothing contained in this Agreement shall constitute or be construed to be or create a partnership, joint venture or lease between GECC and Receiver with respect to any Facility, it being understood that Receiver's status shall be that of an independent contractor and receiver only pursuant to Receivership Order.

(b) <u>Books and Records</u>. All books, records, forms and reports prepared by Receiver in connection with the operation of any Facility are subject to GECC's Mortgages, and shall be maintained in a strictly confidential manner by Receiver, and returned to GECC upon the termination of this Agreement.

6

(c)   <u>Cooperation Upon Termination</u>.   Upon the expiration or earlier termination of this Agreement, Receiver shall cooperate with GECC in effecting an orderly transition to any new receiver of the Mortgaged Premises in order to avoid any interruption in the rendering of services to patients and residents at the Facility and, in connection therewith, shall surrender to GECC all contracts, documents, books, records, forms and reports in its possession regarding the operation of any Facility.

(d)   <u>Successors and Assigns</u>.  This Agreement shall be binding upon the parties hereto and their respective successors and assigns.  Receiver may not assign this Agreement without GECC's consent and without further order of the Court.  GECC shall be entitled, on notice to the Department of Health of the State of New York, to assign its rights and obligations hereunder.

(e)   <u>Notices</u>.  All notices, demands and requests to be made hereunder by one party to the other shall be in writing, and shall be delivered by hand, mailed by certified mail, return receipt requested, or sent by overnight courier service, with postage prepaid, to the addresses listed at the beginning of this Agreement.  All notices shall be deemed to be effective (i) upon receipt, if hand delivered, (ii) three (3) days after mailing, if mailed by certified mail or (iii the next business day after transmittal, if sent by overnight courier service.  If notice is sent to GECC, a copy of such notice shall also be sent to Moritt Hock Hamroff & Horowitz LLP, 400 Garden City Plaza, Garden City, NY 11530, Attn.: Marc L. Hamroff, Esq.  If notice is sent to Receiver, a copy of such notice shall also be sent to: Murtha Cullina, LLP, City Place I, 185 Asylum Street, Hartford, CT 06103-6033, Attn. Robert V. Guinta, Jr., Esq.

(f)   <u>Entire Agreement; Amendments</u>.  This Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof, and no prior oral

or written representations, covenants or agreements between the parties with respect to the subject matter hereof shall be of any force or effect. Any amendments or modifications to this Agreement shall be of no force or effect unless in writing and signed by both GECC and Receiver and approved by the Foreclosure Court on notice to the New York State Department of Health.

(g)    Governing Law. This Agreement has been executed and delivered in the State of New York and shall be governed by the laws of New York. All matters respecting the performance of this Agreement shall be heard by the Foreclosure Court. The Foreclosure Court shall have exclusive jurisdiction to hear and resolve all matters arising under this Agreement.

(h)    Section Headings. The section headings throughout this Agreement are provided for convenience of reference only, and the words contained therein shall not in any way be held to explain, modify or otherwise affect the interpretation, construction or meaning of the provisions of this Agreement.

(i)    Severability. If any term or provision of this Agreement or the application thereof to any person or circumstances shall, to any extent, be invalid or unenforceable, the remainder of this Agreement or the application of such term or provision to persons or circumstances other than those to which it is held invalid or unenforceable shall not be affected thereby, and each term and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

(j)    Waivers. No waiver of any term, provision or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be or construed as a further and continuing waiver of any such term, provision or condition of this Agreement.

8

(k)    <u>No Third Party Beneficiaries</u>.  Nothing herein is intended to confer any rights under this Agreement on any person other than Long Hill and GECC.

IN WITNESS WHEREOF, the parties hereto have executed this Shortfall Agreement through their duly authorized representatives as of the day and year first above written.

GENERAL ELECTRIC CAPITAL CORPORATION

BY:    Richard Arrowsmith, SVP

LONG HILL ALLIANCE COMPANY

BY:_____
       Stephen Kegler, President

Approved as to Form and Substance:

New York State Department of Health

By:_____

Name:_____

Title:_____

(k)   <u>No Third Party Beneficiaries.</u>   Nothing herein is intended to confer any rights under this Agreement on any person other than Long Hill and GECC.

IN WITNESS WHEREOF, the parties hereto have executed this Shortfall Agreement through their duly authorized representatives as of the day and year first above written.

GENERAL ELECTRIC CAPITAL CORPORATION


BY:   Richard Arrowsmith, SVP


LONG HILL ALLIANCE COMPANY

BY: _David Lawlor_
David Lawlor, Treasurer

<u>Approved as to Form and Substance:</u>

<u>New York State Department of Health</u>

<u>By:</u> _____

<u>Name:</u> _____

<u>Title:</u> _____

F:\Gecc\Highgate\Docs\Shortfal Agt Final 111606 112006.Doc

    (k)    <u>No Third Party Beneficiaries</u>.  Nothing herein is intended to confer any rights under this Agreement on any person other than Long Hill and GECC.

    IN WITNESS WHEREOF, the parties hereto have executed this Shortfall Agreement through their duly authorized representatives as of the day and year first above written.

GENERAL ELECTRIC CAPITAL CORPORATION


BY:   Richard Arrowsmith, SVP


LONG HILL ALLIANCE COMPANY


BY: _____
       Stephen Kegler, President

Approved as to Form and Substance:

New York State Department of Health

By: David Wollner

Name: David Wollner

Title: Director, OHSM

Exhibit C

| Highgate LTC Management LLC Projected Cash Flows | Projected May 7th-31st 25 days | Projected June 1st-30th 30 days | Projected July 1st-31st 31 days | Projected August 1st-4th 4days | Period Totals 90 Days |
|---|---|---|---|---|---|
| **Beginning Cash Book Balance** | $ 422,872 | $ 274,033 | $ (260,587) | $ (851,507) | $ 422,872 |
| | | | | | |
| **Collections** | | | | | |
| General Deposits | 817,000 | 597,000 | 643,000 | 67,000 | 2,124,000 |
| Medicaid Deposits | 1,507,108 | 2,205,000 | 1,764,000 | 441,000 | 5,917,108 |
| Medicare Deposits | 521,000 | 521,000 | 521,000 | - | 1,563,000 |
| **Total Collections** | 2,845,108 | 3,323,000 | 2,928,000 | 508,000 | 9,604,108 |
| | | | | | |
| **Cash Available for Disbursements** | 3,267,980 | 3,597,033 | 2,667,413 | (343,507) | 10,026,980 |
| | | | | | |
| **Disbursements** | | | | | |
| General Disbursements | 600,000 | 600,000 | 600,000 | 150,000 | 1,950,000 |
| Pharmacy | 200,000 | 200,000 | 250,000 | | 650,000 |
| Net Payroll | 870,000 | 1,555,000 | 1,265,000 | 305,000 | 3,995,000 |
| Payroll Taxes | 480,000 | 505,000 | 505,000 | 125,000 | 1,615,000 |
| 401(k) Funding | 25,000 | 20,000 | 25,000 | - | 70,000 |
| Other Employee Benefits | 150,000 | 150,000 | 150,000 | - | 450,000 |
| Worker's Compensation Premiums | 78,000 | 78,000 | 78,000 | - | 234,000 |
| Insurance Premiums | 48,000 | 48,000 | 48,000 | - | 144,000 |
| UST Fee | - | - | 10,000 | | 10,000 |
| Receiver Fee | 125,000 | 125,000 | 125,000 | - | 375,000 |
| Bank Line Interest/Bank Fees | 3,000 | 53,000 | 33,000 | 30,000 | 119,000 |
| Utilities | 80,000 | 140,000 | 110,000 | 30,000 | 360,000 |
| Physicians | 60,000 | 60,000 | 60,000 | - | 180,000 |
| Loan/Lease | 15,500 | 15,500 | 15,500 | - | 46,500 |
| Legal/Receiver | - | 40,000 | 15,000 | - | 55,000 |
| Legal/Borrower | | | | | - |
| Legal/Creditor | 120,000 | 100,000 | 85,000 | | 305,000 |
| Cash receipts assessment | 139,446 | 168,120 | 144,420 | 30,480 | 482,466 |
| **Total Disbursements** | 2,993,946 | 3,857,620 | 3,518,920 | 670,480 | 11,040,966 |
| | | | | | |
| **Ending Cash Balance** | $ 274,033 | $ (260,587) | $ (851,507) | $ (1,013,987) | $ (1,013,987) |

**Disclaimer:** The above is only an estimate based upon the following assumptions. There may be unforeseen demands on cash required to procure necessary resident-care-related goods and services that have not been included herein. This schedule is presented on a monthly basis and does not illustrate the daily and weekly undulation of liquidity levels.

*General Assumptions:*
1) Beginning Cash Book Balance is based on the unreconciled book balance maintained by the company and updated thru 5/4/07.
2) All deposits in GE lockbox are returned to Highgate on the following day through the BBC process.

*Assumptions - Collections:*
1) General Deposits - These deposits consist of Insurance and Private pay revenues plus the NAMI portion of a Medicaid resident's payment plan and the co-insurance portion of a Medicare resident's payment plan.
2) Medicaid Deposits - Medicaid is billed weekly, deposits are projected based upon historical payment patterns assuming constant cer
3) Medicare Deposits- Medicare is billed monthly, deposits are projected based upon historical payment patterns assuming constant co

*Assumptions - Disbursements:*
1) General Disbursements - represent payments to numerous routine vendors including food, supplies, linen service, and various other resident services. Disbursement levels are based on historical operating experience.
2) Pharmacy - disbursements to Priority Pharmaceutical Services, LLC are made weekly and are based on historical payment patterns.
3) Net Payroll - made weekly based upon current staffing patterns adjusted for anticipated vacation and holiday-related disbursements based on historical experience.
4) Payroll Taxes - made weekly based upon assumed net payroll disbursements.
5) 401(k) Funding - made monthly based upon current estimated funding levels.
6) Other Employee Benefits - represents employee withholding and employer share of payments made primarily to health, dental, and l insurance companies.
7) Workers' Compensation - represents estimated premium payments to a self-funded group plan managed by Lancer Care Risk Management and First Niagara Risk Management, Inc.
8) Insurance payment - monthly premium payment for General, Professional and Property Liability coverages.
9) Quarterly US Trustee Fee
10) Receiver's Fee - paid monthly for operational management oversight.
11) Bank Line Interest/Bank Fees - includes credit line interest, cash management fees and other bank audit fees.
12) Utilities - based on historical payment patterns. Counsel is offering utilities adequate assurance in a form other than a deposit, thu: no deposits have been projected.
13) Physicians - based upon historical payment patterns for contracted physician groups.
14) Loan/Lease - based upon scheduled due dates of existing leases on equipment and resident transportation vehicles utilized by the fa
15) Legal Fees have been estimated by respective counsels. No estimates were received from Borrower counsel.
16) Cash receipts assessment represents a 6% assessment against non-Medicare cash receipts.